**FILED**

JUL 2 3 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

```
                                          x
BRIAN HUNTER,                             :
                                          :
        Plaintiff,                        :
                                          :
                    v.                    :
                                          :
                                          :
                                          :
FEDERAL ENERGY REGULATORY                 :
COMMISSION,                               :
                                          :
                                          :
                                          :
                                          :
        Defendant.                        :
                                          x
```

Case: 1:07-cv-01307
Assigned To : Leon, Richard J.
Assign. Date : 7/23/2007
Description: TRO/PI

**COMPLAINT**

Plaintiff Brian Hunter ("Hunter"), by his attorneys, Kobre & Kim LLP, submits the following, for his complaint, against the Federal Energy Regulatory Commission ("FERC").

## NATURE OF THE ACTION

1.      This action arises from FERC's assertion of jurisdiction to bring an investigation and enforcement action against Plaintiff for Plaintiff's trading of natural gas futures contracts. FERC's unlawful interpretation of its investigative and enforcement power exceeds its statutory authority and exposes Plaintiff, a former employee of Amaranth Advisors LLC and Amaranth Advisors (Calgary) ULC (collectively "Amaranth"), to significant and irreparable harm.

2.      The Commodity Futures Trading Commission ("CFTC") is charged with regulatory authority over futures markets, including natural gas futures, on the New York Mercantile Exchange ("NYMEX"). FERC's statutory jurisdiction is limited to regulation of

1

wholesale energy markets, including certain transactions requiring the exchange of physical natural gas. FERC is *not* statutorily authorized to regulate futures markets for energy commodities, which include natural gas futures contracts. Nonetheless, FERC has asserted that it has authority to investigate and further, to bring an imminent enforcement action (as soon as July 24, 2007), for alleged manipulation of settlement prices of natural gas futures by Plaintiff on the NYMEX, in connection with Plaintiff's involvement in Amaranth's trading of natural gas futures. FERC has informed Plaintiff by letter received on Friday, July 20, 2007, that it intends to file an enforcement action against Plaintiff by issuing an Order To Show Cause and Notice of Proposed Penalties ("OSC") no sooner than five days after the date of the letter (July 19, 2007), which is Tuesday, July 24, 2007.[1] FERC's assertion of jurisdiction to bring an enforcement action is an impermissible encroachment on the exclusive statutory jurisdiction of the CFTC, and is beyond the scope of FERC's statutory authority to regulate wholesale energy markets. Plaintiff seeks a temporary restraining order pending an injunction to prohibit FERC from bringing an enforcement action against Plaintiff and a declaratory judgment that FERC has exceeded its statutory authority.

## THE PARTIES

3.      Plaintiff Brian Hunter is an individual citizen and resident of the Province of Alberta, Canada. Until September 2006, he was actively employed by Amaranth Advisors (Calgary) ULC as co-head of the trading desk for commodity derivatives.

4.      Defendant FERC is a federal agency charged with regulating wholesale energy markets including the interstate transmission and sale of physical natural gas. FERC has headquarters at 888 First Street, N.E., Washington, D.C., 20426.

---

[1] The FERC's letter ambiguously indicated that five calendar days from July 19, 2007 is July 26, 2007, which is incorrect.

## JURISDICTION AND VENUE

5.    This is an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201, *et seq.*, for the purpose of determining a question of actual controversy between the parties.

6.    The Court has jurisdiction over this cause of action pursuant to 28 U.S.C. §§ 1331 and 1337.

7.    Venue is proper in this judicial district under 28 U.S.C. § 1391(e).

## THE FACTS

### The CFTC has Exclusive Jurisdiction Over Natural Gas Futures Traded on NYMEX Under The Commodities Exchange Act

8.    The Commodity Exchange Act ("CEA") has conferred upon the CFTC regulatory authority over futures contracts markets.

9.    Under 7 U.S.C. § 2(a)(1)(A), the CFTC has "exclusive jurisdiction" with respect to "accounts, agreements…and *transactions involving contracts of sale of a commodity for future delivery.*" *Id.* (emphasis added).

10.    NYMEX is the world's largest commodity futures exchange and the floor of the NYMEX is regulated by the CFTC.

### Amaranth Traded Only Natural Gas Futures, Not Physical Natural Gas

11.    Beginning on June 1, 2005 and throughout the period under investigation by FERC, Mr. Hunter served as co-head of Amaranth's trading desk for commodity derivatives.

12.    In this capacity, Mr. Hunter engaged in transactions, through Amaranth, on the NYMEX using derivative financial instruments, including futures contracts.

13.    At no point did Amaranth execute transactions or assume a stake in the physical natural gas markets.  Likewise, Amaranth had no involvement in transportation or transmission services relating to natural gas.

3

14.     Amaranth was not capable of accepting or providing physical delivery of natural gas. As a result, all of Amaranth's trades settled financially and none of its transactions were made in connection with the immediate delivery of physical natural gas.

15.     In other words, all of Plaintiff's trading on behalf of Amaranth related to "contracts of sale of a commodity for future delivery," rather than to the sale of natural gas.

### The CFTC is Conducting An Investigation
### Pursuant To its Authority under the CEA

16.     Upon information and belief, the CFTC is conducting an investigation into Amaranth's trading activities in the natural gas futures markets and such investigation by the CFTC is ongoing.

### FERC's Jurisdiction is Limited
### To Regulation of Wholesale Energy Markets

17.     Like all federal agencies, FERC jurisdiction is limited by statute.    More specifically, FERC's jurisdiction is circumscribed in the Natural Gas Act, 15 U.S.C. §§ 717, *et seq.* ("NGA"), and the Federal Power Act, 16 U.S.C. §§ 791, *et seq.* ("FPA").

18.     The NGA confers jurisdiction upon FERC to regulate natural gas companies and the transport and sale of natural gas for ultimate distribution to the public.  15 U.S.C. §§ 717(a) and (b).

19.     The FPA confers jurisdiction upon FERC to regulate utilities and the sale and transmission of electricity. 16 U.S.C. §§ 812 and 813.  The FPA therefore regulates wholesale electricity and not natural gas futures.

20.     Neither the NGA nor the FPA grant FERC jurisdiction over the alleged manipulation of settlement prices for natural gas *futures* on NYMEX, or for natural gas *futures* traded on any other designated futures exchange.

4

## The Energy Policy Act Did Not Expand
## FERC's Jurisdiction Under the NGA or FPA

21.    Prior to 2005, FERC's jurisdiction was limited to oversight and regulation, rather than enforcement authority, of the wholesale energy markets.

22.    In 2005, Congress provided FERC with enforcement authority over wholesale energy markets, including physical natural gas, by amending the NGA and the FPA through §§ 315 and 1283 of the Energy Policy Act, Pub. L. No. 109-58, 119 Stat. 594 (2005) (the "EPAct").

23.    Nothing in the EPAct grants FERC jurisdictional authority over natural gas futures, such as those traded on NYMEX. Rather, in keeping with the statutory limits on FERC's jurisdiction, the EPAct expressly notes "the *exclusive* jurisdiction of the [CFTC] under the [CEA]." 15 U.S.C. § 717t-2(c)(2) (emphasis added).

24.    FERC's new enforcement authority under the NGA and FPA did not extend FERC's jurisdiction to include regulation of markets for natural gas futures. Instead, FERC's enforcement authority is explicitly limited to those areas that were already within FERC's statutory jurisdiction.

25.    Specifically, the EPAct amended the NGA as follows:

> "PROHIBITION ON MARKET MANIPULATION
> "SEC. 4A. It shall be unlawful for any entity, directly or indirectly, to use or employ, **in connection with the purchase or sale of natural gas or the purchase or sale of transportation services subject to the jurisdiction of [FERC]**, any manipulative or deceptive device or contrivance (as those terms are used in section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. 78j(b))) in contravention of such rules and regulations as the Commission may prescribe as necessary in the public interest or for the protection of natural gas ratepayers. Nothing in this section shall be construed to create a private right of action."

15 U.S.C. § 717c-1 (emphasis added).

26.     The EPAct amended the FPA as follows:

> "SEC. 222. PROHIBITION OF ENERGY MARKET MANIPULATION.
> "(a) IN GENERAL.—It shall be unlawful for any entity (including an entity described in section 201(f)), directly or indirectly, to use or employ, **in connection with the purchase or sale of electric energy or the purchase or sale of transmission services subject to the jurisdiction of [FERC]**, any manipulative or deceptive device or contrivance (as those terms are used in section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. 78j(b))), in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of electric ratepayers."

16 U.S.C. § 824v (emphasis added).

27.     On October 12, 2005, FERC and the CFTC entered into a Memorandum of Understanding, as directed by §§ 316 and 1281 of the EPAct.

28.     The Preamble to the Memorandum of Understanding states that it designed is to "ensure that information requests to markets within the respective jurisdiction of each agency are properly coordinated..." and recognizes the respective "exclusive" jurisdictions of FERC and the CFTC: namely that "the CFTC has exclusive jurisdiction with respect to accounts, agreements and transactions involving contracts of sale of a commodity for future delivery, including, but not limited to natural gas, electricity or any other energy product..." while FERC has "exclusive jurisdiction over, among other things, the transportation of natural gas in interstate commerce and certain sales in interstate commerce of natural gas for resale..."

29.     FERC itself has recognized in other ways that the EPAct did not enlarge FERC's jurisdiction beyond regulation of energy markets to include regulation of energy futures markets.

6

In FERC's promulgation of its final rule setting forth its regulation on "Prohibition of Energy Market Manipulation," 18 C.F.R. § 1c.1, issued in Order No. 670, 114 FERC 61,047 (Jan. 19, 2006) ("Order 670"), FERC stated that the purpose of the Final Rule is to "deter or punish fraud in *wholesale* energy markets." *Id.* at ¶ 5 (emphasis added).

30.    Order 670 states further:  "[a]s an initial matter, this Final Rule does not, and is not intended to, expand the types of transactions subject to [FERC's] jurisdiction under the...NGA...," *id.* at ¶ 16, and that its "jurisdiction is limited to certain wholesale transactions that remain within the ambit of the NGA, [Natural Gas Policy Act of 1978], and FPA." *Id.* at ¶ 22.

31.    In Order 670, FERC conceded that "the most reasonable interpretation of the EPAct is that Congress did not expand the Commission's traditional NGA and FPA subject matter jurisdiction..." Had Congress intended to expand the transactions under the Commission's traditional jurisdiction via the EPAct, "it would have done so explicitly." *Id.* at ¶ 20.

32.    In other words, in the promulgation of its own rule under the EPAct, FERC itself has recognized that its jurisdiction is specifically limited to wholesale energy markets, which are distinct from the markets for energy futures.

## FERC's Improper Assertion of Jurisdiction

33.    Despite the statutory framework explicitly limiting FERC's jurisdiction to natural gas markets, FERC has impermissibly and lawlessly attempted to confer additional jurisdiction on itself to investigate and to bring an enforcement action concerning alleged manipulation of the settlement price of certain NYMEX natural gas futures contracts traded by Plaintiff in his capacity as a natural gas futures trader for Amaranth.

7

34.    It is a matter of public record that FERC has faced critical scrutiny from Congress over the past seven years regarding the agency's ability to regulate the physical energy markets effectively. For example, a General Accounting Office report on the California energy crisis of 2000 and 2001 concluded—in the words of one press report—that FERC regulators "failed to do their jobs" and "are utterly unprepared to deal with the next crisis if it occurs."

35.    On or about April 5, 2007, a *Dow Jones* news article reported on FERC Chairman Joseph Kelliher's efforts to defend the agency, and in particular its enforcement capabilities, in the face of "intense congressional scrutiny" before his consideration for re-election in June 2007.

36.    As recently as June 2007, FERC's chief enforcement officer, Susan Court, speaking at a *Platt's* "Energy Podium" in Washington, D.C., defended the FERC's enforcement efforts as members of Congress and state officials have increasingly called on federal regulators to explain rising oil, natural gas and electricity prices.

37.    On May 16, 2007, FERC made a determination as to its jurisdiction over natural gas futures contracts by issuing a Non-Public Order of Investigation, Docket No. IN07-26-00 (the "Formal Order").

38.    On June 26, 2007, and on July 6, 2007, by and through his counsel, Mr. Hunter made submissions to FERC's Division of Investigations, pursuant to 18 C.F.R. § 1b.19, explaining that an action against Mr. Hunter is not warranted because the FERC is completely mistaken in its theories and, among other reasons, that any enforcement action by the FERC exceeds the FERC's statutory authority.

39.    Nevertheless, FERC has informed Plaintiff by letter dated July 19, 2007, that it intends to file an enforcement action against Plaintiff by issuing an OSC no sooner than July 24, 2007.

40.     FERC has informed Plaintiff in substance that its enforcement action will allege that Amaranth, through Plaintiff, engaged in a scheme to depress the settlement price of NYMEX natural gas futures contracts..

41.     FERC's enforcement action concerns allegations of trading in natural gas futures contracts on NYMEX, which are beyond FERC's statutory enforcement jurisdiction.

42.     FERC's imminent enforcement action is a lawless and impermissible encroachment on the exclusive statutory jurisdiction of the CFTC, and is beyond the scope of FERC's statutory authority, which authority is limited to regulation of wholesale energy markets.

### Irreparable Harm

43.     Since his departure from Amaranth, Plaintiff has formed and become the majority owner of a new company, Solengo Capital Advisors ULC ("Solengo"), a company registered under the laws of the Province of Alberta ("Alberta").

44.     Solengo is currently only a fledgling company that intends to provide professional investment advisory services to potential clients that are private investment funds.

45.     The private investment funds that will be advised by Solengo are making the necessary preparations to actively solicit investments that are crucial to their successful launch as commodity derivatives investment funds.

46.     The willingness of potential investors to commit capital to these funds is dependent upon Solengo and its principals continuing to maintain an unblemished regulatory record.

47.     Solengo's ability to serve as an authorized investment advisor, and the ability of the Solengo advised investment funds to attract capital from investors, is contingent upon their obtaining the necessary legal registration in several jurisdictions, including registration of

Solengo as an investment adviser in Alberta and registration of the Cayman Islands incorporated investment funds with the Monetary Authority in the Cayman Islands.

48.    Registration in Alberta and in the Cayman Islands is in turn contingent upon Mr. Hunter continuing to maintain his record of compliance with all applicable laws. The OSC will substantially derail Solengo's ability to obtain the necessary legal authorizations in Alberta and the ability of the Solengo-advised investment funds to register in the Cayman Islands. Without such registrations, Solengo cannot operate.

49.    Further, under the laws of the Cayman Islands, the investment funds advised by Solengo must maintain a board of independent, unaffiliated directors. The OSC would create a dramatic increase in the personal risk to such potential directors of serving on the boards of these funds, thereby creating a significant deterrence effect. The lack of qualified outside directors will make it impossible for these investment funds to operate.

50.    The Solengo-advised investment funds must also engage the services of a prime brokerage firm in order to implement their intention to trade in commodity derivatives. The OSC would create a dramatic increase in the risk such a firm would take on by agreeing to clear and execute the trades of the Solengo advised investment funds. Were the OSC permitted to go forward, no prime brokerage firm would agree to service the Solengo funds' trading.

51.    In order to conduct their business, the Solengo-advised investment funds must also retain the services of an offshore fund administrator and solicit other third party services, including accounting and other financial services. Such administrative and financial services vendors will be unwilling to contract with the Solengo-advised investment funds were the OSC permitted to move forward.

52.    Solengo's viability also depends on the successful recruiting and hiring of a select number of individuals, in great demand because of their unique set of skills.  Commodity derivatives trading is highly quantitative and requires an advanced mathematical background. Any delay in Solengo's ability to move forward in hiring represents an unquantifiable business loss because of the likelihood that individuals with the relevant educational background and industry experience will accept other employment opportunities and the unique team of such professionals who have been assembled may break up and be essentially irreplaceable.

53.    The harm to Solengo from the OSC and, by virtue of his equity stake, to Mr. Hunter, is unquantifiable at present.  If Solengo ceases to exist as a business, Mr. Hunter will not only be forced to forgo an unspecified amount in potential performance and management fees from the Solengo-advised investment funds, but will also lose his new business.

54.    Unlike Plaintiff, FERC will not be harmed by the issuance of an injunction to delay its planned issuance of an OSC, pending the resolution of these issues at a full proceeding before this Court.  FERC's planned OSC relates only to past events..

## COUNT I
## DECLARATORY JUDGMENT

### FERC's Imminent Enforcement Action by OSC
### Is Beyond The Scope of Its Authority

55.    Plaintiff adopts and incorporates each of the foregoing allegations of this Complaint as if hereinafter set forth in full.

56.    The Energy Policy Act of 2005, §§ 315 and 1283, did not grant Defendant enforcement authority over entities exclusively involved in futures trading.

11

57.     Both the Natural Gas Act, 15 U.S.C. §§ 717, *et seq.*, and the Federal Power Act, 16 U.S.C. §§ 791, *et seq.*, restrict FERC's jurisdiction to the regulation of wholesale energy markets.

58.     Regulation of trading of natural gas futures contracts on NYMEX is reserved for the exclusive jurisdiction of the CFTC.

59.     By threatening and proceeding to an imminent enforcement action by against Plaintiff by OSC for alleged manipulation of natural gas futures on NYMEX, the FERC has grossly exceeded its statutory authority.

60.     The issue requires a purely legal determination by this Court of FERC's enforcement power under the Energy Policy Act.

61.     A declaratory judgment would clarify the legal relationship between FERC's assertion of jurisdiction, the Energy Policy Act, and the CEA.

62.     An injunction of FERC's unauthorized action would promote the public interest.

63.     Plaintiff has a direct and vital interest in having this issue resolved.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1.     Issue a Declaratory Judgment as follows:

    A.     The Federal Energy Regulatory Commission's assertion of jurisdiction over trading of energy commodities for future delivery is in conflict with the provisions of the Energy Policy Act, and the Natural Gas Act, 15 U.S.C. §§ 717, *et seq.*

    B.     The Federal Energy Regulatory Commission's assertion of jurisdiction over trading of energy commodities for future delivery is in conflict with the Commodity Exchange Act, 7 U.S.C. § 2.

    C.     The Federal Energy Regulatory Commission is enjoined from proceeding with any enforcement action against Plaintiff.

D.    Granting such other and further relief as the Court deems just and equitable.

## COUNT II
## TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

### FERC's Imminent Enforcement Action Is Beyond The Scope of Its Authority

64.    Plaintiff adopts and incorporates each of the foregoing allegations of this Complaint as if hereinafter set forth in full.

65.    The Energy Policy Act of 2005, §§ 315 and 1283, did not grant Defendant enforcement authority over entities exclusively involved in futures trading.

66.    Both the Natural Gas Act, 15 U.S.C. §§ 717, *et seq.*, and the Federal Power Act, 16 U.S.C. §§ 791, *et seq.*, restrict FERC's jurisdiction to the regulation of wholesale energy markets, which include physical natural gas.

67.    Plaintiff never traded physical natural gas.

68.    Exclusive jurisdiction over trading in natural gas futures markets on NYMEX is reserved to the CFTC.

69.    FERC has informed Plaintiff by letter dated July 19, 2007 and received on Friday, July 20, 2007 that it will bring an enforcement action against Plaintiff by issuing an OSC Tuesday, July 24, 2007 or Thursday, June 26, 2007.

70.    By pursuing an enforcement action against Plaintiff for alleged manipulation of natural gas futures contracts, the FERC has grossly exceeded its statutory authority.

71.    The unauthorized enforcement action brought by FERC will immediately and irreversibly damage both Plaintiff's personal reputation and the viability of Solengo, such that Solengo will cease to exist.

72.    There is no adequate legal remedy to redress the irreparable harm to be suffered by Plaintiff and Solengo in the event that FERC brings an unauthorized enforcement action against Plaintiff.

73.    By contrast, a temporary restraining order and preliminary injunction prohibiting the Commission from filing an unauthorized enforcement action against Mr. Hunter pending a proper resolution of these issues at a full proceeding before this Court would cause no harm to Defendant or to the public interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1.  Issue a Temporary Restraining Order and a preliminary injunction to prevent the Federal Energy Regulatory Commission from improperly bringing an enforcement action against Plaintiff in excess of its statutory authority; and

2.  Grant such other and further relief as the Court deems just and equitable.

Dated:    July 23, 2007
          Washington, D.C.


                                    Respectfully submitted,


                                    KOBRE & KIM LLP

                                    By: _____
                                        Michael S. Kim
                                        Natalie Holme Elsberg
                                        Kobre & Kim LLP
                                        800 Third Avenue
                                        New York, New York 10022
                                        Telephone:    212.488.1200
                                        Facsimile:    212.488.1220

                                        Justin V. Shur (973855)
                                        Kobre & Kim LLP
                                        1050 Connecticut Avenue N.W.
                                        Washington, D.C. 20036
                                        Telephone:    202.664.1900
                                        Facsimile:    202.664.1920

                                    *Attorneys for Plaintiff Brian Hunter*

*07-1307*
*RJL*

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Brian Hunter    99999 | Federal Energy Regulatory Commission |

Province of Alber
(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    District of Columbia
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Kobre & Kim LLP
1050 Connecticut Avenue, NW
Washington, DC 20036
Tel: 202.664.1900

Case: 1:07-cv-01307
Assigned To : Leon, Richard J.
Assign. Date : 7/23/2007
Description: TRO/PI

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- O  1 U.S. Government Plaintiff
- O  3 Federal Question (U.S. Government Not a Party)
- ⊙  2 U.S. Government Defendant
- O  4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| O  A. *Antitrust* | O  B. *Personal Injury/ Malpractice* | O  C. *Administrative Agency Review* | ⊙  D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☒ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| O  E. *General Civil (Other)* | OR | O  F. *Pro Se General Civil* |
|---|---|---|

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| O  **G. Habeas Corpus/ 2255** | O  **H. Employment Discrimination** | O  **I. FOIA/PRIVACY ACT** | O  **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| O  **K. Labor/ERISA (non-employment)** | O  **L. Other Civil Rights (non-employment)** | O  **M. Contract** | O  **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Court from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 USC Section 2201, et seq. - Declaratory Judgment for the purpose of determining a question of actual controversy

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** [ ] **JURY DEMAND:** | Check YES only if demanded in complaint  YES ☐  NO ☒ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE  July 23, 2007   SIGNATURE OF ATTORNEY OF RECORD _____

---

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.