**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **BRIAN HUNTER,** ) | |
| ) | **Civil Action No. CV07-1307 (RJL).** |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **FEDERAL ENERGY REGULATORY** ) | |
| **COMMISSION,** ) | |
| **888 First Street, NE** ) | |
| **Washington, DC 20426** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**DEFENDANT FEDERAL ENERGY REGULATORY COMMISSION'S**
**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        A.      The Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

                1.      Brian Hunter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
                2.      The Federal Energy Regulatory Commission . . . . . . . . . . . . . . . . 3

        B.      The Investigation and Order to Show Cause . . . . . . . . . . . . . . . . . . . . 3

        C.      Procedural History of this Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        D.      Related Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        E.      Issuance of the Order to Show Cause . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.    ARGUMENT: HUNTER CANNOT SATISFY ANY OF THE
        ELEMENTS REQUIRED TO OBTAIN A PRELIMINARY
        INJUNCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        A.      Hunter is Unlikely to Prevail on the Merits . . . . . . . . . . . . . . . . . . . . 7

                1.      There is No Justiciable Controversy Because There is No Final
                        Agency Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

                2.      The FERC Has Authority to Initiate an Enforcement Action
                        Against Hunter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                3.      The FERC's Jurisdiction Complements the CFTC's
                        Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

                4.      Jurisdiction To Review A FERC Order Rests With the United
                        States Court of Appeals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        B.      Hunter Will Not Suffer Irreparable Harm . . . . . . . . . . . . . . . . . . . . . 20

                1.      Any Harm From the Issuance of FERC's Order
                        Already Occurred . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

                2.      The Harm Alleged is Purely Speculative . . . . . . . . . . . . . . . . . . 21

        3.     An Injunction Will Not Prevent The Supposed Harm . . . . . . . . 23

  C.    Granting Hunter's Motion Would Substantially Harm the FERC's
       Enforcement Program and Is Not in the Public Interest . . . . . . . . . . . 24

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

# I.     INTRODUCTION

Pursuant to the Court's order of July 24, 2007, Defendant Federal Energy Regulatory Commission (hereinafter "FERC" or "the Commission") submits this Memorandum of Points and Authorities in Opposition to Plaintiff Brian Hunter's (hereinafter "Hunter") Motion for Preliminary Injunction.

Plaintiff Hunter's Motion for Preliminary Injunction ("Motion") is flawed on a number of grounds.  Despite the fact that the FERC has only begun its enforcement action against Hunter, he seeks to circumvent the jurisdictional requirement of final agency action by seeking a preliminary injunction alleging that the FERC's action is *ultra vires.*  Plaintiff's motion for preliminary injunctive relief, however, cannot meet the well-known, multi-part test necessary for such extraordinary relief.  *See  Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985); *Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958) (*per curiam*).

First, Hunter is unlikely to succeed on the merits of his claim because he avoids the most fundamental prerequisite for judicial review:  final agency action.  Moreover, Hunter's argument that the FERC's enforcement action is outside of its jurisdiction will also fail on the merits. Hunter's argument is based on an unduly narrow reading of the relevant statutory provisions, an overly simplistic view of the FERC's Anti-Manipulation Rule, and a fundamental misreading of the "exclusive" jurisdiction provision of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 2(a)(1)(A) (2000).  In addition, Hunter's Motion and Complaint were filed in the wrong court because the underlying statutes dictate that judicial review of FERC orders and enforcement actions under the Natural Gas Policy Act lies in the United States Court of Appeals.

Second, by his own admission, Hunter cannot demonstrate that the FERC's enforcement

action will result in irreparable harm to his business reputation or his nascent business venture. The FERC's Order to Show Cause has already been issued.  This latest development merely adds to the prior public record in which Hunter is accused of: (1) manipulative activity by the Commodity Futures Trading Commission ("CFTC"); (2) excessive speculation and exploiting the "Enron Loophole" to increase consumers' natural gas prices by the Senate Permanent Sub-Committee on Investigations; (3) investor fraud and market manipulation by private plaintiffs; and (4) causing, as reported in the press, the downfall of Amaranth Advisors LLC ("Amaranth") by engaging in illegal or excessively risky behavior.  In addition, Hunter has failed to demonstrate the actual existence of business interests that will be harmed if FERC is allowed to pursue its enforcement action.

Finally, the interests of FERC and the public will be harmed if FERC is restrained from fulfilling its congressional mandate to enforce recently adopted provisions barring market manipulation in connection with jurisdictional transactions.  For all of these reasons, the Motion should be denied.

## II.     BACKGROUND

### A.     The Parties

#### 1.     Brian Hunter

Plaintiff, Brian Hunter, was a natural gas trader and portfolio manager at Amaranth, a hedge fund based in Greenwich, Connecticut, from June 2004 until Amaranth's collapse in September 2006.  Declaration of Brian Hunter (submitted with the Motion and herein "Hunter Decl.") at ¶ 1.  Hunter purportedly made Amaranth roughly $1 billion from natural gas trading in 2005 (for which he received $75-$100 million in compensation).  In 2006, trading on natural gas

prices resulted in Amaranth losing $6 billion and being forced to liquidate the fund.[1]  *See, e.g.*,

Ann Davis, *How Giant Bets on Natural Gas Sank Brash Hedge-Fund Trader*, WALL ST. J., Sept.

19, 2006, at A1 (attached as Exhibit A).

### 2.    The Federal Energy Regulatory Commission

The FERC is an independent agency that regulates the rates, terms, and conditions of

interstate transmission of natural gas, oil, and electricity by certain entities.  FERC oversees

certain wholesale sales of natural gas and electric energy in interstate commerce, certificates

natural gas pipelines and licenses hydropower projects.  In 2005, Congress expanded FERC's

jurisdiction to reach *any* entity that, directly or indirectly, engages in manipulative practices *in

connection with* natural gas transportation and sales or electric transmission that have been

historically within FERC's jurisdiction.  EPAct 2005, 15 U.S.C. § 717c-1.

### B.    The Investigation and Order to Show Cause

In April 2006, FERC staff observed anomalies in the price of the NYMEX Natural Gas

Futures Contract for May Delivery.  Order to Show Cause, 120 FERC ¶ 61,085 at ¶¶ 55, 61

(attached as Exhibit B).  In June 2006, the FERC instituted a non-public investigation of

Amaranth, working throughout in close cooperation with the CFTC.  *Id.* at ¶ 53.  Over the course

of the next year, FERC staff reviewed Amaranth trading data, e-mails and instant messages,

obtained sworn testimony from Hunter and others, and eventually concluded there was a

substantial basis to believe that Amaranth and Hunter manipulated the NYMEX Futures Contract

price on February 24, March 29, and April 26, 2006.  *Id.* at ¶ 57.  Any manipulation of the

NYMEX Futures Contract price had a cascading effect on the price of a significant amount of

---

[1] FERC submits the various news articles attached to this Memorandum, not for the truth of the
matters asserted, but rather as evidence of public information about Mr. Hunter that has already
been disseminated.

natural gas transactions that are regulated by the FERC.  *Id.* at ¶¶ 20-27, 108-110.

On July 19, 2007, the FERC convened a non-public Commission meeting in which the five commissioners voted unanimously to issue an Order to Show Cause, which makes preliminary findings that Hunter and Amaranth violated the FERC's Anti-Manipulation Rule. The Order to Show Cause set forth the evidentiary basis for its preliminary findings, which includes non-public information that FERC obtained in the course of its investigation.  Exhibit B. However, at least five days before it could release non-public information, the FERC was required by Section 1b.20 of its regulations, 18 C.F.R. § 1b.20 (2006), to notify persons who provided such non-public information that it would release the information in the Order to Show Cause.  The purpose of the notice is to give the recipient an opportunity to seek protection from public disclosure of the information should there be a compelling basis for such protection.[2]

In a letter dated July 19, 2007, the FERC provided this five-day notice to Hunter on July 20, 2007.  Declaration of Justin V. Shur at ¶ 4 (submitted with the Motion, at Docket Entry # 2). The July 19, 2007 letter notified Hunter that the FERC voted to release specified non-public information provided by Hunter during the course of the FERC's investigation.  *Id.*  The letter also stated this information would be contained in a FERC Order to Show Cause.  *Id.*

---

[2] FERC's staff investigations are typically, as here, non-public, unless and until the FERC determines otherwise. 18 C.F.R. § 1b.9.  Companies and individuals may therefore have submitted information to FERC staff with an expectation of or a request for qualified protection from release to the public. However, once an investigation reaches the Show Cause stage, release of relevant information is necessary for the FERC to identify the basis for its preliminary conclusions. 18 C.F.R. § 385.209.  The Rule 1b.20 five-day notice is designed to afford any person whose information is to be contained in the Show Cause Order, including third parties who are not targets of the Show Cause Order, an opportunity to object to the release or otherwise seek some form of protection of its information.  Ordinarily, the need for such protection would be outweighed by the need to state publicly the basis for the FERC preliminary conclusion. However, this process is afforded in the event that a submitting person has a strong argument that their information is highly sensitive (e.g., a trade secret), need not be revealed in its entirety, or should be afforded some limited protection.  The process is not designed to trigger, as it apparently did here, an attempt to stop the enforcement action altogether.

### C.     Procedural History of this Case

On July 23, 2007, Hunter filed in this Court an *ex parte* application for a temporary restraining order ("TRO") and Preliminary Injunction to prohibit the FERC from initiating an enforcement action against Hunter by issuing the Order to Show Cause. Neither Hunter's action nor his Motion were filed under seal. It appears that, at the direction of the Court, Hunter served notice of the action upon the FERC on July 24, 2007. A hearing on Hunter's motion for a TRO was held by this Court that same day.[3] The Court there denied the motion for temporary restraining order and set a briefing schedule for the Motion.

### D.     Related Actions

On July 25, 2007, the CFTC filed a civil enforcement action in the United States District Court for the Southern District of New York against Hunter and Amaranth, alleging that they violated the Commodity Exchange Act ("CEA") by intentionally and unlawfully attempting to manipulate the NYMEX Futures Contract price on February 24 and April 26, 2006. *CFTC v. Amaranth Advisors, et al.*, 07-CV-6682 (S.D.N.Y. July 25, 2007) ("CFTC Complaint") (attached as Exhibit C). The CFTC is seeking permanent injunctive relief, an award of civil penalties, and other remedial and ancillary relief as necessary. The CFTC market manipulation claim against Hunter is based on substantially the same conduct and evidence as the FERC's market manipulation claims.

Within the last several months, Hunter was named as a defendant in two separate lawsuits filed by an Amaranth investor and a class action complaint by market participants claiming that Hunter engaged in investor fraud and market manipulation. *See San Diego County Employees*

---

[3] Notably, to date, U.S. Attorney's Office records do not indicate that it has been properly served. The undersigned counsel learned of the instant action through FERC approximately ninety minutes prior to the Court's hearing.

*Retirement Assoc. v. Nicholas Maounis et al.*, Docket No. 07 CV-2618 (S.D.N.Y. Mar. 29, 2007) (attached as Exhibit D); *Gracey v. Amaranth Advisors, LLC*, Docket No. 07 CV-6377 (S.D.N.Y. Jul. 12, 2007) (attached as Exhibit E).

In June of 2007, the Senate Permanent Sub-Committee on Investigations released a report alleging that Amaranth's excessive speculation caused consumers to pay artificially higher prices for natural gas during the Winter of 2006-07 and that in doing so Hunter exploited the "Enron Loophole" in the Commodity Exchange Act to circumvent CFTC regulations and NYMEX rules designed to prevent such excessive speculation. *See* STAFF REPORT OF S. PERMANENT SUBCOMM. ON INVESTIGATIONS, COMMITTEE ON HOMELAND SECURITY AND GOVERNMENTAL AFFAIRS, 110TH CONG., EXCESSIVE SPECULATION IN THE NATURAL GAS MARKET (2007) (attached as Exhibit F).

>       **E.      Issuance of the Order to Show Cause**

On July 26, 2007, the FERC issued to Hunter the Order to Show Cause. The Order to Show Cause states that Hunter may be ordered to pay civil penalties of $30 million, and Amaranth may be ordered to pay civil penalties of $200 million and to disgorge unjust profits of $59 million. Exhibit B at ¶ 8. However, the findings are preliminary and Hunter has 30 days to respond to the Order to Show Cause. After any response from Hunter, the FERC may request a brief, set certain issues for a trial-type proceeding, with full discovery before an administrative law judge ("ALJ"), request a recommendation or report from an ALJ, issue an order on the merits, or provide any other process that would justly and efficiently resolve the matter. *Id.* at ¶ 1 & n.7. Only at the culmination of such processes will the FERC issue a final order on the matter.

### III.    ARGUMENT

### HUNTER CANNOT SATISFY ANY OF THE ELEMENTS REQUIRED TO OBTAIN A PRELIMINARY INJUNCTION

Hunter cannot meet his heavy burden of establishing the four elements necessary to justify the extraordinary relief of a preliminary injunction. *See ACORN v. FEMA*, 463 F. Supp. 2d 26, 33 (D.D.C. 2006) (citing *Katz v. Georgetown Univ.*, 246 F.3d 685, 687-88 (D.C. Cir. 2001) (four elements justifying an injunction are: (1) a substantial likelihood of success on the merits; (2) irreparable injury if the injunction is not granted; (3) an injunction will not substantially injure other interested parties; and (4) public interest furthered by the injunction)). First, Hunter will not succeed on the merits of this claim. This Court lacks jurisdiction to entertain Hunter's motion because there has not been final agency action. FERC's Order to Show Cause is not *ultra vires* because it has statutory and regulatory authority to commence an enforcement action against any entity that engages in manipulation in connection with FERC-regulated sales of natural gas (*i.e.*, the prices of jurisdictional sales for resale) or transportation of natural gas. Second, Hunter has not (and cannot) established that the FERC's enforcement action will result in irreparable harm. Finally, the government and the public will be harmed if Hunter is permitted to interfere with the FERC's actions to fulfill its Congressional mandate to enforce its statutes and implementing regulations.

#### A.    Hunter is Unlikely to Prevail on the Merits

##### 1.    There is No Justiciable Controversy Because There is No Final Agency Action

"Federal courts are courts of limited jurisdiction that may exercise only those powers authorized by the Constitution and statute." *Royster-Clark Agribusiness, Inc. v. Johnson*, 391 F. Supp. 2d 21, 23 (D.D.C. 2005) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375,

377 (1994)).  Absent jurisdiction, a court lacks authority to declare the law and, therefore, must

dismiss the action.  *Id.* (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)

(citations omitted)).

The Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551, *et seq.*, which governs the

decision-making by federal agencies, limits judicial review of agency actions to review of

"'final' agency actions."  *Pennsylvania Mun. Auths. Ass'n v. Horinko*, 292 F. Supp. 2d 95, 102

(D.D.C. 2003) (citing 5 U.S.C. § 704).  The "finality" requirement is a threshold matter

necessary to establish the court's jurisdiction over a matter.  *Id.* (citations omitted); *see also*

*Beverly Enter., Inc. v. Herman*, 50 F. Supp. 2d 7, 11 (D.D.C. 1999) ("'Final agency action' is a

jurisdictional prerequisite to judicial review.") (citations omitted).    The purpose of limiting

judicial review to "final agency action" is to insure that agencies crystallize their position,

correct any errors, and resolve all outstanding issues *before* courts review agency conduct,

thereby reducing the burden on courts that could result from piecemeal and unnecessary review

of interlocutory agency actions.  *FTC v. Standard Oil Co.*, 449 U.S. 232, 242 (1980).

Factors relevant for determining whether agency action is final include: (1) whether the

action represents a definitive statement of the agency's position; (2) whether the agency action

has a direct and immediate effect on the day-to-day business of the party affected; and (3)

whether the action is legal or factual in nature.  *Id.* at 239; s*ee also Ciba-Geigy Corp.  v. EPA*,

801 F.2d 430, 436 (D.C. Cir. 1986) (agency action considered final if it demands compliance

with an announced position); *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (final agency action

is one that marks the culmination of the agency's decision-making process and the action

determines rights or obligations); *Beverly Enter., Inc.*, 50 F. Supp. 2d at 12 (where completion of

the agency process may obviate the need for judicial review, the intermediate agency action is

not final) (citing *DRG Funding Corp. v. HUD*, 76 F.3d 1212, 1215 (D.C. Cir. 1996)).  When evaluated against these three factors, the Order to Show Cause is demonstrably *not* final.

First, "[f]inal orders" "impose[] an obligation, den[y] a right, or fix[] some legal relationship, usually at the consummation of an administrative process." *NRDC v. NRC,* 680 F.2d 810, 815 (D.C. Cir. 1982) (quoting *Honicker v. NRC*, 590 F.2d 1207, 1209 (D.C. Cir. 1978)).  The FERC's Order to Show Cause is not a definitive statement as to whether Hunter violated the law, nor does it impose any liabilities or obligations.  *See* Exhibit B.  Rather, the Order to Show Cause represents the beginning of a formal enforcement process that will enable the FERC to determine whether Hunter violated FERC regulations.  *See FTC v. Standard Oil Co.*, 449 U.S at 240-41 (issuance of a complaint averring reason to believe that respondent violated the statute is not final agency action, but a determination that adjudicatory proceedings will commence);[4] *Royster-Clark Agribusiness,* 391 F. Supp. 2d at 27-28 (a notice of violation ("NOV") is not final agency action because it is the first step in the enforcement process and considerable enforcement discretion remains after the NOV is issued).  Much like an NOV, the Order to Show Cause sets forth preliminary findings of the FERC and invites Hunter to come forward with information to respond to these initial findings.  Consequently, this Court should not review this interlocutory action.  *NRDC v. NRC,* 680 F.2d at 816 (citing *Western Union Int'l, Inc. v. FCC*, 652 F.2d 136, 144 (D.C. Cir. 1980)); *Gifford-Hill & Co. v. FTC*, 523 F.2d 730, 732-33 (D.C. Cir. 1975)).

Second, the Order to Show Cause has no immediate legal or practical effect on Hunter's day-to-day business.  Unlike situations where a party challenges the promulgation of a rule that

---

[4]  Judicial review of the FERC's enforcement action could be unnecessary if the FERC determines that Hunter did not violate the relevant statutory and regulatory provisions.  Under this scenario, Hunter may have no reason to seek judicial review.  *Beverly Enter., Inc.*, 50 F. Supp. 2d at 12.

could have immediate effect on the regulated community and could subject those parties to sanctions for non-compliance, Hunter has not, and cannot, demonstrate that the Order to Show Cause would have such an immediate legal effect.  *See Abbott Labs. v. Gardner*, 387 U.S. 136, 152-3 (1967) (the challenged regulation forced manufacturers to either change their labels, advertisements, and/or promotional materials or risk serious criminal or civil penalties); *Belle Fourche Pipeline Co. v. FERC*, 751 F.2d 332, 335 n. 3 (10th Cir. 1984) (suit challenging FERC's authority to regulate the action of plaintiffs was premature).[5]

Third, notwithstanding Hunter's claim to the contrary, the *ultra vires* claim is not a purely "legal" issue that is suitable for early judicial review.  Hunter does not challenge the FERC's statutory or regulatory authority to issue an order and/or pursue claims of market manipulation.  Instead, Hunter asserts that the relevant anti-market manipulation provision of the Energy Policy Act of 2005 ("EPAct 2005"), Pub. L. No. 109-58, § 315 (2005) (codified as an amendment to the Natural Gas Act ("NGA") at 15 U.S.C. §717c-1) does not apply to his conduct and, therefore, the enforcement action is improper.  Hunter may respond to the Order to Show Cause with facts that may bear on the issue whether he violated the FERC's regulations.  *See Beverly Enter.,* 50 F. Supp. 2d at 14 (pre-enforcement review of regulations is premature because resolution of the

---

[5] Hunter's reliance on *Ciba-Geigy Corp. v. EPA*, 801 F.2d 430 (D.C. Cir. 1986) is misplaced.  In *Ciba-Geigy,* plaintiff sought review of a United States Environmental Protection Agency ("EPA") letter that required all registrants of a certain pesticide by a date certain to change their labels to include a statement of restricted use and an advisory statement.  Those who do not comply with this new requirement would face an enforcement action.  *Id.* at 433.  Ciba Geigy, which faced an imminent legal obligation as a result of EPA's action, did not challenge the merits of EPA's labeling requirements, but instead claimed that EPA failed to follow the necessary procedures before it changed the labeling requirements.  *Id.* at 435.  In this action, Hunter is challenging the merits of the FERC's actions, although the FERC's action imposes no liability or legal obligation that affects Hunter's day-to-day business operations.  *Compare Brendsel v. Office of Federal Housing Enter. Oversight*, 339 F. Supp. 2d 52, (D.D.C. 2004) (Defendant's effort to freeze plaintiff's assets and payment of compensation had immediate effect on plaintiff).

issues will require an inquiry into the statutory purpose, and an understanding of the enforcement problems faced by the agency). Hunter may also respond to the Order to Show Cause with any legal arguments, including the scope of Commission jurisdiction under the new anti-manipulation provision of the NGA, in order to assist in determining whether Hunter's conduct amounted to manipulation in connection with transactions within the FERC's jurisdiction. Moreover, Hunter's attempt to circumvent the jurisdictional requirement of final agency action requirement by casting the FERC's action as *ultra vires* is unavailing. Though Hunter may disagree with the FERC's assertion of jurisdiction, he cannot demonstrate that the FERC's Order to Show Cause is in "brazen defiance" of its statutory authority as the cases require. *Phillip Morris, In. v. Block*, 755 F.2d 368, 370 (4th Cir. 1985) (plaintiff's claim that the Patent and Trademark Office's decision was *ultra vires* failed because there was no evidence that the agency acted in "brazen defiance" of its statutory authority). Hunter's expansive interpretation of the *ultra vires* doctrine could effectively be used to preclude or delay all administrative adjudication. *Royster-Clark Agribusiness,* 391 F. Supp. 2d at 25.

### 2. The FERC Has Authority to Initiate An Enforcement Action Against Hunter

The EPAct 2005 amended the NGA to give the FERC broad authority to prevent market manipulation affecting jurisdictional sales and transportation of natural gas. EPAct 2005, 15 U.S.C. § 717c-1.[6] The FERC adopted Rule 1c.1, "The Anti-Manipulation Rule," to implement this authority. 18 C.F.R. § 1c.1. The FERC adopted the new rule through "Order No. 670." *Prohibition of Energy Market Manipulation*, 71 Fed. Reg. 4244 (Jan. 26, 2006). The Anti-Manipulation Rule, which implements the new NGA provision, and is based largely on the

---

[6] A parallel provision was added to the Federal Power Act. 16 U.S.C. § 222(a).

Securities and Exchange Commission's 10b-5 regulation, prohibits all kinds of deception, manipulation, deceit and fraud.  Order No. 670 at ¶¶ 49, 50; s*ee also* 18 C.F.R. § 1c.1.[7]  The provision's reach is broad because it prohibits *any* entity from engaging in manipulation that is "in connection with" a jurisdictional transaction.  *Id.* at ¶¶ 2, 16.[8]  Congress modeled the "in connection with" after section 10(b) of the Securities Exchange Act, 15 U.S.C. 78j(b) (2000), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 (2006), which has been construed as a broad anti-fraud "catch-all clause" to cover a wide range of fraudulent, deceptive and manipulative practices.  Order No. 670 at ¶ 25 (*quoting Aaron v. SEC*, 446 U.S. 680, 690 (1980)).[9]

Order No. 670 also states that the statutory phrase "any entity" (which is repeated in the Anti-Manipulation Rule) covers not just companies that have traditionally been subject to FERC jurisdiction (such as natural gas pipeline companies or public utilities), but also to include *any* company or firm, and natural persons as well who, "intended to affect, or have acted recklessly to affect, a jurisdictional transaction."  Order No. 670 at ¶¶ 2, 18, 22.  Thus, while the FERC is not authorized to regulate all commodities trading behavior by any person or company, the new NGA section added by EPAct 2005 does give the FERC authority to enforce against *any* entity,

---

[7] Hunter's Motion does not contend that the alleged conduct is not fraudulent under the Anti-Manipulation Rule.

[8] The Commission-jurisdictional sales in question are wholesale natural gas sales in interstate commerce that are not "first sales" ("first sales" are sales from the producer to the consumer, unless and until gas is purchased by an inter- or intra-state pipeline, or local distribution company) within the meaning of the Natural Gas Policy Act of 1978 (NGPA), 15 U.S.C. § 3431(a)(1)(A) (2000).

[9] Consistent with the mandate that certain aspects of the FERC's new authority be exercised in a manner consistent with Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), and consistent with Congress's modeling of EPAct 2005 Sections 315 (new NGA Section 4A) and 1283 (new FPA Section 222) on Section 10(b) of the Exchange Act, the FERC modeled the Anti-Manipulation Rule on SEC Rule 10b-5.  *Id.* at ¶ 7; *see also* Exchange Act, 15 U.S.C. § 78j(b) (2000); 17 C.F.R. § 240.10b-5 (2005).

if the manipulative trading, whether intentionally or recklessly, affects physical natural gas markets, which are unquestionably within the FERC's jurisdiction. Thus, a transaction is covered by the Anti-Manipulation Rule if "in committing fraud, the entity . . . intended to affect, or have acted recklessly to affect, a jurisdictional transaction." *Id.* Whether Hunter's conduct amounts to manipulation is "a question of fact that is to be determined by all the circumstances of a case." *Id.* at ¶ 50.

Hunter's argument that he cannot be covered by the Anti-Manipulation Rule because he never traded in "physical gas" is off the mark. Under the analogous Rule 10b-5 precedent, the alleged manipulator need not be a party to the jurisdictional transaction,[10] nor must the connection be overwhelmingly direct.[11] The EPAct 2005 expanded FERC's NGA jurisdiction to cover those situations where there is a "nexus" between the manipulative conduct and the jurisdictional physical transaction. *See* Order No. 670 at ¶ 16 (stating where there is no "nexus" between the conduct and a jurisdictional transaction, fraud and manipulation in a non-jurisdictional transaction is not subject to the Anti-Manipulation Rule).

---

[10] The text of the Anti-Manipulation Rule prohibits "any entity" from engaging in manipulation "in connection with" a jurisdictional transaction; the Rule does not state that liability extends only to persons "engaged in" or "a party to" such a transaction. Moreover, cases under the Exchange Act generally demonstrate that one can violate Rule 10b-5 (which implements Section 10(b) of the Exchange Act) without being a purchaser or seller. *See, e.g., Basic Inc. v. Levinson*, 485 U.S. 224 (1988) (permitting shareholder suit for damages under 10b-5 where company made misleading statements that affected its own stock). Section 10(b) also does not require deception of an identifiable purchaser or seller, only deception "in connection with the purchase or sale of any security," in keeping with the Exchange Act's goal of ensuring honest markets. *See United States v. O'Hagan*, 521 U.S. 642, 658 (1997).

[11] The Anti-Manipulation Rule prohibits an entity from "directly or indirectly" committing fraud. 18 C.F.R. § 1c.1. The Supreme Court construes the "in connection with" language of the SEC regulatory scheme with flexibility, not technically and restrictively, in order to accomplish the scheme's remedial purposes. *See SEC v. Zandford*, 535 U.S. 813, 819 (2002) (citations omitted); *Superintendent of Insurance v. Bankers Life & Cas. Co.*, 404 U.S. 6, 12 (1971).

The FERC issued to Hunter the Order to Show Cause because preliminary information suggests that Hunter's manipulation of the NG Futures Contract settlement price[12] was "in connection with" Commission-jurisdictional transactions. Hunter's manipulation of the NG Futures Contract settlement price, as described in the Order to Show Cause, had a cascading effect, either intentionally or recklessly, on Commission-jurisdictional transactions. Physical basis transactions,[13] which are within the FERC's jurisdiction, are based on the NG Futures Contract settlement price. *See* Order to Show Cause (Exhibit B) at Figure 1 and ¶¶ 23, 25, and 26 (explaining the inter-relationship between the NG Futures Contract settlement price and transactions that are within FERC's jurisdiction). Because the NG Futures Contract settlement price is directly incorporated into physical basis transactions, any manipulation of the NG Futures Contract settlement price will inevitably result in a penny-for-penny change in the prices used in physical basis transactions. In addition, some NG Futures Contracts "go to delivery" – meaning they become physical sales – and their prices are also set by the settlement price. *Id.* at ¶ 26. During the months in question more than 20 billion cubic feet of natural gas was priced in this manner. *Id.*

By affecting physical basis transactions, Hunter's conduct would also influence all or a

---

[12] The NG Futures Contract "settlement price" is the volume-weighted average price of trades made during the 30-minute "settlement period," which is the last 30 minutes of trading on the termination day for the "prompt-month" contract. The "prompt-month" is the next calendar month. The "termination day" for the NG Futures Contract is the third-to-last business day of the month preceding the prompt month, and the settlement period occurs from 2:00 p.m. to 2:30 p.m. on the termination day (except when the NYMEX is operating on a holiday schedule). So, for example, for August 2007, the prompt-month contract is the September 2007 NG Futures Contract. The last business day for August 2007 is Friday, August 31, so the settlement period for the September 2007 NG Futures Contract will take place from 2:00 p.m. to 2:30 p.m. on Wednesday, August 29, 2007.

[13] A physical basis transaction is a contract for delivery of natural gas at some location in the wholesale natural gas delivery system that spans the nation.

substantial majority of the monthly "bid week" transactions at trading points in the East, Mid-Continent, and the Gulf Coast.  Order to Show Cause (Exhibit B) at ¶¶ 21-22 and Figure 1. These "bid week" transactions are used to calculate the monthly price indices at these points.**[14]** The monthly price indices, in turn, are relied on by consumers, producers, marketers, and state regulators in pricing or reviewing the pricing of monthly wholesale transactions, a substantial volume of which fall within the FERC's jurisdiction.  *Id.* at ¶¶ 23, 24.  Thus, if Hunter manipulated the settlement price of natural gas futures, then his conduct would be "in connection with" physical transactions that are within the FERC's jurisdiction.

### 3.    The FERC's Jurisdiction Complements the CFTC's Jurisdiction

Hunter's argument that the CFTC has "exclusive jurisdiction" over the claims in the Order to Show Cause is unsupported by the CEA or the NGA.  The FERC does not have jurisdiction to regulate trading in the NG Futures Contract if that trading does not affect the FERC's jurisdictional markets; that is the province of the CFTC.  Yet where, as here, an entity's conduct does affect the FERC's jurisdictional transactions, the exercise of jurisdiction by both FERC and CFTC is complementary and not in conflict.

Hunter's Motion omits the most salient portion of the CEA.  While the CEA provides that the CFTC has exclusive jurisdiction to regulate accounts, agreements, and transactions involving futures contracts traded on designated contract markets and other registered entities, the CEA

---

**[14]** Monthly price indices are compiled and published by several trade press entities (*e.g.*, Platts or Natural Gas Intelligence) who obtain information provided on a voluntary basis by market participants about trades occurring at various physical natural gas trading locations.  Monthly indices are normally calculated based on the volume-weighted average price of fixed-price and/or physical basis transactions executed at such locations during "bid week," which is the last five business days of the month.  As such, the NG Futures Contract settlement price is included in the calculation of indices for locations where bid week physical basis trades are reported to publishers.  Order to Show Cause (Exhibit B) at ¶ 21.

also states:

> Except as hereinabove provided, nothing contained in this section shall (I) supersede or limit the jurisdiction at any time conferred on the Securities and Exchange Commission or other regulatory authorities under the laws of the United States or any state, or (II) restrict the Securities and Exchange Commission and such other authorities from carrying out their duties and responsibilities in accordance with such laws.

7 U.S.C. § 2(a)(1)(A) (2000).

The CEA does not divest the FERC or other federal regulators of their authority to pursue their traditional regulatory functions.  Nor does the CEA interfere or conflict with the new regulatory functions given to the FERC in EPAct 2005.  Where two regulatory regimes overlap, courts have concluded that Congress intended that both should be given effect.  For example, in *United States v. Reliant Energy Services, Inc.*, 420 F. Supp. 2d 1043 (N.D. Cal. 2006), the court concluded that the FERC's exclusive jurisdiction under the Federal Power Act to regulate the transmission and sale at wholesale of electricity in interstate commerce did not preempt the anti-manipulation jurisdiction under the CEA pertaining to electricity prices during California's energy crisis in Summer 2000.  420 F. Supp. 2d at 1045 (quoting *United States v. Borden Co.*, 308 U.S. 188, 198 (1939) ("[I]t is a cardinal principle of construction that … when there are two acts upon the same subject, the rule is to give effect to both" and "Congressional intent behind one federal statute should not be thwarted by the application of another federal statute if it is possible to give effect to both laws.")); *see also SEC v. Hopper*, No. H-04-1054, 2006 U.S. Dist LEXIS 17772 (S.D. Tex. Mar. 24, 2006) (court rejected defendants' argument that SEC could not sanction energy trader for "round-trip" trading because such energy trading fell within exclusive jurisdiction of the FERC and the CFTC because the transactions were fraudulent and deceptive within the meaning of Rule 10b-5).

In EPAct 2005 Congress recognized that futures market activity relates to and affects Commission-jurisdictional activities. So, in addition to expanding the reach of the Commission's anti manipulation jurisdiction to reach "any entity" and not just traditional natural gas companies, Congress directed the CFTC and the FERC to execute a Memorandum of Understanding ("MOU") to establish, among other things, provisions ensuring that investigations pertaining to markets within the respective jurisdiction of each agency are properly coordinated to minimize duplicative information requests, provide for adequate protection of proprietary trading information, and the like. EPAct 2005 § 316 (2005) (codified at 15 U.S.C. 717t-2(c)(1)). Pursuant to its provisions, the staffs of the two agencies worked closely together for more than a year to coordinate discovery, take joint depositions, and share documentary evidence. *See* Order to Show Cause (Exhibit B) at ¶¶ 48, 55. As a result of these joint efforts, the CFTC likewise concluded that Amaranth and Hunter violated the anti-manipulation provisions of the CEA, and filed a civil complaint regarding their illegal manipulative conduct against Hunter and Amaranth on July 25. CFTC Complaint (Exhibit C).

Contrary to the suggestion of Hunter's counsel during the TRO hearing on Tuesday, July 24 that the CFTC might oppose the issuance of the Order to Show Cause, (s*ee* Transcript of Hearing on Hunter's Motion for Temporary Restraining Order, July 24, 2007 (hereinafter "Tr.") at 32:20-33:4 (excerpts attached as Exhibit G)), the two Commissions worked *together* to accomplish their respective investigations. As the CFTC stated in its July 25, 2007 press release announcing its civil action against Amaranth and Hunter:

> The Commission wishes to thank the Federal Energy Regulatory Commission (FERC), the Securities and Exchange Commission, and the New York Mercantile Exchange for their assistance with this investigation. Of particular note is the CFTC's coordination with the FERC on this matter, per the agencies' Memorandum of Understanding.

*See* CFTC, U.S. Commodity Futures Trading Commission Charges Hedge Fund Amaranth and

its Former Head Energy Trader, Brian Hunter, with Attempted Manipulation of the Price of

Natural Gas Futures, Release No. 5359-07 (July 25, 2007),

http://www.cftc.gov/opa/enf07/opa5359-07.htm.  FERC's Chairman similarly stated in a July 26

press release announcing the issuance of the Order to Show Cause,

> I also want to praise the Commodity Futures Trading Commission for being a
> strong partner in coordinating investigations regarding market manipulation.
> There is a relationship between physical gas sales and gas futures, and
> coordination between the two agencies is necessary to effectively police market
> manipulation.

FERC, *Commission Takes Preliminary Action in Two Major Market Manipulation Cases*, R-07-

47, http://www.ferc.gov/news/news-releases/2007/2007-3/07-26-07.asp; *see also* Order to Show

Cause at  ¶¶ 48, 53, 55 (attached as Exhibit  B).

   In short, the CFTC has jurisdiction over trading on its regulated exchanges, the FERC has

jurisdiction over certain types of natural gas and electric markets, and where these markets are

interconnected, both agencies enforce their respective laws and regulations.  Far from the

jurisdictional stretch that Hunter asserts, this situation represents the sensible inter-agency

coordination that Congress expected.

### 4.    Jurisdiction To Review A FERC Order Rests With the United States Court of Appeals

   To the extent that Hunter seeks judicial review of FERC orders involving violations of

the relevant statutes, regulations and orders, including statutory interpretation of the scope of the

FERC's authority under the new anti-market manipulation provisions, such review may be

obtained only from the United States Court of Appeals.  The underlying authorizing statutes

clearly provide that the Court of Appeals has exclusive jurisdiction to review FERC final orders

and enforcement actions. *See, e.g.,* 15 U.S.C. § 717r(b) (Section 19(b) of the Natural Gas Act provides that review of all FERC orders shall be obtained in the Court of Appeals and a petition for rehearing of a Commission order is a prerequisite to judicial review); *Tennessee Gas Pipeline Co. v. FERC*, 9 F.3d 980, 981 (D.C. Cir. 1993) (even a pending rehearing request renders a petition for review "incurably premature"); Natural Gas Policy Act of 1978 (NGPA), 15 U.S.C. § 3416(t); *FCC v. ITT World Communications, Inc.*, 466 U.S. 463, 468 (1984) (under the relevant statute, the Court of Appeals, not the district court, had jurisdiction to enjoin the FCC action as *ultra vires,* however, the claim was not ripe for review by any court); s*ee also Belle Fourche Pipeline Co. v. FERC*, 751 F.2d 332, 335 (10th Cir. 1984) (Court of Appeals held that plaintiff's complaint alleging that FERC's investigation exceeded its authority should be dismissed because the district court lacked jurisdiction to enjoin FERC from enforcing its investigative subpoenas); *Public Utility Dist. No. 1 of Snohomish County Washington v. FERC*, 270 F. Supp. 2d 1 (D.D.C. 2003) (motion for preliminary injunction seeking review of a FERC order denying plaintiff's request that two commissioners recuse themselves was denied because jurisdiction to review FERC orders lies in the Court of Appeals for the District of Columbia) (citing *City of Tacoma v. Taxpayers of Tacoma,* 357 U.S. 320 (1958)).

Because Hunter seeks judicial review of the merits of the underlying administrative proceeding, only a United States Court of Appeals has jurisdiction to entertain that action – and then only when the action is final. *Brendsel v. Office of Federal Housing Enter. Oversight*, 339 F. Supp. 2d 52, 59 (D.D.C . 2004). Hunter cannot evade this jurisdictional requirement by arguing that the FERC's action is *ultra vires*. *See FCC v. ITT World Communications, Inc.*, 466 U.S. at 468.

**B.    Hunter Will Not Suffer Irreparable Harm**

Hunter's claims that the FERC's enforcement action will result in damage to his business reputation and that he will suffer economic harm are logically flawed and factually unsupported. To the extent Hunter could be harmed by the FERC's Order to Show Cause, such harm has already occurred.  Therefore, enjoining the FERC's Order to Show Cause and enforcement action against Hunter would not prevent the posited harm.  Second, any "harm" to Hunter's business that may result from further FERC action is highly speculative and is unsupported other than by Hunter's conclusory statements.  Finally, to the extent that Hunter's business reputation has been harmed, such harm is likely the result of the multiple lawsuits, congressional and federal investigations, and countless news accounts detailing the allegations made against him, all of which preceded the Order to Show Cause.  There is nothing to suggest that the FERC's continuation of administrative action alone will cause "irreparable harm."

**1.    Any Harm From the Issuance of FERC's Order Already Occurred**

Now that the FERC issued the Order to Show Cause and the CFTC filed its civil action against Hunter, Hunter cannot establish that he will suffer an irreparable harm.  During the July 24, 2007 hearing on Hunter's motion for a TRO, Hunter's counsel stated repeatedly that the purpose of his motion was to prevent the harm that would flow directly from the issuance of the Order to Show Cause containing allegations of misconduct.  *See* Tr. (Exhibit G) at 8:15 – 9:1 ("the irreparable harm is the issuance of the order itself."); 9:9-10 (same); 9:21 – 10:2 (same); 13:22-23 (if the order is issued, "my client's business will be destroyed."); 17:17-21 (Hunter claims that consequences will flow from the issuance of the order); 18:14-21 ("the very harm we are seeking to prevent would happen instantly.").  Therefore, granting Hunter's Motion for Preliminary Injunction "would be much like locking the barn door after the horse is gone."

20

*Marcy Playground, Inc. v. Capitol Records, Inc.,* 6 F. Supp. 2d 277, 282 (S.D.N.Y. 1998) (*cited by Scott-Blanton v. Universal City Studios Productions, LLP*, Civil Action No. 07-0098, 2007 U.S. Dist. LEXIS 51900 at *13 (D.D.C. July19, 2007)).

To the extent that Hunter suffered harm as a result of publicizing the FERC's intent to issue an Order to Show Cause, that harm was inflicted by Hunter when he initiated  this action, which was not filed under seal pursuant to LCvR 5.1(j)(1), and which made public the existence of the previously non-public Order to Show Cause.  Immediately after Hunter filed his complaint, both the New York Times and the Wall Street Journal ran stories noting that Hunter was facing enforcement action.  *See* Andrew Ross Sorkin, *Ex-Amaranth Trader Faces Regulatory Action*, New York Times, July 25, 2007 (attached as Exhibit H); Ann Davis, *Ex-Amaranth Trader Fights Regulator*, Wall St. J., July 25, 2007, at C2 (attached as Exhibit I).  Thus, Hunter's own action caused exactly the harm to his reputation and to his prospective business venture that he seeks to avoid.  Hunter cannot make a showing of irreparable harm when the alleged injury being suffered is largely of his own doing.  *See Genex Coop. v. Bujnevicie*, No. 00-120-M, 2000 U.S. Dist. LEXIS 20933 at *21-22 (D.N.H. 2000) (declining to find irreparable harm when "[plaintiff's] own actions have played a major role in this harm").

## 2.    The Harm Alleged is Purely Speculative

Hunter bears the burden of proving that the injury he will suffer is "both certain and great; it must be actual and not theoretical." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).  "Bare allegations of what is likely to occur are of no value since the court must decide whether the harm will in fact occur." *Id*.  Hunter alleges that the FERC's ongoing enforcement would cause him irreparable harm to his reputation and his new business venture

named Solengo.  *See* Complaint (Docket Entry # 1) at ¶¶ 43-54.  However, "economic loss[es]

do[] not, in and of itself, constitute irreparable harm, *Wisconsin Gas*, 758 F.2d at 674 (*quoting*

*Virginia Petroleum Jobbers Assoc. v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958)), nor does mere

"loss of a business opportunity."  *Berman v. DePetrillo*, No 97-70, 1997 U.S. Dist. LEXIS 3966

at *6 (D.D.C. Mar. 20, 1997).[15]

    While "economic loss that threatens the survival of a movant's business constitutes

irreparable harm," *Wisconsin Gas*, 758 F.2d at 674, Hunter must demonstrate that any harm is

concrete.   In this case, the harms identified by Hunter during the July 24, 2007 hearing on

Hunter's Motion for TRO are too speculative to meet the standards for a preliminary injunction.

First, Hunter admitted that Solengo is not in business; it is a purely prospective business venture

waiting "to launch."  Tr. (Exhibit G) at 20.  Second, Hunter acknowledged that Solengo has not

yet satisfied any of the necessary pre-conditions for commencing its proposed business,

including:  (1) regulatory registrations, permits, and other legal arrangements, Hunter Decl. at ¶¶

13, 17-19; (2) the necessary third-party administrative and financial services, *Id.*. at ¶¶ 20-22; or

(3) skilled employees or unaffiliated directors, *Id.* at ¶¶ 19, 23.   Third, Hunter conceded that he

has not received any firm commitments from investors in Solengo.  Tr. (Exhibit G) at 21:2-22

(no one has committed money to Hunter's business venture).  Instead, the only harm Hunter

alleged is that he may lose his own personal investments to develop Solengo's business.  Hunter

Decl. at ¶ 15.  Finally, Hunter acknowledges that the harm is "forgone *unquantifiable* income

from *potential* profit earned and fees." *Id.* at ¶ 14 (emphasis added).  While "economic loss that

---

[15]   It is well established that financial expenses or losses do not justify early judicial review.
*Standard Oil,* 449 U.S. at 244 (the burden, expense, and disruption of defending an enforcement
action is part of the social burden of living under government and, therefore, is not considered
irreparable harm) (citations omitted); *Beverly,* 50 F. Supp. 2d at 13 (citing *Abbott Labs.*, 387 U.S.
at 153)).

threatens the survival of a movant's business constitutes irreparable harm," *Wisconsin Gas*, 758

F.2d at 674, this requires, at the very least, that Hunter actually have a business.  Where, as here,

Hunter has not received the necessary legal or regulatory approvals to engage in the prospective

business activities, harm resulting from lost sales or fees are speculative.  *See Apotex, Inc. v.*

*FDA*, Civ. Action No. 06-0627 JDB, 2006 U.S. Dist. LEXIS 20894 at *54-56 (D.D.C. Apr. 19,

2006) (increased market competition is not irreparable harm that would justify issuance of a

preliminary injunction).

### 3.      An Injunction Will Not Prevent The Supposed Harm

Hunter's claim that the FERC's enforcement action alone will harm his business

reputation ignores the numerous allegations and claims Hunter already faces from a variety of

sources.  First, the CFTC filed a civil complaint against Hunter and Amaranth, which accuses

them of manipulative activity based on substantially the same conduct that is the subject of the

Order to Show Cause.  Throughout the complaint, Hunter is identified as the lead actor and

mastermind of the manipulative schemes.  *CFTC v. Amaranth Advisors, et al.*, 07-CV-6682

(S.D.N.Y. July 25, 2007) (attached as Exhibit C).  Second, the Senate Permanent Sub-Committee

on Investigations alleges that Amaranth's excessive speculation caused consumers to pay

artificially higher prices for natural gas during the Winter of 2006-07 and that in doing so Hunter

exploited the "Enron Loophole" in the Commodity Exchange Act to circumvent CFTC

regulations and NYMEX rules designed to prevent such excessive speculation.  *See* STAFF

REPORT OF S. PERMANENT SUBCOMM. ON INVESTIGATIONS, COMMITTEE ON HOMELAND SECURITY

AND GOVERNMENTAL AFFAIRS, 110TH CONG., EXCESSIVE SPECULATION IN THE NATURAL GAS

MARKET (2007) (attached as Exhibit F).  This report, in turn, was widely covered in the press.

*See* Jeremy Grant, *Amaranth Gas Trades 'Hit US Consumer'*, Financial Times, June 25, 2007

(attached as Exhibit J); Bill Holland, *Amaranth's Activities Underscore Need for Regulation of Electronic Platforms*, Platts Inside FERC Gas Market Report, June 29, 2007, at 17 (attached as Exhibit K).  Third, Hunter is a defendant in two separate lawsuits filed by an Amaranth investor and a class action complaint by market participants claiming that Hunter engaged in investor fraud and market manipulation.  *See San Diego County Employees Retirement Assoc. v. Nicholas Maounis et al.*, Docket No. 07 CV-2618 (S.D.N.Y. Mar. 29, 2007) (attached as Exhibit D); *Gracey v. Amaranth Advisors, LLC*, Docket No. 07 CV-6377 (S.D.N.Y. Jul. 12, 2007) (attached as Exhibit E).  Fourth, there have been widespread press reports that Hunter's reckless trading caused the collapse of Amaranth in September 2006.  *See, e.g.,* Ann Davis, *How Giant Bets on Natural Gas Sank Brash Hedge-Fund Trader*, WALL ST. J., Sept. 19, 2006, at A1 ((attached as Exhibit A); *What Went Wrong with Amaranth Advisors*, Pittsburgh Post-Gazette, Sept. 20, 2006, (attached as Exhibit L); Barbara T. Dreyfuss, *What Hedge Funds Risk*, 18:7 American Prospect 30 (July 2007-Aug. 2007) (attached as Exhibit M) (Hunter "was largely responsible for risky natural gas investments, which last September lost more than $6 billion for his then-employer Amaranth Advisors"); Ann Davis, *Ex-Amaranth Trader Fights Regulator*, Wall St. J., July 25, 2007, at C2 (attached as Exhibit I) (stating that plaintiff's "bad bets triggered the collapse of hedge fund Amaranth Advisors").  FERC's enforcement proceedings are only one of several public charges faced by Mr. Hunter.  Stopping FERC's proceedings will not stop the harm he supposes.

### C.    Granting Hunter's Motion Would Substantially Harm the FERC's Enforcement Program and Is Not in the Public Interest

Hunter's Motion completely disregards the harm to the FERC's enforcement program and the public that would result from enjoining the FERC's enforcement action against price manipulation that affects markets within its jurisdiction.

With EPAct 2005, Congress took action to protect energy markets.  5 U.S.C. § 717c-1.

This represents the first time that Congress mandated the FERC to prohibit market manipulation

by "any entity," whether or not previously subject to FERC's jurisdiction, "in connection with"

the purchase or sale of natural gas subject to the jurisdiction of the FERC.  Order No. 670 at ¶

49.  This authority was granted largely in response to the widespread manipulative practices of

Enron and others during the California Electricity Crisis of 2000-01.  Order to Show Cause

(attached as Exhibit B) at ¶ 140.  It is in the public interest for the FERC to carry out this

mandate and ensure protection of all energy markets within its jurisdiction.

Were FERC to be enjoined mid-stream from pursuing its well-established enforcement

process, it will be prevented "from pursuing its statutory mandate to investigate" deception,

manipulation, deceit and fraud and prevent further policing of the energy markets.  *Greater New*

*York Hosp. Ass'n v. United States*, No. 98 Civ. 2741, 1999 U.S. Dist. LEXIS 17391, at *33

(S.D.N.Y. Nov. 9, 1999) (balance of equities favors government's enforcement interests over

pre-enforcement adjudication).[16]

In contrast, Hunter is not harmed by allowing the FERC to proceed with its

administrative process because he will have an opportunity to assert the very same defenses he

---

[16]  The public interest would also benefit from postponing judicial review until all facts
regarding Hunter's conduct have been collected and the FERC can make a merits decision based
on a complete record (a decision which will be subject to the further opportunity for rehearing
under the NGA) as to whether Hunter's manipulation of Natural Gas Futures Contracts
settlement price affected natural gas transactions that are within the FERC's jurisdiction.  *See
FTC v. Standard Oil Co.*, 449 U.S at 242-3 (premature judicial intervention into the agency
process denies the FERC the opportunity to exercise its expertise and correct any errors and
would delay resolution of the central issue of whether a person violated the law) (citing
*Weinberger v. Salfi*, 422 U.S. 749, 765 (1975)); *Cronin v. FAA*, 73 F.3d 1126, 1131 (D.C. Cir.
1996) (court denied petition to challenge regulations until after the FAA has the opportunity to
enforce the regulations and it is clear that judicial intervention is required).

makes here. *See FCC v. ITT World Communications, Inc.*, 466 U.S. 463, 468 n.5 (1984);

*Royster-Clark Agribusiness, Inc. v. Johnson*, 391 F. Supp. 2d 21, 25 (D.D.C. 2005) (court

granted motion to dismiss *ultra vires* claim because the enforcement options available would

provide an opportunity for plaintiff to assert same defenses as those asserted to the court).

## IV.     CONCLUSION

Hunter's Motion for Preliminary Injunction should be denied because Hunter cannot

satisfy any of the elements for a preliminary injunction.  Hunter is unlikely to succeed on the

merits because this Court lacks jurisdiction to review non-final agency actions.  Furthermore,

Hunter's claim that the FERC lacks authority to take enforcement actions involving the trading

of natural gas futures contracts that significantly affects jurisdictional sales prices is based on a

narrow and incomplete interpretation of the NGA and is contrary to the statutory purpose of the

new provision.  Even if this Court was to conclude that Hunter's claims should be reviewed, the

authorizing statutes expressly require that such review occur in the United States Court of

Appeals. There is overwhelming evidence offered by Hunter that he will not be irreparably

harmed if the FERC is permitted to proceed with its enforcement action.  Finally, the FERC and

the public interest is best served by allowing the FERC to exercise its mandate of protecting

energy markets so that there is not a repeat of the Enron scandal.  Hunter chose the wrong forum,

at the wrong time, based on incorrect legal theories and unsupported factual contentions.  The

Motion should be denied.

DATED:  July 30, 2007                    Respectfully submitted,


                                         _____/s/_____
OF COUNSEL                               JEFFREY A. TAYLOR, D.C. Bar # 498610
                                         UNITED STATES ATTORNEY
SUSAN J. COURT
ROBERT E. PEASE
LEE ANN WATSON                           _____/s/_____
                                         RUDOLPH CONTRERAS,
                                         DC Bar # 434122
                                         Assistant United States Attorney



                                         _____/s/_____
_____         Megan L. Rose, NC Bar No. 28639
Todd Mullins (D.C. Bar # 429539)         Assistant United States Attorney
Leslie B. Bellas (D.C. Bar # 429707)     Civil Division
Justin Shellaway (D.C. Bar # 476170)     555 Fourth Street, N.W., E-4220
Nicole Brisker (D.C. Bar # 480252)       Washington, D.C. 20008
Federal Energy Regulatory Commission     (202) 514-7220
Office of Enforcement                    Megan.Rose@usdoj.gov
Division of Investigations
888 First Street, NE
Washington, DC  20426                    Attorneys for Defendant.
(202) 502-8594

27

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BRIAN HUNTER, | ) | |
|  | ) | |
|  | ) | Docket No. CV07-1307 (RJL). |
| Plaintiff, | ) | |
|  | ) | |
| v. | ) | |
|  | ) | |
| FEDERAL ENERGY REGULATORY | ) | |
| COMMISSION, | ) | |
|  | ) | |
| Defendant. | ) | |
|  | ) | |

## APPENDIX OF EXHIBITS TO DEFENDANT FEDERAL ENERGY REGULATORY COMMISSION'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

| Tab | Exhibit |
|---|---|
| A | Ann Davis, *How Giant Bets on Natural Gas Sank Brash Hedge-Fund Trader,* Wall St. J., Sept. 19, 2006. |
| B | FERC Order to Show Cause and Notice of Proposed Penalties, *Amaranth Advisors L.L.C.*, IN07-26-000, 120 FERC ¶ 61,085 (July 26, 2007). |
| C | *CFTC v. Amaranth Advisors, et al.,* CV 07-6682, Complaint (S.D.N.Y. July 25, 2007). |
| D | *San Diego County Employees Retirement Ass'n. v. Maounis et al.*, 07-CV-2618, Complaint (S.D.N.Y. March 20, 2007). |
| E | *Gracey v. Amaranth Advisors et al.*, 07-CV-6377, Complaint (S.D.N.Y. July 12, 2007). |
| F | Report, Staff of Senate Permanent Subcommittee on Investigations, Committee on Homeland Security and Governmental Affairs, 110TH CONG., EXCESSIVE SPECULATION IN THE NATURAL GAS MARKET (2007). |

G     Transcript of Temporary Restraining Order hearing before Hon. Richard J. Leon, July 24, 2007 in *Hunter v. FERC*, CV07-1307 (RJL) (D.D.C.).

H     Andrew Ross Sorkin, *Ex-Amaranth Trader Faces Regulatory Action*, New York Times, July 24, 2007.

I     Ann Davis, *Ex-Amaranth Trader Fights Regulators*, Wall St. J., July 25, 2007.

J     Jeremy Grant, *Amaranth Gas Trades 'Hit US Consumer'*, Financial Times, June 25, 2007.

K     Bill Holland, *Amaranth's Activities Underscore Need for Regulation of Electronic Platforms*, Platts Inside FERC Gas Market Report, June 29, 2007.

L     Davis, Sender, and Zuckerman, *What Went Wrong with Amaranth Advisors*, Pittsburgh Post-Gazette, Sept. 20, 2006.

M     Barbara T. Dreyfuss, *What Hedge Funds Risk*, 18:7 American Prospect 30 (July 2007-Aug. 2007).

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRIAN HUNTER,    ) | |
| ) | Docket No. CV07-1307 (RJL). |
| Plaintiff,    ) | |
| ) | |
| v.    ) | |
| ) | |
| FEDERAL ENERGY REGULATORY    ) | |
| COMMISSION,    ) | |
| ) | |
| Defendant.    ) | |
| ) | |

## NOTICE OF FILING OF EXHIBITS

Defendant, Federal Energy Regulatory Commission ("FERC"), hereby files the attached

exhibits in the above-captioned action.  Because the exhibits exceed 500 pages, in accordance

with the Court's ECF rules, the documents have been filed and served in hard copy only.


DATED:  July 30, 2007                              Respectfully submitted,



                                                   _____/s/_____
OF COUNSEL                                         JEFFREY A. TAYLOR, D.C. Bar # 498610
                                                   UNITED STATES ATTORNEY
SUSAN J. COURT
ROBERT E. PEASE
LEE ANN WATSON                                     _____/s/_____
                                                   RUDOLPH CONTRERAS,
                                                   DC Bar # 434122
                                                   Assistant United States Attorney

_____     _____/s/_____

Todd Mullins (D.C. Bar # 429539)     Megan L. Rose, NC Bar No. 28639
Leslie B. Bellas (D.C. Bar # 429707)     Assistant United States Attorney
Justin Shellaway (D.C. Bar # 476170)     Civil Division
Nicole Brisker (D.C. Bar # 480252)     555 Fourth Street, N.W., E-4220
Federal Energy Regulatory Commission     Washington, D.C. 20008
Office of Enforcement     (202) 514-7220
Division of Investigations     Megan.Rose@usdoj.gov
888 First Street, NE
Washington, DC  20426
(202) 502-8594     Attorneys for Defendant.