**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

```
_____x
                                  :
BRIAN HUNTER,                     :
                                  :
         Plaintiff,               :    07 Civ. 1307 (RJL)
                                  :
              v.                  :
                                  :
                                  :
                                  :    SUPPLEMENTAL
                                  :    DECLARATION OF
                                  :    JUSTIN V. SHUR IN
FEDERAL ENERGY REGULATORY         :    FURTHER SUPPORT OF
COMMISSION,                       :    PLAINTIFF'S MOTION
                                  :    FOR A PRELIMINARY
                                  :    INJUNCTION AND
                                  :    DECLARATORY RELIEF
                                  :
         Defendant.               :
_____x
```

**SUPPLEMENTAL DECLARATION OF JUSTIN V. SHUR IN FRUTHER SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND DECLARATORY RELIEF**

I, Justin V. Shur, declare as follows:

1. I am an attorney admitted to practice law in the District of Columbia and before the United States District Court for the District of Columbia.  I am an attorney at Kobre & Kim LLP and represent Brian Hunter in this action.

2. I submit this declaration in order to demonstrate for the Court that the Federal Energy Regulatory Commission ("FERC") has stated on numerous occasions that Congress has conferred upon it jurisdiction to regulate trading in natural gas futures.

3. Attached hereto as Exhibit A is a copy of a publicly available letter dated February 21, 2007, from FERC Chairman Joseph T. Kelliher to the Honorable Jeff Bingaman,

1

Chairman of the Committee on Energy and Natural Resources of the United States Senate.

4.  In relevant part, the letter states, "We interpret the anti-manipulation language of [the Energy Policy Act of 2005] as allowing the [FERC] to sanction market manipulation in financial transactions of natural gas that affect jurisdictional sales, or physical sales….As a consequence, [FERC] staff has reviewed trading into the last half hour final settlement period for NYMEX Futures since Fall of 2004."

5.  Attached hereto as Exhibit B is a copy of a publicly available interview transcript retrieved from the Internet site http://www.eenews.net/tv/transcript/654 at 1:45 p.m. on August 3, 2007, entitled "FERC's Kelliher discusses Amaranth, Energy Transfer Partners market manipulation cases (OnPoint, 7/31/07)."

6.  In relevant part, Chairman Kelliher stated, "What we're doing is we're acting to sanction manipulation of futures that affected FERC jurisdictional transactions."

7.  I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

_____/s/_____
Justin V. Shur

Dated:  Washington, D.C.
        August 3, 2007

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ————————————————x | | |
| | : | |
| BRIAN HUNTER, | : | |
| | : | |
| Plaintiff, | : | 07 Civ. 1307 (RJL) |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | **SUPPLEMENTAL** |
| | : | **DECLARATION OF** |
| | : | **JUSTIN V. SHUR IN** |
| FEDERAL ENERGY REGULATORY | : | **FURTHER SUPPORT OF** |
| COMMISSION, | : | **PLAINTIFF'S MOTION** |
| | : | **FOR A PRELIMINARY** |
| | : | **INJUNCTION AND** |
| | : | <u>**DECLARATORY RELIEF**</u> |
| | : | |
| Defendant. | : | |
| ————————————————x | | |

**<u>SUPPLEMENTAL DECLARATION OF JUSTIN V. SHUR IN FRUTHER SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND DECLARATORY RELIEF</u>**

I, Justin V. Shur, declare as follows:

1.  I am an attorney admitted to practice law in the District of Columbia and before the United States District Court for the District of Columbia.  I am an attorney at Kobre & Kim LLP and represent Brian Hunter in this action.

2.  I submit this declaration in order to demonstrate for the Court that the Federal Energy Regulatory Commission ("FERC") has stated on numerous occasions that Congress has conferred upon it jurisdiction to regulate trading in natural gas futures.

3.  Attached hereto as Exhibit A is a copy of a publicly available letter dated February 21, 2007, from FERC Chairman Joseph T. Kelliher to the Honorable Jeff Bingaman,

Chairman of the Committee on Energy and Natural Resources of the United States Senate.

4. In relevant part, the letter states, "We interpret the anti-manipulation language of [the Energy Policy Act of 2005] as allowing the [FERC] to sanction market manipulation in financial transactions of natural gas that affect jurisdictional sales, or physical sales....As a consequence, [FERC] staff has reviewed trading into the last half hour final settlement period for NYMEX Futures since Fall of 2004."

5. Attached hereto as Exhibit B is a copy of a publicly available interview transcript retrieved from the Internet site http://www.eenews.net/tv/transcript/654 at 1:45 p.m. on August 3, 2007, entitled "FERC's Kelliher discusses Amaranth, Energy Transfer Partners market manipulation cases (OnPoint, 7/31/07)."

6. In relevant part, Chairman Kelliher stated, "What we're doing is we're acting to sanction manipulation of futures that affected FERC jurisdictional transactions."

7. I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge and belief.

_____/s/_____
Justin V. Shur

Dated: Washington, D.C.
August 3, 2007

2

Case 1:07-cv-01307-RJL    Document 16-3    Filed 08/03/2007    Page 1 of 5

- About E&E
- Start a Trial
- Contact Us

- E&E Daily
- Greenwire
- E&ENews PM
-
- E&ETV
- Land Letter
- Special Reports
- E&E Publishing



<< Back to E&ETV index page. Search:  [Enter keyword] [go!]

# Energy Markets: FERC's Kelliher discusses Amaranth, Energy Transfer Partners market manipulation cases (OnPoint, 07/31/2007)

Advertisement



**About this video**



For the first time since the Federal Energy Regulatory Commission was granted market manipulation authority in the Energy Policy Act of 2005, FERC has used this authority to bring charges against two companies -- Amaranth Advisors and Energy Transfer Partners -- for illegally manipulating energy markets. During today's OnPoint, FERC Chairman Joseph Kelliher discusses the two cases and the effect, he believes, the actions of these companies had on markets. Kelliher explains the significance of using this authority for the first time and discusses how he hopes these cases will affect the decisions of other companies.

 watch video 📧 email video

## Transcript

**Monica Trauzzi:** Welcome to OnPoint. I'm Monica Trauzzi. Joining me today is Chairman Joseph Kelliher of the Federal Energy Regulatory Commission. Chairman, thanks for coming on the show.

**FERC Chairman Joseph Kelliher:** Sure, thanks for having me.

**Monica Trauzzi:** Chairman, last week FERC filed charges in two separate market manipulation cases. The first was against Amaranth Advisors and two of its energy traders for a total of $291 million in penalties for illegally manipulating natural gas markets. Explain what happened here and why you decided to bring these charges against Amaranth.

**Joseph Kelliher:** Sure. And then talk about the other case afterwards?

**Monica Trauzzi:** Then we'll talk about, yeah, the second case.

**Joseph Kelliher:** Well, Amaranth, we actually acted against their nine different Amaranth entities, but one of them is Amaranth Advisors. In this case, this investigation began in May of 2006. FERC commission staff saw certain anomalies in trading of monthly futures prices at NYMEX. Commission staff very closely monitor both power and gas markets and they looked for anomalies. If they see anomalies, price movements that can't be explained by market fundamentals, they have the authority to initiate investigations. They began an investigation in May of 2006 on their own motion. They have the authority to do that if they see something suspicious. So over the course of time they began to investigate what happened in that month. They started looking at another period. They started looking at Amaranth. They started collecting evidence. And last week we acted to reveal the results of our investigation. We made public our investigation. So, from our point of view, the investigation phase has really been concluded and now we're beginning administrative litigation or prosecution of some kind. Now, we issued show cause orders that make preliminary findings, lay out the fact that we've uncovered so far, and it gives the objects or the targets of the investigation an opportunity to respond. They can dispute or facts. They can introduce new facts. They can suggest different conclusions should be drawn. So we're making preliminary findings, but our investigation I think is complete. And now the parties will get due process. They'll have an opportunity to respond in 30 days.

**Monica Trauzzi:** What was the most conclusive evidence that you found?

**Joseph Kelliher:** Well, a lot of the instant messages are strongly suggestive of intent, but the parties ...

**Monica Trauzzi:** And these were instant messages between the two energy traders?

**Joseph Kelliher:** From Mr. Hunter and Mr. Donahoe, who's trading on his behalf, Mr. Donahoe, on his behalf. And these instant messages are suggestive of intent, but they have an opportunity to offer a different explanation on what does "smash the settle" mean? We think that it suggests a desire to affect a sudden and precipitous collapse in price, but

there may be alternate explanations. And we'll hear from Mr. Hunter. We'll hear from Amaranth.

**Monica Trauzzi:** So what impact do you believe their actions have on markets?

**Joseph Kelliher:** We think there was a very significant effect on markets, in both cases, both Amaranth and ...

**Monica Trauzzi:** We'll get to that in a second.

**Joseph Kelliher:** ... the Energy Transfer Partners investigation. We believe, based on preliminary findings of the investigation that there were schemes to mitigate prices downward in order to benefit positions that both Amaranth and Energy transfer Partners held in other natural gas products, physical products, financial products, futures. That they were, in both cases, manipulating prices downward in one product in order to increase the spread and increase their profits elsewhere.

**Monica Trauzzi:** This is the first time that FERC has used its market manipulation authority that was granted to it in the Energy Policy Act of 2005. How significant is this?

**Joseph Kelliher:** I think it's very significant because if you look back at the California power crisis, 2000-2001, the California Western power crisis, there's a lot of criticism of FERC for not acting more quickly to prevent market manipulation. But actually, in 2000-2001 I think it's fair to argue that FERC didn't have the right tools to prevent market manipulation. That was one of the changes that Congress made in the Energy Policy Act of 2005. They gave us express authority to prohibit, they established an express prohibition of market manipulation, gave the commission authority to define exactly what that means over time. We can change the definition and also to impose civil penalties of $1 million per day per violation. And so the Congress gave us the right tools. Congress and FERC both learned the lesson of the California Western power crisis and now we're acting. We have the right tools and we're acting to use them.

**Monica Trauzzi:** Brian Hunter, one of the two traders being charged is currently trying to start up his own hedge fund in Canada. And his lawyers say that the action that FERC is taking against him is not only going to damage him personally, but also professionally as he tries to start up his hedge fund. They argue that FERC does not have jurisdiction over the futures markets or exchanges. Is that a valid claim?

**Joseph Kelliher:** No.

**Monica Trauzzi:** Are you overstepping your boundaries here?

**Joseph Kelliher:** No, we're not, because the argument that we are somehow acting to regulate futures is a false argument. We are not proposing to regulate futures. I would think our sister agency, the Commodity Futures Trading Commission, would have an opinion on that. They are acting in concert with us. What we're doing is we're acting to sanction manipulation of futures that affected FERC jurisdictional transactions. Natural gas is a fungible commodity. It's interchangeable, but it's sold in, as many different products. There are really three broad product categories; physical wholesale gas, where FERC has jurisdiction, there's financial products, and there's also futures products. And those are areas of CFTC jurisdiction. You can clearly see manipulation of one kind of natural gas product in order to affect a profit somewhere else. Now, if someone seeking to manipulate natural gas markets can move across product lines confident that the two agencies will never work in concert, then that's a huge opportunity for manipulation. We in CFTC want to block that. We think the law is clear, based on securities precedent. The law that we're overseeing, at least with respect to Amaranth, is securities law lifted out of the Securities Exchange Act 1934, put in both the Natural Gas Act and the Federal Power Act. So there is precedent in this area of manipulating one kind of product to benefit a position in another product. And we do have legal authority.

**Monica Trauzzi:** The second case which you mentioned is against Energy Transfer Partners, ETP. They're a natural gas transporter. The commission has proposed $167 million in fines and returned profits. Why were these charges brought against ETP?

**Joseph Kelliher:** Well, this is a case, Amaranth investigation began with commission staff seeing an anomaly in the

market, in natural gas markets. In the case of Energy Transfer Partners it began with a competitor calling the commission hotline and basically providing a tip. And this tip we received in October 2005, so it was in the wake of the hurricanes. And we started looking at Energy Transfer Partners practices, initially looking at September 28, 2005. On that single day our investigation suggests that they earned $40 million in profits by manipulating prices of certain FERC jurisdictional physical gas sales downward in order to benefit positions in financial products, as well as other FERC jurisdictional physical products. Again, it's a preliminary finding of the investigation. But we found actually that we believe the practice occurred not just in one month, in the wake of the hurricanes, not just two months in the wake of the hurricanes, but it occurred over a nine-month period between December 2003 and December 2005. So we think it wasn't an isolated incident, but it was part of a continuing practice.

**Monica Trauzzi:** And ETP says here that their business transactions during the time in question were actually lawful and that no regulations were violated. They say that they were faced with market uncertainty after Katrina and that FERC is ignoring the fact that market conditions were difficult during that time. Is that a valid charge?

**Joseph Kelliher:** Well, they have an opportunity to respond. Within 30 days they have an opportunity to respond and to dispute our facts, our interpretation of the facts, and offer alternative theories. But I think it's worth noting that we believe that the manipulative practice didn't just occur immediately on the heels of the hurricanes, but actually occurred two years before. There were not hurricanes in December of 2003 or in certain months of 2004. We do think this is a practice that began well before the hurricanes and it continued into the wake of the hurricanes, but we will hear the response.

**Monica Trauzzi:** So what's the message that you're trying to send to your two other companies?

**Joseph Kelliher:** Well, first of all, that we're closely monitoring markets, both natural gas markets and power markets, and we have the expertise to do that. The Amaranth investigation is significant in that it began with commission staff noticing certain anomalies and then digging deeper. They have the authority to do that on their own initiative. They don't need my approval to begin that kind of an informal investigation. Sometimes they find, after a little bit more investigation, that there is a good reason to explain the price movements. The investigation ends. But in other cases if they can't find a legitimate explanation for price movements they keep on digging and in some cases they might find manipulation. What's significant in the Amaranth case is in both cases we require disgorgement of profits or an estimate of their profits. But in Amaranth we proposed penalties that are four times the profits. So it isn't just a question, if you're engaging in market manipulation and the commission fines you, it isn't just a question of surrendering your ill-gotten gains, but perhaps four times as much in penalties on top of that.

**Monica Trauzzi:** All right, so the two companies have 30 days to respond ...

**Joseph Kelliher:** Yes.

**Monica Trauzzi:** ... to the charges?

**Joseph Kelliher:** Yes.

**Monica Trauzzi:** And we'll be keeping an eye on that.

**Joseph Kelliher:** Yes.

**Monica Trauzzi:** Thanks for coming on the show.

**Joseph Kelliher:** Thank you very much.

**Monica Trauzzi:** This is OnPoint. I'm Monica Trauzzi. Thanks for watching.

*[End of Audio]*

Advertisement

Case 1:07-cv-01307-RJL    Document 16-3    Filed 08/03/2007    Page 5 of 5



Return to the top of the page.

About E&E  Start a Trial  Get E-mail Alerts  Advertise  Staff Directory  Special Reports  RSS



        

The Premier Information Source for Professionals Who Track Environmental and Energy Policy.
© 1996-2007 E&E Publishing, LLC  Privacy Policy  Site Map