# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

———————————————————x
:
BRIAN HUNTER,                            :
:
Plaintiff,                     :          07 Civ. 1307 (RJL)
:
v.                                       :
:
FEDERAL ENERGY REGULATORY                :
COMMISSION,                              :
:
Defendant.                     :
:
:
———————————————————x

### PLAINTIFF BRIAN HUNTER'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO FEDERAL ENERGY REGULATORY COMMISSION'S MOTION TO DISMISS AND IN SUPPORT OF HUNTER'S CROSS-MOTION FOR DECLARATORY JUDGMENT

## <u>TABLE OF CONTENTS</u>

I.    **This Court Has Jurisdiction To Rule On Whether FERC Has The Statutory Authority To Regulate Natural Gas Futures Trading By Natural Persons** ............................................................................. 1

     A.    FERC's Determination of Jurisdiction Over Futures Trading By Natural Persons Occurred Months Or Years Prior To The Issuance Of The Order To Show Cause ................................................. 1

     B.    FERC's Decision To Assert Jurisdiction Over Natural Gas Futures Trading And Over Natural Persons Was Apparently Made Without Any Hearing Or Order ..................................................... 4

     C.    Challenges To FERC's Decision On Its Jurisdiction Are Not Subject To Section 19(b) Of The Natural Gas Act ................................ 4

     E.    In Any Event, Exhaustion Of Administrative Remedies Is Not Necessary In This Case ........................................................................ 11

     F.    The Court Has The Power To Issue A Judgment Pursuant To 28 U.S.C. § 1331 ............................................................................... 12

II.   **The Public Interest And Judicial Economy Would Be Served By This Court's Ruling Now Regarding FERC's Jurisdiction** ..................................... 14

III.  **FERC's Action Against Hunter Improperly Interferes With The Exclusive Jurisdiction Of The CFTC** .............................................................. 17

     A.    The Commodity Exchange Act Granted Exclusive Jurisdiction Over Natural Gas Futures Contracts To The CFTC .......................... 17

     B.    The Energy Policy Act Does Not Grant FERC Jurisdiction over Futures Trading ................................................................................. 19

IV.   **The "In Connection With" Language in NGA Section 19(b) Is Not Sufficient To Confer Jurisdiction to FERC Over Hunter** ............................. 21

V.    **FERC's Enforcement Authority Under The NGA Does Not Extend To Individuals** ............................................................................................. 22

     A.    The NGA Limits FERC's Anti-Manipulation Authority To Any "Entity," Which Does *Not* Include Natural Persons ............................ 22

     B.    The D.C. Circuit Has Repeatedly Rejected Agency Claims That Statutory Terms Include the Term "Persons" where "Person" Is Used In Other Statutory Provisions Or Is a Defined Term. ................. 23

C.      "Entity" Is Used Elsewhere In The NGA In A Manner That
        Does Not Include  Natural Persons........................................................ 24

D.      Congress Substituted "Entity" For "Person" When It Adopted
        The Anti- Manipulation Language From The Exchange Act. .............. 25

# TABLE OF AUTHORITIES

<u>**Cases**</u>

<u>Allen v. CSX Transp., Inc.</u>, 22 F.3d 1180 (D.C. Cir. 1994) ......................................................... 25

<u>American Agricultural Movement, Inc. v. Board of Trade of City of Chicago</u>, 977 F.2d 1147 (7th Cir. 1992) ................................................................. 18

<u>American Dental Association v. Shalala</u>, 3 F.3d 446 (D.C. Cir. 1993) .................................. 23, 25

<u>Athlone Industries, Inc. v. Consumer Product Safety Commission</u>, 707 F.2d 1485 (D.C. Cir. 1983) ................................................................. 10, 13, 16

<u>Atlantic Richfield Co. v. U.S. Dept. of Energy</u>, 769 F.2d 771 (D.C. Cir. 1984) .......... 9, 10, 13, 14

<u>Beverly Enterprises, Inc., v. Herman</u>, 50 F.Supp.2d 7 (D.D.C. 1999) .......................................... 9

<u>Carolina Aluminum Co. v. Federal Power Commission,</u> 97 F.2d 435 (4th Cir. 1938) ................. 6

<u>CFTC v. Reed</u>, 481 F.Supp.2d 1190 (D. Co. 2007) ...................................................................... 18

<u>Chamber of Commerce of the United States v. Reich</u>, 74 F.3d 1322 (D.C.Cir. 1996) ............ 5, 13

<u>Chevron v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984) ............................... 23

<u>Chicago Mercantile Exchange v. SEC</u>, 883 F.2d 537 (7th Cir. 1989) ......................................... 19

<u>Clay v. Johnson</u>, 50 F.Supp. 2d 816 (N.D. Ill. 1999) ..................................................................... 7

<u>Consolidated Natural Gas Corp. v. FERC</u>, 611 F.2d 951 (4th Cir. 1979) ................................. 6, 7

<u>Dart v. United States,</u> 848 F.2d 217 (D.C. Cir. 1988) ................................................................... 22

<u>FTC v. Ken Roberts Co.</u>, 276 F.3d 583 (D.C. Cir. 2002) .............................................................. 17

<u>FTC v. Standard Oil Co.</u>, 449 U.S. 232 (1980) ............................................................................ 11

<u>Harmon v. Brucker</u>, 355 U.S. 579 (1958) ................................................................................... 13

<u>Leedom v. Kyne</u>, 358 U.S. 184 (1958) ......................................................................................... 13

<u>Leykin v. AT&T Corp.</u>, 423 F.Supp.2d 229, 241 (S.D.N.Y. 2006) .............................................. 21

<u>Michigan v. EPA</u>, 268 F.3d 1075 (D.C. Cir. 2001) ...................................................................... 23

<u>National Automatic Laundry and Cleaning Council v. Shultz</u>, 443 F.2d 689 (D.C. Cir. 1971) ................................................................................................................................... 3, 7

<u>PepsiCo., Inc. v. F.T.C.</u>, 472 F.2d 179 (2d Cir. 1972) .................................................................... 6

<u>Reliable Automatic Sprinkle Co., Inc. v. Consumer Product Safety Commission</u>, 324 F.3d 726 (D.C. Cir. 2003) ................................................................................................ 8

<u>SEC v. Zandford</u>, 535 U.S. 813 (2002) ........................................................................................ 21

<u>Standard Oil Co. v. Dep't of Energy</u>, 596 F.2d 1029 (Temp. Emer. Ct. App. 1978) .................... 7

<u>Stark v. Wickard</u>, 321 U.S. 288 (1944) ........................................................................................ 22

State of California ex. rel. State Water Resources Control Bd. v. FERC, 966 F.2d 1541 (9th Cir. 1992) ................................................................................................. 14

Steffel v. Thompson, 415 U.S. 452 (1974) ................................................................. 13

Tierney v. Schweiker 718 F.2d 449 (D.C. 1983) ...................................................... 13

United States v. Reliant Energy Services Inc., 420 F.Supp.2d 1043 (N.D. Cal. 2006) ............... 18

Washington Hospital Center v. Bowen, 795 F.2d 139 (D.C. Cir. 1986) ...................... 25

Williams Natural Gas v. City of Oklahoma City, 890 F.2d 255 (10th Cir. 1989) ........................ 7

Williston Basin Interstate Pipeline Co. v. FERC, 475 F.3d 330 (D.C. Cir. 2006) ........................ 7

Wolverine Power Co., v. FERC, 963 F.2d 446 (D.C. Cir. 1992) .................................. 24

## Statutes

15 U.S.C. § 717a(1) ................................................................................................... 25

15 U.S.C. § 717c-1 ......................................................................................... 23, 27, 28

15 U.S.C. § 717f ........................................................................................................ 26

15 U.S.C. § 717g ........................................................................................................ 24

15 U.S.C. § 717n(e) ............................................................................................ 24, 26

15 U.S.C. § 717r ................................................................................................... 4, 26

15 U.S.C. § 717s(d) ................................................................................................... 24

15 U.S.C. § 717t-2 ......................................................................................... 21, 22, 26

15 U.S.C. § 78j(b) ..................................................................................................... 27

18 C.F.R. § 1c1.1 ....................................................................................................... 23

28 U.S.C. § 1331 ....................................................................................................... 14

28 U.S.C. §§ 2201(a) ................................................................................................ 13

5 U.S.C. § 78c(a)(9) .................................................................................................. 27

7 U.S.C. § 2(a)(1)(A) ................................................................................................ 19

## Other Authorities

120 Cong. Rec. 34,736 (Oct. 9, 1974) ..................................................................... 20

H. Conf. Rep. No. 93-1383, 93rd Cong., 2d Sess. (1974) ........................................ 20

Philip F. Johnson, The Commodity Futures Trading Commission Act: Preemption as Public Policy, 29 Vand L. Rev. 1 (1976) ................................................................. 19

Sen. Rep. No. 93-1131, 93rd Cong., 2d Sess., 54 (1974) ......................................... 20

I.    **This Court Has Jurisdiction To Rule On Whether FERC Has The Statutory Authority To Regulate Natural Gas Futures Trading By Natural Persons**

The Federal Energy Regulatory Commission's ("FERC's") motion to dismiss conflates the issues from Brian Hunter's application for a preliminary injunction with those that are presented in Hunter's complaint for declaratory judgment. Only the declaratory judgment application is now before this Court. While this Court declined to enjoin on a preliminary basis FERC's ability to proceed with its Order to Show Cause ("OSC"), it nevertheless has the jurisdiction to issue a declaratory judgment regarding the validity of FERC's determination of jurisdiction.

This Court has the jurisdiction to do so because FERC's determination of its jurisdiction over futures trading is a final agency decision made sometime between 2005 and February 2007, which is not subject to Section 19(b) of the Natural Gas Act, and which is imposing very real obligations on Hunter that are distinct from the harms previously described in the preliminary injunction proceedings. Accordingly, we respectfully request that the Court deny FERC's motion to dismiss and grant a declaratory judgment in Hunter's favor.

A.    FERC's Determination of Jurisdiction Over Futures Trading By Natural Persons Occurred Months Or Years Prior To The Issuance Of The Order To Show Cause

In an attempt to blur together Hunter's request for a preliminary injunction against FERC's OSC with the request for declaratory judgment on FERC's determination of jurisdiction over futures, FERC inaccurately characterizes the declaratory judgment request as seeking "review of FERC's OSC." See Defendant Federal Energy Regulatory Commission's Memorandum of Points and Authorities in Support of Motion to Dismiss, p. 7. Whereas Hunter's preliminary injunction application was solely directed at enjoining FERC's ability to proceed with the specific pending OSC enforcement action, Hunter's declaratory judgment

application by contrast seeks a judicial pronouncement regarding the bounds of FERC's statutory authority, i.e., a judgment regarding FERC's decision on jurisdiction which (as explained below) was apparently made sometime between 2005 and February 2007, and a judgment that FERC cannot proceed with *any* enforcement action against Hunter as a result.  See Complaint, p. 12 (declaratory judgment prayer for relief):

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

I.    Issue a Declaratory Judgment as follows:

    A.    The Federal Energy Regulatory Commission's assertion of jurisdiction over trading of energy commodities for future delivery is in conflict with the provisions of the Energy Policy Act, and the Natural Gas Act, 15 U.S.C. §§ 717, *et seq.*

    B.    The Federal Energy Regulatory Commission's assertion of jurisdiction over trading of energy commodities for future delivery is in conflict with the Commodity Exchange Act, 7 U.S.C. § 2.

    C.    The Federal Energy Regulatory Commission is enjoined from proceeding with any enforcement action against Plaintiff.

Obviously FERC would prefer to equate its pending Order to Show Cause proceeding with its determination on jurisdiction generally, so it can extend the denial of the preliminary injunction application as to the OSC to defeat the declaratory judgment action as well.  But by FERC's own admission, it is clear that the issuance of the July 26, 2007 Order to Show Cause is not synonymous with its decision regarding jurisdiction over natural gas futures trading by natural persons.  In fact, FERC's decision of jurisdiction over natural gas futures trading occurred months or perhaps years prior to the issuance of the OSC, sometime between 2005 and February 2007.

On some unspecified date between 2005 and February 2007, FERC apparently made a decision that it could regulate natural gas futures trading, but did not tell anybody until months or perhaps years later.  In a letter dated February 21, 2007, FERC Chairman Joseph Kelliher stated to the United States Senate:

> We interpret the anti-manipulation language of [the Energy Policy Act of 2005] as allowing the [FERC] to sanction market manipulation in financial transactions of natural gas that affect jurisdictional sales, or physical sales…As a consequence, [FERC] staff has reviewed trading into the last half hour final settlement period for NYMEX Futures since Fall of 2004.

See Declaration of Justin V. Shur in Opposition to Defendant's Motion to Dismiss the Complaint ("Shur Decl."), Exhibit C at p. 8.[1]   Thus, the Order to Show Cause is simply one of several actions that FERC has taken as a result of this decision on jurisdiction made sometime between 2005 and February 2007, and is not the jurisdictional decision itself.[2]  The Order to Show Cause issued July 26, 2007 does not purport to hold a hearing on whether FERC has jurisdiction over natural gas futures trading, over natural persons, or otherwise open up FERC's prior decision on those issues which occurred at some point after the passage of the Energy Policy Act of 2005 but before Kelliher's February 21, 2007 letter.  See Shur Decl., Exhibit E.  Rather, FERC's decision regarding its own jurisdiction (which had occurred months or perhaps years prior to the issuance

---

[1]     Even though apparently arrived at without any hearing or order, this FERC decision described in Commissioner Kelliher's letter is presumptively final and authoritative agency action sufficient to trigger judicial review by this Court.  See National Automatic Laundry and Cleaning Council v. Shultz, 443 F.2d 689, 702 (D.C. Cir. 1971) (noting even a letter from an agency constituted a "general, interpretive ruling signed by the head of an agency…crystallized following reflective examination in the course of the agency's interpretative process… [T]here coexist both multiple signposts of authoritative determination, finality and ripeness, and a concomitant indication that the resultant pointing toward prompt judicial review will benefit the total administrative process by resolving uncertainties without intolerable burden or disruption").

[2]     Other actions that FERC took as a result of its undated decision on jurisdiction include initiating a monitoring program on the New York Mercantile Exchange (NYMEX) to review futures trades since 2004 (as described in Kelliher's February 21, 2007 letter), and issuing an order of investigation regarding natural gas futures in May 2007.  FERC issued an Order of Investigation on May 16, 2007 which purported to initiate a "preliminary non-public investigation" into "whether any of [several] entities, or any others subsequently identified…has manipulated Commission-jurisdictional natural gas transactions via manipulation of the settlement price of the prompt-month NYMEX Natural Gas Futures Contract."  See Shur Decl., ¶ 6.

of the OSC) is described as a <u>fait accompli</u> in the OSC, as it was in the Formal Order of Investigation that preceded it.  <u>See</u> Shur Decl., ¶ 6, Exhibit E, pp. 23-29.

        B.     <u>FERC's Decision To Assert Jurisdiction Over Natural Gas Futures Trading And Over Natural Persons Was Apparently Made Without Any Hearing Or Order</u>

There was never any hearing convened by FERC nor any order issued by FERC in 2005 or since to determine whether FERC could regulate futures trading by natural persons – the case that is relevant here.  The agency presumably made this decision sometime after the passage of the Energy Policy Act of 2005 but before Kelliher's February 21, 2007 letter.  Such decision was presumably made in a meeting hidden from public view, and FERC proceeded to act in accordance with its own belief about its jurisdiction, setting up New York Mercantile Exchange ("NYMEX") monitoring programs, initiating an investigation, and ultimately initiating an enforcement action.

        C.     <u>Challenges To FERC's Decision On Its Jurisdiction Are Not Subject To Section 19(b) Of The Natural Gas Act</u>

Hunter's request for a declaratory judgment from the Court does not concern the OSC, or any FERC "order," but instead concerns FERC's determination of jurisdiction—a decision that was made sometime in 2005-2007 without any proceeding, hearing, or order by FERC.  Thus, a challenge to FERC's determination of jurisdiction does not fall within the scope of Section 19(b) of the Natural Gas Act ("NGA").  Section 19(b) of the NGA by its plain language applies only to "orders" issued pursuant to a "proceeding" under the Natural Gas Act:

> Any party to a **proceeding under this chapter** **aggrieved by an order** issued by the Commission **in such proceeding** may obtain a **review of such order** in the court of appeals of the United States for any circuit **wherein the natural gas company** to which the order relates is located or has its principal place of business …….

15 U.S.C. § 717r(b) (emphasis added).

Section 19(b) applies <u>only</u> to a "<u>proceeding</u> under [the relevant] chapter" and orders issued in such a "proceeding." The agency action that is the subject of the declaratory judgment action—FERC's decision that it has jurisdiction—occurred without any proceedings whatsoever. Also, Section 19(b) applies <u>only</u> to a specific "order" issued by the Commission. FERC's determination of jurisdiction which occurred sometime between 2005 and February 2007 was not accompanied by an issuance of any order. In addition, Section 19(b) applies only to attempts to seek "review of such order." Here, Hunter is not seeking "review" of any order but rather a declaratory judgment regarding a legal conclusion reached by the agency without any order. Finally, Section 19(b) speaks of petitioning to a circuit court where the "natural gas company" is located or the D.C. Circuit Court of Appeals. Clearly, the scenario envisioned by Section 19(b)—orders issued pursuant to FERC Natural Gas Act "proceedings"—is inapplicable here. There is no proceeding, no order, and not even any natural gas company involved—indeed, Hunter is not even a company.[3] Thus, FERC's argument that Hunter should petition for a "rehearing" of the Order to Show Cause and then appeal to the U.S. Court of Appeals at the conclusion of the OSC proceedings fundamentally misses the point, or perhaps tries to confuse the point deliberately. FERC's determination of jurisdiction never even involved a hearing, a proceeding, or an order—simply put, there is nothing to "re"-hear because there was no hearing in the first place.[4]

---

[3]    FERC's argument that Section 19(b) applies because a ruling by this Court on FERC's jurisdictional determination would interfere with the OSC "proceedings" is nonsensical. Section 19(b) does not purport to exempt FERC from judicial review altogether simply because a judicial determination might "affect" a FERC proceeding or order. Indeed, if FERC were correct, it could effectively prevent any judicial scrutiny of even lawless decisions simply by issuing an order initiating a proceeding premised on such illegal determination and claiming that any court ruling regarding its prior illegal determination would interfere with the FERC's business.

[4]    <u>See</u> <u>Chamber of Commerce of the United States. v. Reich</u>, 74 F.3d 1322 (D.C. Cir. 1996) (where relevant statute did not encompass agency action at issue, a non-statutory review action in District Court was available); <u>citing</u> Byse and Fiocca, <u>Section 1361 of the Mandamus and Venue Act of 1962 and "Nonstatutory" Judicial Review of Federal Administrative Action</u>, 81 Harv. L. Rev. 308, 321 (1967)).

FERC's reliance on Consolidated Natural Gas Corp. v. FERC, 611 F.2d 951 (4th Cir. 1979) is misplaced because that case, unlike the declaratory judgment complaint here, involves an attempt to seek review of a FERC order.  The dispute in Consolidated Gas was not over FERC's jurisdiction, but rather FERC's regulatory efforts (by way of preliminary administrative orders) to establish maximum annual and daily limits on Consolidated's sales of natural gas, (Id. at 953-54) which Plaintiff in that case had already conceded was within FERC's jurisdiction: "Consolidated…does not object to the Commission's assertion of jurisdiction."  Id. at 958, n.6. Moreover, Consolidated had conceded FERC's jurisdiction to issue an order to show cause: "Consolidated concedes the jurisdiction of the Commission in these proceedings under the rule to show cause." Id. at 958.  Instead of a challenge to FERC's assertion of jurisdiction over a particular matter, which exists separate and apart from any orders to show cause that may be premised on to such assertion, Consolidated objected to procedural deficiencies in FERC's orders initiating the proceeding which allegedly denied legal rights provided under the Administrative Procedure Act ("APA") and the Commission's regulations.

Indeed, the court in Consolidated Gas was careful to recognize precisely how a challenge to FERC's jurisdiction differs from what Consolidated sought, and it explicitly distinguished PepsiCo., Inc. v. F.T.C., 472 F.2d 179 (2d Cir. 1972) which recognized the authority of a District Court to restrain an agency acting outside its statutory authority:

> There, the court sustained the district court's refusal to dismiss the plaintiff's injunctive action against an agency proceeding 'plainly beyond its jurisdiction'…That ground for district court jurisdiction to restrain an agency for acting beyond its statutory authority and jurisdiction, however, does not exist in this case, for Consolidated has conceded the Commission's jurisdiction.[5]

---

[5]    The court also distinguished Carolina Aluminum Co. v. Federal Power Commission, 97 F.2d 435 (4th Cir. 1938), which stated by way of dictum that, when there is no jurisdiction in the agency under the statute, an action in the district court might be instituted.  Consolidated Gas, 611 F.2d 957.

Consolidated Gas, 611 F.2d at 960. Consolidated Gas therefore stands for the proposition that a District Court will not review preliminary or procedural orders where the subject matter of such orders undisputedly falls within FERC's regulatory jurisdiction. By contrast, in the declaratory judgment complaint here, Hunter seeks a judicial ruling on FERC's determination of jurisdiction, which occurred without any order.[6]

Given Section 19(b) does not apply, a U.S. District Court has jurisdiction to review agency assertions of jurisdiction even if they were made without any proceedings or orders or merely implied in an agency's actions, as is the case here. See National Automatic Laundry, 443 F.2d at 698 (the term "agency action" includes an "agency statement…and…embraces an[] agency's interpretation of its law"; agency "pronouncements and communications having the contemplation and likely consequence of expected conformity" are sufficiently final for judicial review, including a letter from the head of an agency); see also Clay v. Johnson, 50 F.Supp.2d 816, 820 (N.D. Ill. 1999) ("[f]or a statement to be considered an official interpretation, it need only be a public pronouncement by an agency official") citing Standard Oil Co. v. Dep't of Energy, 596 F.2d 1029, 1056 (Temp. Emer. Ct. App. 1978). [7]

---

[6]    The additional cases relied on by FERC concerning this Court's lack of jurisdiction owing to Section 19(b) are equally inapposite: unlike the parties in those cases, Hunter's declaratory judgment application is not to an "order" under the NGA. For example, in Williams Natural Gas v. City of Oklahoma City, 890 F.2d 255 (10th Cir. 1989), the moving party was an interstate natural gas company clearly falling within FERC's jurisdiction and moreover, it applied to FERC for an order in the form of a certificate of public convenience and necessity to construct and operate a natural gas pipeline. Recognizing that this area is within FERC's traditional jurisdiction to regulate markets for natural gas, a local natural gas distribution franchise applied for a rehearing of that order under Section 19(b), appealed the denial to the Court of Appeals for the District of Columbia, and also applied to a state court for an injunction. All parties therefore explicitly recognized that the challenge there was to a FERC "order." In Williston Basin Interstate Pipeline Co. v. FERC, 475 F.3d 330 (D.C. Cir. 2006), the subject was also one that undisputedly falls within FERC's traditional authority to regulate natural gas markets. There a natural gas pipeline company within FERC's jurisdiction was tardy in challenging FERC orders rejecting proposed rates, and its petition was denied for untimeliness. Again this was a circumstance where the parties' challenge was to a FERC "order" where both the parties and the subject matter clearly fell within FERC's traditional and undisputed jurisdiction to regulate natural gas markets.

[7]    The decision by Judge Chin in the Southern District of New York does not preclude a ruling by this Court that Section 19(b) is inapplicable to Hunter's request for declaratory judgment here. As a threshold matter, due to the significant differences between Hunter's arguments before this Court, the arguments advanced by Amaranth and the matters to be determined by Judge Chin, Hunter was not a party to Amaranth's application for a preliminary

D.     FERC's Decision On Jurisdiction Can Be Reviewed By This Court

FERC's decision on its own jurisdiction is sufficiently final to be the subject of scrutiny by this Court.   FERC's argument that it has not yet imposed any financial liability on Hunter in the OSC proceedings, and thus that there is no irreparable harm from participating in the OSC proceedings, is irrelevant because the Court is not dealing with the elements of a preliminary injunction.   Rather, the law for declaratory judgments regarding agency jurisdiction recognizes any imposition of legal obligation to be cognizable even if it does not involve irreparable harm, or even any financial harm at all.   Courts are authorized to review the scope of an agency's authority prior to final agency determination of liability where the interim agency action imposes some obligation or fixes some legal right, or concerns a purely legal question on which the agency's final determination in the underlying case is irrelevant.   See Reliable Automatic Sprinkle Co., Inc. v. Consumer Product Safety Commission, 324 F.3d 726, 733-35 (D.C. Cir. 2003).  That standard is satisfied here.

FERC's assertion of jurisdiction has already imposed legally cognizable obligations on Hunter and affected his legal rights.  As a result of FERC's 2005/2007 decision on jurisdiction, FERC began monitoring NYMEX trading (according to Commissioner Kelliher) which included Hunter's trading, issued an Order of Investigation as to natural gas futures and obtained information and documents regarding Hunter from the CFTC, including Hunter's testimony

---

injunction before Judge Chin, and did not participate in that motion in any way.  Nor did FERC, which litigated the matter before Judge Chin, attempt to join Hunter in those proceedings.  Indeed, Judge Chin was ruling in a very different context.  Amaranth's challenge before Judge Chin was to stay (not invalidate) FERC Order to Show Cause itself—in particular, the propriety of proceeding with FERC Order to Show Cause in Washington, D.C. prior to the conclusion of the CFTC's civil enforcement action in New York.  Amaranth did not directly ask the court to determine the limit of FERC's jurisdiction, and Judge Chin explicitly declined to decide the issue of FERC's jurisdiction. See Opinion, dated November 1, 2007, in the United States District Court for the Southern District of New York, in the case captioned U.S. Commodity Futures Trading Commission v. Amaranth Advisors L.L.C., et al., 07 Civ. 6682 (DC), p. 17. Given that the challenge was to FERC OSC itself, FERC took the position that Section 19(b) of the Natural Gas Act (the "NGA") barred District Court relief on Amaranth's application and Judge Chin agreed.  As explained herein, Hunter's declaratory judgment application to this Court is a challenge to FERC's decision on jurisdiction, not a petition for review of the OSC.

which was compelled by CFTC subpoena, and issued an Order for Hunter to "show cause" why

he should not be fined US $30 million—imposing on him significant obligations to assemble and

produce factual and legal material and to continue participating in FERC administrative

proceedings, or else risk default.[8]    FERC's Order to Show Cause purports to impose an

obligation on Hunter to respond to FERC and to "show cause" and participate in FERC

proceedings, or else risk defaulting and rendering final FERC's preliminary determination that

Hunter should pay FERC US $30 million.  The Order to Show Cause states in relevant part:

> The Commission Orders:
>
> (A)    The Respondents, within 30 days of the date of this order, to file answers in accordance with 18 C.F.R. § 385.213 (2006) showing cause why they should not be found to have violated section 1c.1 of the Commission's regulations by trading in the March, April, and May 2006 NG Futures Contract on February 24, March 29, and April 26, 2006.
>
> (B)    The Respondents, within 30 days of the date of this order, to file answers in accordance with 18 C.F.R. § 385.213 (2006) showing cause why their violations of section 1c.1 of the Commission's regulations should not warrant the assessment of civil penalties of $200,000,000 in the case of the Amaranth Entities, $30,000,000 in the case of Hunter, and $2,000,000 in the case of Donohoe and an order to disgorge unjust profits of $59,000,000 plus interest as described in the body of this order.

See Shur Decl., Exhibit E at ¶140.

FERC's determination of jurisdiction clearly imposed on Hunter a legally cognizable

obligation akin to that imposed on the plaintiff in Atlantic Richfield Co. (ARCO) v. U.S. Dept.

of Energy, 769 F.2d 771 (D.C. Cir. 1984).  In ARCO, the agency had initiated enforcement

proceedings against the plaintiff on a subject matter which the plaintiff contended was outside

the jurisdiction of the agency.  Nevertheless, the agency threatened the plaintiff that if the

---

[8]    See Beverly Enterprises, Inc., v. Herman, 50 F.Supp.2d 7, 15 (D.D.C. 1999), cited by FERC (agency determination is ripe for judicial review and hardship weighs in favor of immediate judicial review where the agency action has a direct effect on the day-to-day business of a party and  a party is forced to chose between continued compliance or facing civil monetary penalties).

plaintiff did not produce certain discovery and participate in such proceedings, the agency might impose sanctions. See ARCO, 769 F. 2d. at 778-79.

The D.C. Circuit held that the agency's assertion of jurisdiction could be reviewed by a District Court interlocutorily even though the agency had not yet reached any final decision on the underlying enforcement proceedings or imposed any financial liability. The D.C. Circuit so held because the agency's act in threatening such sanctions demonstrated sufficient finality with respect to the issue of its own statutory authority to do so. The D.C. Circuit noted:

> The administrative action here under attack [the discovery order] is sufficiently final for review. The Department has promulgated a regulation providing for imposition of the contested sanctions in appropriate cases. And, by subjecting ARCO to adjudicatory proceedings, the Department has "for all practical purposes, made a final determination that such proceedings [are] within its statutory jurisdiction."

Id. at 784. The Court noted that ARCO's "dilemma" of choosing between "complying with allegedly ultra vires discovery orders" and "flouting the orders and facing the consequences should the Department ultimately be found to have had the power to issue the orders" rendered the controversy sufficiently ripe for judicial intervention. Id. at 783; see also Athlone Industries, Inc. v. Consumer Product Safety Commission, 707 F.2d 1485, 1487-88 (D.C. Cir. 1983) (where agency's view of its own jurisdiction was unequivocal, agency's initiation of an administrative enforcement proceeding and threat of sanctions was sufficient to render agency's underlying jurisdiction ripe for District Court review, even though no final decision had been made to impose any penalties on Athlone Industries).

Similar to the situations in ARCO and Athlone, the FERC here has unequivocally stated that it has the jurisdiction to regulate natural persons who engage in futures trading, and specifically Hunter. FERC has never wavered from that position. Indeed, FERC has required Hunter to respond to the OSC and to participate in the proceedings, and has not only threatened

him with imposing US $30 million in sanctions, but even pronounced that the Commission has

already found that such sanctions are appropriate unless Hunter persuades it otherwise:

> Based on the foregoing factors, in particular the relative proportion of profits the
> traders stood to gain as compared to the Amaranth Entities, we find that civil
> penalties of $30,000,000 for Hunter and $2,000,000 for Donohoe are appropriate.

See Shur Decl., Exhibit E at ¶ 138.  FERC's threat and mandate to Hunter is just as, if not more,

burdensome than the Department of Energy's threat against ARCO to produce discovery or the

Consumer Products Safety Commission's threat against Athlone Industries to participate in the

Commission's administrative enforcement proceeding.[9]

E.    In Any Event, Exhaustion Of Administrative Remedies Is Not Necessary In This Case

The issue of FERC jurisdiction is ripe for judicial review because the underlying

controversy that is the subject of the OSC—alleged market manipulation of NYMEX futures—is

not determinative of the legal issue of FERC's statutory authority.  The D.C. Circuit noted in

ARCO that District Court review of an agency's assertion of jurisdiction was appropriate in such

circumstances:

> The underlying controversy—here, alleged violations of the Emergency Petroleum
> Allocation Act's price control regulations—is "not determinative of jurisdiction."
> …Were ARCO attacking the merits of the [discovery orders], we might agree…that
> ARCO's [declaratory judgment] action was premature.  What ARCO is challenging,

---

[9]  FERC relies on FTC v. Standard Oil Co., 449 U.S. 232 (1980) to argue that because the OSC represents the "start" of the administrative enforcement proceeding, District Court intervention is not appropriate.  However, Standard Oil is not applicable here because FERC has taken a definitive position regarding its own jurisdiction, unlike the FTC in Standard Oil.  As noted by the D.C. Circuit in Athlone in distinguishing FTC v. Standard Oil Co.:

> In Standard Oil the Court held that a plaintiff could not attack the FTC's motive in filing an
> administrative complaint until the administrative proceeding was completed, ruling that the FTC's
> decision to issue the complaint was not "final agency action."  …The Court stressed that the
> agency's "averment of 'reason to believe' that [plaintiff] was violating the Act [was] not a
> definitive statement of position."  Id. at 241, 101 S.Ct. at 493. The present case is, in that respect,
> distinguishable.  By filing a complaint in the present case, the Commission, for all practical
> purposes, made a final determination that such proceedings were within its statutory jurisdiction.
> …Thus, with respect to the issue we address, the Commission has taken a definitive position, and
> Standard Oil is not controlling.

Athlone, 707 F.2d at 1489 n.30 (emphasis added).

however, is the very power of the Department of Energy to issue remedial orders and to levy such sanctions…ARCO's claims were not barred by the exhaustion doctrine, and were ripe for judicial review. The scope of the [agency's] statutory authority is strictly a legal issue, and "[n]o factual development or application of agency expertise will aid the court's decision.

ARCO, 769 F.2d at 778, 782.

Indeed, the ARCO court stated that exhaustion of administrative remedies is not required where it is "highly unlikely that the [agency] would change its position if the case were remanded to it" because "the cause of overall efficiency will not be served by postponing judicial review." Id. at 782; see also Athlone Industries, 707 F.2d at 1488-89 (exhaustion of administrative remedies not required where the issue of agency's jurisdiction is a legal issue that would not benefit from further factual development within agency proceedings, and where it is "highly unlikely" that the agency would change its mind about its own jurisdiction in any event).

Similarly, here FERC has made absolutely clear that it believes it has the statutory authority to regulate natural persons who trade futures. FERC apparently made that determination perhaps as far back as 2005, has run a monitoring program on the NYMEX for some time, conducted investigations in that area, has explicitly mandated Hunter to produce responses to FERC and participate in FERC administrative proceedings or risk a US $30 million penalty, and has defended its view in numerous submissions before this Court, the U.S. District Court for the Southern District of New York, and in press releases. See Shur Decl. Exhibits F-L.

F.    The Court Has The Power To Issue A Judgment Pursuant To 28 U.S.C. § 1331

In such circumstances, a declaratory judgment is appropriate. The Court may declare the rights and other legal relations of any interested party where there exists an "actual controversy." 28 U.S.C. §§ 2201(a) et seq. Here, there is an actual controversy of "sufficient immediacy and reality to warrant the issuance of a declaratory judgment." FERC's determination of its

jurisdiction to regulate natural gas futures and its current and ongoing mandates and threats to Hunter to make submissions to it and to participate in FERC administrative proceedings are of "sufficient immediacy" to warrant a declaratory judgment from this Court. Tierney v. Schweiker 718 F.2d 449, 456 (D.C. 1983) ("sufficient immediacy" exists where federal agency intended to act in contravention of its statutory obligations); ARCO, 769 F.2d at 782 (court will entertain declaratory judgment action where plaintiff is faced with the dilemma of having to choose between complying with allegedly ultra vires agency action, or flout the agency and face the consequences should the agency be ultimately found to have the power to issue the orders); Steffel v. Thompson, 415 U.S. 452, 460-62 (1974).

Moreover, this Court has inherent authority to review federal officials' ultra vires acts, an authority that is conferred on Article III Judges by 28 U.S.C. § 1331.[10] Where, as here, a federal agency has acted or threatens to act "in excess of its delegated powers, and contrary to a specific prohibition" in a statute, the court has inherent jurisdiction to determine that the agency has engaged in "unlawful action." Leedom v. Kyne, 358 U.S. 184, 189 (1958) (affirming the district court's jurisdiction to prevent deprivation of a party's rights where the agency had "attempted [an] exercise of power that had been specifically withheld" by statute).

The proper construction of the Energy Policy Act of 2005 ("Energy Policy Act" or "EPAct") and the Commodity Exchange Act (the "CEA") is before this Court. Review of FERC's determination of its jurisdiction under the Energy Policy Act is therefore a purely legal question. Athlone, 707 F.2d at 1489 (scope of the Commission's statutory authority to assess

---

[10]    See Chamber of Commerce, 74 F.3d at 1327 (reviewing regulations implementing an executive order even though suit would not qualify under the APA, reasoning that "generally, judicial review is available to one who has been injured by an act of a government official which is in excess of his express or implied powers" (quoting Harmon v. Brucker, 355 U.S. 579, 581-82 (1958) and citing several Supreme Court and D.C. Circuit cases holding that federal courts have jurisdiction under Section 1331 to review whether an agency exceeded its delegated authority and that nothing in the APA repealed the grant of authority to review ultra vires actions)).

civil penalties was "strictly a legal issue"); see also ARCO, 769 F.2d at 782 (challenge to agency's power and scope of statutory authority is strictly a legal issue and no factual development or application of agency expertise will aid the court's decision) (internal citation omitted); State of California ex. rel. State Water Resources Control Bd. v. FERC, 966 F.2d 1541, 1562 (9th Cir. 1992) ("It is difficult to postulate an issue more proper for judicial decision than that of the statutory authority of an administrative agency").  This Court has jurisdiction to determine Hunter's request, and Hunter is entitled to relief based on the clear limits of FERC's jurisdiction under the Natural Gas Act and the CFTC's exclusive jurisdiction to regulate futures markets.  Accordingly, FERC's motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(1) and 12(b)(6) should be denied.

## II.    The Public Interest And Judicial Economy Would Be Served By This Court's Ruling Now Regarding FERC's Jurisdiction

This Court should issue an opinion addressing not only its own authority to rule on FERC's jurisdiction determination, but also the substantive issue of whether FERC has jurisdiction over futures and natural persons who trade futures.  Doing so would expedite ultimate judicial resolution of confusion in the futures markets engendered as a result of FERC's actions and serve the ends of judicial economy by getting the substantive issues before the D.C. Circuit as soon as possible.

FERC's assertion of jurisdiction over futures markets and natural persons operating in those markets is causing confusion in the market for natural gas futures.  A memorandum of law submitted recently by the Managed Funds Association, Inc. and International Swap and Derivatives Association, Inc. (major futures market participants), Futures Industry Association, Inc. (major futures market intermediaries), and New York Mercantile Exchange, Inc. and Chicago Mercantile Exchange, Inc. (major futures exchanges) (collectively the "Futures Group")

in a related case in the U.S. District Court for the Southern District of New York summarizes the problem thus:

> Congress designed [CFTC] exclusive jurisdiction to prevent uncertain and conflicting standards, as well as regulatory duplication, from interfering with the smooth functioning of U.S. futures markets in order to allow those markets to service the public interests in hedging and price dissemination. 7 U.S.C. § 5(a). FERC's proceeding endangers that congressional objective.

See Shur Decl., Exhibit M, p. 12.

According to the Futures Group, FERC's standard of market manipulation—which purports to include even unintentional influencing of price movements in the absence of fraud or deceit—is completely different from the standard used by existing futures regulators and is causing significant confusion to U.S. futures markets, with potential harms to liquidity and hedging opportunities in such markets. NYMEX and Chicago Mercantile Exchange, which are part of the Futures Group, noted that their situations present "profound" problems because they are now caught between the CFTC on the one hand claiming exclusive jurisdiction,[11] and FERC on the other hand claiming also to regulate futures activity but without any published rules or standards for doing so. See id. at 12-18.

This Court should issue a ruling on the substantive issue of FERC's jurisdiction because doing so now would allow the issue to reach the U.S. Court of Appeals for the D.C. Circuit more expeditiously. A ruling by the D.C. Circuit would confer certainty on the futures markets as to whether they are regulated by the CFTC, FERC, or both. The D.C. Circuit would have an opportunity to clarify this important issue, if it chose to do so, rather than wait for a possible

---

[11]     Despite FERC's earlier enthusiastic observations to this Court that the CFTC likely supported FERC's view of concurrent jurisdiction between the two agencies, the CFTC later filed a memorandum of law in the U.S. District Court for the Southern District of New York stating that the CFTC was the exclusive regulator of futures activity. See Shur Decl., Ex. I at pp. 18-19 (arguing contrary to FERC's view of its jurisdiction that Congress did not intend to give FERC any concurrent authority to regulate futures trading).

appeal after the conclusion of FERC OSC proceedings, which could be many months or years away, or perhaps never occur.[12]

Another reason for this Court to rule now on FERC jurisdictional issues is that doing so would potentially avoid further delay and unnecessary proceedings before this Court. By including a ruling on FERC jurisdictional issues in a final judgment, this Court would facilitate the D.C. Circuit's ability to rule not only on the issue of whether the District Court has jurisdiction to hear this dispute, but also on the underlying dispute regarding FERC jurisdiction itself. Otherwise, for example, if this Court were to dismiss the complaint solely for alleged lack of its own jurisdiction, and the D.C. Circuit held that this Court did have the jurisdiction to hear this case, the D.C. Circuit might feel compelled to remand the case to this Court for determination of FERC's jurisdiction—in which case a significant amount of time would be further expended only to end up in another appeal at the end of those proceedings. In other words, it would be a lot more efficient for the D.C. Circuit to rule on all these issues in one appeal from this Court's ruling.[13]  See Athlone, 707 F.2d at 1490 ("We could at this point

---

[12]     Indeed, FERC has violated its own rules and improperly delayed ruling on Matthew Donohoe's administrative challenge to FERC's ability to regulate natural persons. See Shur Decl. Exhibits J, K (noting that FERC has, more than four months after Donohoe's rehearing request, not yet made a ruling on the specific issues raised in that request, including the construction of the phrase "any entity," but has apparently taken the position that the issue has not been decided to be ripe for appeal. In so doing, FERC has effectively violated the terms of 18 C.F.R. § 385.713, which makes clear that any rehearing request not ruled upon within 30 days will be deemed denied).

        Given FERC's apparent gamesmanship in burying such issue by refusing to rule on it, a substantive opinion from this Court that covers that issue, and an appeal thereof, may be the only way that such issue can be vetted by the D.C. Circuit. See Athlone, 707 F.2d at 1488 (entertaining declaratory judgment suit where agency delayed ruling on important jurisdictional issue ("Commission failed to rule on Athlone's…petition")).

[13]     Amaranth and Matthew Donohoe have filed an appeal with the U.S. Court of Appeals for the D.C. Circuit challenging FERC's assertion of its own jurisdiction. See Petition for Review, dated December 6, 2007, filed in the United States Court of Appeals for the District of Columbia Circuit by Amaranth Advisors L.L.C., et. al., in the case captioned Amaranth Advisors L.L.C. et. al. v. United States Federal Energy Regulatory Commission, 07-1491; Petition for Review, dated December 11, 2007, filed in the United States Court of Appeals for the District of Columbia Circuit by Matthew Donohoe in the case captioned Matthew Donohoe v. United States Federal Energy Regulatory Commission, 07-1504.  Hunter is not a party to that order or to that appeal.  This Court's rendering a final judgment on this case expeditiously could allow Hunter to reach the D.C. Circuit at the same time as Amaranth's appeal and provide the D.C. Circuit an opportunity to dispose of this dispute within the same time frame, rather than piecemeal over time.

remand the case to the district court [upon reversing the district court's opinion that it did not

have jurisdiction to rule on the issue of the agency's jurisdiction], but since the dispositive issue

is 'devoid of issues of disputed material fact' and has 'been fully briefed and argued on appeal,'

we conclude that 'such a course is unnecessary and indeed would be unduly wasteful of judicial

resources.'") (internal citations omitted).

## III. FERC's Action Against Hunter Improperly Interferes With The Exclusive Jurisdiction Of The CFTC

### A. The Commodity Exchange Act Granted Exclusive Jurisdiction Over Natural Gas Futures Contracts To The CFTC

As set forth in the amicus brief submitted in support of the Commodity Futures Exchange

Commission's ("CFTC's") exclusive jurisdiction, FERC's improper assertion of jurisdiction over

Hunter encroaches upon the exclusive jurisdiction of the CFTC.[14]   The CFTC was granted

*exclusive* authority to regulate all transactions involving futures contracts.  When it adopted the

CEA, Congress specifically explained that the CFTC has "exclusive jurisdiction…with respect to

accounts, agreements…and transactions involving contracts of sale of a commodity for future

delivery."  7 U.S.C. § 2(a)(1)(A) (2007).  Congress intended the CEA to pre-empt any other

federal or state authority regulating commodities futures trading.  See Philip F. Johnson, The

Commodity Futures Trading Commission Act: Preemption as Public Policy, 29 Vand L. Rev. 1,

18 (1976) (describing the legislative history of the CEA and noting that "it is clear that the

conferees intended the CFTC to be the sole regulatory authority for the futures industry"); see

FTC v. Ken Roberts Co., 276 F.3d 583, 590 (D.C. Cir. 2002) ("[A]ll of the categories

delineated…describe business deals that involve the buying and selling of futures, which

---

[14]     See Shur Decl., Exhibit M at pp. 7, 13-14 ("Through [the second part of 7 U.S.C. 2(a)(1)(A)], Congress has reaffirmed that CFTC exclusive jurisdiction [over U.S. futures markets] is a trump card…If FERC adopts, as its brief suggests, a definition of manipulation that would punish unintentional, yet reckless, conduct, the impact on futures trading could be potentially devastating…The point is that FERC's enforcement of a new futures market manipulation standard will, at best, breed uncertainty, and more likely, legal conflict, into this important economic activity.  That uncertainty or conflict may trigger a loss in market liquidity and related hedging opportunities, with dire consequences for U.S. futures markets.")

comports with Congress's goal of conferring the CFTC with sole regulatory authority over futures contracts, markets or other exchanges").

The CFTC was granted exclusive jurisdiction over the futures markets to "avoid unnecessary, overlapping and duplicative regulation." 120 Cong. Rec. 34,736 (Oct. 9, 1974). As the Seventh Circuit noted, the goal of the CEA was to bring the futures markets "under a uniform set of regulations." American Agricultural Movement, Inc. v. Board of Trade of City of Chicago, 977 F.2d 1147, 1155-57 (7th Cir. 1992) (rev'd in part on other grounds by Sanner v. Board of Trade of City of Chicago, 62 F.3d 918 (7th Cir. 1995)). Moreover, "the clarifying amendments make clear that (a) the [CFTC's] jurisdiction over futures contract markets or other exchanges is exclusive and includes the regulation of commodity accounts, commodity trading agreements, and commodity options; (b) the [CFTC's] jurisdiction, where applicable, supersedes State as well as Federal agencies..." Sen. Rep. No. 93-1131, 93rd Cong., 2d Sess., 54 (1974) (emphasis added). Stated alternatively, "[u]nder the exclusive grant of jurisdiction to the Commission, the authority in the Commodity Exchange Act…would preempt the field insofar as futures regulation is concerned." H. Conf. Rep. No. 93-1383, 93rd Cong., 2d Sess. (1974). Indeed, as one court has stated after the enactment of EPAct, "the CFTC has exclusive jurisdiction over what are referred to as 'futures contracts.'" CFTC v. Reed, 481 F.Supp.2d 1190, 1195 (D. Co. 2007) (citation omitted).

As set forth in United States v. Reliant Energy Services Inc., 420 F.Supp.2d 1043 (N.D. Cal. 2006), the CFTC's jurisdiction is broader than FERC's: unlike FERC, the CFTC has exclusive jurisdiction over futures as well as jurisdiction over physical commodities in some cases (hence not the name the "Commodities and Futures" Trading Commission). FERC, however, has non-exclusive jurisdiction over wholesale energy only. In considering exactly the anti-manipulation provisions that FERC relies on here, the court stated that "the recent amendments to the FPA" (by the EPAct being discussed here) do not "reveal an intent to keep

electricity wholesalers outside of the reach of the CEA's anti-manipulation provisions." Id. at 1064. In contrast to the exclusive grant of authority over futures contracts plus the explicit right to regulate manipulation of the underlying commodity to the CFTC in the CEA, Congress pointed out in the NGA that "[n]othing in this Section may be construed to limit or affect the *exclusive* jurisdiction of the [CFTC] under the [CEA]." See 15 U.S.C. § 717t-2(c)(2).

Where, as here, the jurisdiction of the CFTC is exclusive and the jurisdiction of FERC is not, the latter is precluded from regulating activity in the area of alleged overlap. In Chicago Mercantile Exchange v. SEC, 883 F.2d 537 (7th Cir. 1989), the Seventh Circuit dealt with the claimed intersection between the CFTC and SEC's jurisdictions. The court found that even where a financial instrument is both a futures contract and a security—and thus apparently subject to the jurisdiction of both the CFTC and the SEC—the CFTC is "the sole regulator" because of the exclusivity provision of 7 U.S.C. § 2(a)(ii), which has no parallel in the enabling statute for the SEC. Id. at 539. Chicago Mercantile Exch. v. SEC is exactly on point. FERC does not cite any authority, much less any language in the NGA, purporting to grant it *exclusive* jurisdiction over the transactions governed by § 315 of the EPAct. Indeed, FERC's assertion of jurisdiction over futures contracts would make the "exclusive" purview of the CFTC meaningless, and should be rejected outright by the Court, as a matter of law.

B.    The Energy Policy Act Does Not Grant FERC Jurisdiction over Futures Trading

FERC's enabling statutes do not grant FERC the ability to regulate trading in natural gas futures contracts. FERC's regulatory authority is limited to wholesale energy markets—the market for physical natural gas. Indeed, to avoid doubt about the scope of FERC's jurisdiction, Congress stated in the EPAct that "[n]othing in this Section may be construed to limit or affect the exclusive jurisdiction of the [CFTC] under the [CEA]." 15 U.S.C. § 717t-2(c)(2).

In the Memorandum of Understanding Between FERC and CFTC Regarding Information Sharing, (October 12, 2005), ("MOU"), FERC specifically acknowledged that the CFTC has

"*exclusive* jurisdiction with respect to…transactions involving contracts of sale of a commodity for future delivery, including…natural gas." See Shur Decl., Exhibit A at p. 2 (emphasis added). In fact, in briefing before Judge Chin in the action against Amaranth and Hunter, the CFTC affirmed that it has exclusive jurisdiction to bring manipulation claims based on the futures trading at issue and that FERC lacks jurisdiction, stating:

> The plain language of Section 2(a)(I)(A) [of the Commodity Exchange Act] vests the CFTC with sole power and authority among federal regulatory agencies to adjudicate the lawfulness of futures trading on designated contract markets such as the NYMEX.
>
> * * *
>
> The Energy Policy Act did nothing to affect the scope of the CFTC's exclusive jurisdiction.  Nor did it change the scope of FERC's jurisdiction over natural gas transactions as set forth in 15 U.S.C. §717(b) … Had Congress intended in the Energy Policy Act to reverse 30 years of unbroken precedent regarding the application of Section 2(a)(1)(A) of the CEA to futures trading on designated contract markets, it would have done so clearly and unambiguously.

See Shur Decl., Exhibit I, pp. 11, 24.[15]

Prior to the sensationalistic publicity that made Amaranth and Plaintiff tempting targets for enforcement, FERC itself believed that its jurisdiction extended only to wholesale physical gas transactions.  In its often-cited Order 670 interpreting its anti-manipulation rule, FERC stated that the purpose of the rule was to "deter or punish fraud in wholesale energy markets," that the rule "does not, and is not intended to, expand the types of transactions subject to [FERC's] jurisdiction under the…NGA…" and that its "jurisdiction is limited to certain wholesale transactions that remain within the ambit of the NGA, [the Natural Gas Policy Act of 1978], and FPA." See Shur Decl., Exhibit B at ¶¶ 5, 16, 22, (emphases added).  FERC even admitted that if

---

[15]    Defendants' motion was denied on November 1, 2007.  In support of the CFTC's jurisdiction, several financial futures industry associations filed an amicus brief, including the NYMEX, Chicago Mercantile Exchange Group, Inc., and the Futures Industry Association.  See Shur Decl, Exhibit M.

Congress intended to expand the transactions under FERC's traditional jurisdiction via the EPAct, "it would have done so explicitly." Id. at ¶ 20.

## IV.     The "In Connection With" Language in NGA Section 19(b) Is Not Sufficient To Confer Jurisdiction to FERC Over Hunter

Under the NGA it is unlawful "for any entity, directly or indirectly, to use or employ, in connection with the purchase or sale of natural gas or the purchase or sale of transportation services subject to the jurisdiction of the Commission, any manipulative or deceptive device or contrivance[.]" 15 U.S.C. § 717c-1.  Congress did not define the terms "manipulative or deceptive device or contrivance" in the EPAct, but instead directed the Commission to read these terms as they "are used in section 10(b) of the Securities Exchange Act of 1934."  15 U.S.C. § 717c-1.  Under established securities law precedent, to be deemed "in connection with" a jurisdictional transaction, the alleged fraud must have "coincided with the sales themselves." SEC v. Zandford, 535 U.S. 813, 820 (2002).  "Conduct that is merely incidental or tangentially related to the sale of securities will not meet the 'in connection with' requirement." Leykin v. AT&T Corp., 423 F.Supp.2d 229, 241 (S.D.N.Y. 2006) aff'd, 2007 WL 397421 (No. 06-1583) (2d Cir. January 30, 2007).  The "in connection with" language in Section 10(b) is to ensure that conduct not integral to the purchase or sale of securities is not swept into the ambit of the securities laws.  Here there is no dispute that Hunter is an individual and is never alleged to have traded in FERC jurisdictional markets.  Accordingly, FERC should not be permitted to enlarge its jurisdiction to include Hunter with an overly broad interpretation of "in connection with" which is precluded by established precedent.

FERC's determination to proceed against Hunter, an individual who is never alleged to have traded in FERC jurisdictional markets, is an unprecedented attempt to expand its own power in the wake of its poor enforcement record in the wholesale natural gas markets.  FERC's

attempt to do so while evading judicial review of its assertion of jurisdiction should not be countenanced. The U.S. Court of Appeals for the D.C. Circuit has repeatedly recognized and affirmed the power of the district courts to review administrative and executive action in excess of delegated statutory authority for the purpose of "protecting the individual" from the "overweening power of a bureaucratic state." Dart v. United States, 848 F.2d 217, 218 (D.C. Cir. 1988). In Dart, plaintiff sought to overturn a decision by the Secretary of Commerce, imposing civil violations for breaches of the Export Administration Act. In addressing precisely the issue that Hunter has presented to this Court, it held that "the presumption of judicial review is particularly strong where an agency is alleged to have acted beyond its authority." Id. at 223 (citing Stark v. Wickard, 321 U.S. 288, 310 (1944) ("The responsibility of determining the limits of statutory grants of authority…is a judicial function entrusted to the courts….to adjudicate cases and controversies as to claims of infringement of individual rights….by the exertion of unauthorized administrative power."). The court found that because the "order imposing sanctions ... exceeded the Secretary's authority," judicial review was proper. Dart, 848 F.2d at 219, 221-22. It therefore reversed the district court's decision denying jurisdiction, despite a provision explicitly providing that orders of the Secretary were "not subject to judicial review." Id.

## V.     FERC's Enforcement Authority Under The NGA Does Not Extend To Individuals

### A.     The NGA Limits FERC's Anti-Manipulation Authority To Any "Entity," Which Does *Not* Include Natural Persons

FERC has asserted that it has jurisdiction to bring an administrative enforcement action against Hunter, a natural person, because in FERC's opinion the phrase "any entity" in the EPAct includes natural persons as well as corporations. FERC cites its own Order 670 as the legal authority. However, by its plain terms, the anti-manipulation provisions of the NGA

proscribe only manipulation of FERC jurisdictional transactions by "any entity" and do not include the "and natural persons" phrase that FERC has appropriated for itself. Furthermore, FERC cannot enhance the jurisdiction delegated to it by Congress in the NGA so Order 670 is unavailing. See Michigan v. EPA, 268 F.3d 1075, 1081 (D.C. Cir. 2001). The statute provides:

> It shall be unlawful for any entity, directly or indirectly, to use or employ, in connection with the purchase or sale of natural gas…subject to the jurisdiction of the [FERC], any manipulative or deceptive device or contrivance.

See 15 U.S.C. § 717c-1.

FERC's Rule 1c.1 set forth in Order 670 repeats verbatim the language of the statute. See 18 C.F.R. § 1c1.1 (2006). Congress's use of the term "entity" to exclude natural persons is plain and unambiguous. Where Congress has spoken directly to the question at issue, courts must give effect to Congressional intent and will not defer to an agency's interpretation of a statute it administers. See Chevron v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984).

> B.    The D.C. Circuit Has Repeatedly Rejected Agency Claims That Statutory Terms Include the Term "Persons" where "Person" Is Used In Other Statutory Provisions Or Is a Defined Term.

The D.C. Circuit has previously considered precisely the "entity" argument advanced by FERC to the court below, and rejected it. In American Dental Association v. Shalala, 3 F.3d 446 (D.C. Cir. 1993), the Court declined to find that the statutory term "entity" included individuals where there were many uses of the term "person" to refer to individuals in the relevant statute, and yet Congress chose to use only the term "entity" in the contested section. Id. at 447. The Court considered it of "great significance" that Congress had chosen the term "entity" instead of "person" and rejected an expansive reading of the term which would include individuals. Id. Similarly in the NGA, the terms "individual" or "person" are repeatedly used instead of "entity"

when referring to natural persons.[16]  As in <u>American Dental</u>, the NGA evinces a clear intent to use the term "person" to encompass individuals, but no similar intent with respect to the term "entity."  Accordingly, FERC's interpretation purporting to give it jurisdiction to bring enforcement actions against individuals is contrary to the plain terms of the NGA.

Similarly in <u>Wolverine Power Co., v. FERC</u>, 963 F.2d 446, 451 (D.C. Cir. 1992), the Court struck down FERC's overly broad interpretation of the term "licensee" in the Electric Consumers Protection Act.  While the term "entity" is not defined in the NGA, the term "person" is defined as "an individual or a corporation."  15 U.S.C. § 717a(1).  In <u>Wolverine</u>, the term "licensee" was not defined, but the term "person" was also defined to include an individual or corporation.  963 F.2d at 450.  The D.C. Circuit relied on the fact that, just as in the NGA, the statute in <u>Wolverine</u> permitted FERC to seek an injunction against any "person," but used a term other than "person" in the contested provision.  The Court stated that "[t]he best evidence of Congress's intent in enacting [a particular section] is, of course, the text of the section itself." <u>Id.</u> at 451.  The Court found further that the use of the different terms "manifests a general distinction between the two terms" and Congress clearly "meant what it said." <u>Id.</u>

C.    <u>"Entity" Is Used Elsewhere In The NGA In A Manner That Does Not Include Natural Persons</u>

The use of "entity" elsewhere in the NGA in a manner that does not refer to natural persons confirms the conclusion that Congress did not intend that the latter would be included in the former.  For example, Section 717t-2 of the NGA provides that FERC may rely on "entities" other than FERC to disseminate timely "information about the availability and prices of natural

---

[16]    <u>See</u> <u>e.g.</u>, 15 U.S.C. § 717g ("The burden of proof to justify every accounting entry. . . shall be on the person making, authorizing or requiring such entry."); 15 U.S.C. § 717m (in case of "refusal to obey a subpoena issued to any person, the Commission may invoke the aid of any court of the United States…where such person resides"); 15 U.S.C. § 717s(d)("the court may prohibit…any individual who is engaged or has engaged in practices constituting a violation of Section 717c-1…from…acting as an officer or director of a natural gas company"); 15 U.S.C. § 717n(e) (FERC may admit as a party to a hearing "any interested State, State commission, municipality or any representative of interested consumers or security holders, or any competitor of a party to such proceeding, or any other person whose participation in the proceeding may be in the public interest").

gas sold at wholesale and in interstate commerce to the Commission, State commissions, buyers and sellers of wholesale natural gas, and the public." 15 U.S.C. § 717t-2.  It is inconceivable that such a role could be fulfilled by a natural person.  See Allen v. CSX Transp., Inc., 22 F.3d 1180, 1182 (D.C. Cir. 1994) ("It is a well established rule of statutory construction that a 'word is presumed to have the same meaning in all subsections of the same statute.'"); American Dental Association, 3 F.3d at 447 ("We have reviewed each and every use of the term "entity" in the Act—Congress' unvarying practice is to use the term to refer to groups and organizations.  We will not attribute a different meaning to the term in [one] section…").  In addition, where Congress intended a particular section of the NGA to apply to a broader group than "persons," it made its intent clear by not using the term "entity," but by listing "person" as only one of several groups to which the given section applies.[17]

        D.       **Congress Substituted "Entity" For "Person" When It Adopted The Anti-Manipulation Language From The Exchange Act.**

The D.C. Circuit has consistently stated that where "Congress chose different language…we must presume that Congress intended the terms to have different meanings." Washington Hospital Center v. Bowen, 795 F.2d 139, 146 (D.C. Cir. 1986).  FERC has admitted that its anti-manipulation provision is modeled on and closely tracks § 10(b) of the Exchange Act, with the notable exception that instead of using "person" in § 717c-1, as it did in § 10(b), it substituted the term "entity."[18]  Had Congress intended for "entity" to be defined as broadly as

---

[17]      See 15 U.S.C. § 717n(e) (FERC may admit as a party to a hearing "any interested State, State commission, municipality or any representative of interested consumers or security holders, or any competitor of a party to such a proceeding, or any other person…"); 15 U.S.C. § 717f (FERC may "direct a natural-gas company to…sell natural gas to [] any person or municipality"); 15 U.S.C. § 717r ("Any person, State, municipality, or State commission aggrieved by an order issued by the Commission…may apply for a rehearing…").

[18]      Compare 15 U.S.C. § 78j(b) ("It shall be unlawful for any person, directly or indirectly… [t]o use or employ, in connection with the purchase or sale of [securities], any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe…" with 15 U.S.C. § 717c-1 ("It shall be unlawful for any entity, directly or indirectly, to use or employ, in connection with the purchase or sale of

"person" is defined in the Exchange Act, it could simply have kept "person" in § 717c-1 and defined that term by reference to the Exchange Act, as it did elsewhere in § 717c-1 with respect to the term "manipulative or deceptive device or contrivance."[19]   It did not do so, however, and the import is clear: Congress did not intend FERC's anti-manipulation provision to extend over natural persons, including Hunter.

For all of the above reasons, there is no doubt that Congress did not intend the term "entity" to include natural persons, and accordingly, the Court should find that FERC does not have jurisdiction over Hunter, a natural person, under anti-manipulation provision set forth in § 717c-1.

---

[natural gas or jurisdictional transportation services], any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe . . .")

[19]     See 15 U.S.C. § 717c-1  which prohibits any "manipulative or deceptive device or contrivance (as those terms are used in section 10(b) of the Securities Exchange Act of 1934 . . ."). A "person" as defined in the Exchange Act as "a natural person, company, government, or political subdivision, agency or instrumentality of a government") 5 U.S.C. § 78c(a)(9).

## CONCLUSION

For all the reasons set forth above, Hunter respectfully requests that the Court deny FERC's motion to dismiss, and grant Hunter's request for a declaratory judgment as set forth in his Complaint.


Dated: January 7, 2008
        Washington, D.C.

                                    Respectfully submitted,

                                    KOBRE & KIM LLP

                                    /s/ Michael S. Kim

                                    Michael S. Kim
                                    Matthew I. Menchel
                                    Natalie Holme Elsberg

                                    Kobre & Kim LLP
                                    800 Third Avenue
                                    New York, New York 10022
                                    Telephone:    212.488.1200
                                    Facsimile:    212.488.1220

                                    Justin V. Shur (D.C. Bar #973855)

                                    Kobre & Kim LLP
                                    1919 M Street, N.W.
                                    Washington, D.C. 20036
                                    Telephone:    202.664.1900
                                    Facsimile:    202.664.1920

                                    *Attorneys for Brian Hunter*