# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

———————————————————x
:
BRIAN HUNTER,                            :
:
Plaintiff,                               :        07 Civ. 1307 (RJL)
:
v.                                       :
:
FEDERAL ENERGY REGULATORY                :
COMMISSION,                              :
:
Defendant.                               :
:
———————————————————x


## PLAINTIFF BRIAN HUNTER'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR DECLARATORY JUDGMENT


KOBRE & KIM LLP

800 Third Avenue
New York, New York 10022
Tel: 212.488.1200

1919 M Street, N.W.
Washington, D.C. 20036
Tel: 202.664.1900

*Counsel for Brian Hunter*

## TABLE OF CONTENTS

ARGUMENT ...................................................................................................................... 1

    I.      FERC Does Not Dispute The Key Issues Necessary For The Court To
            Reach A Declaratory Judgment In Hunter's Favor ................................................. 1

    II.     FERC's Determination On Jurisdiction Is Final And Reviewable ........................ 2

    III.    The Issues Before The Court Are Purely Legal ....................................................... 7

          A.      The CEA Unambiguously Confers Exclusive Jurisdiction On
                  The CFTC To Regulate All Transactions "Involving" Futures
                  Contracts ................................................................................................ 9

          B.      FERC's Claims Of Jurisdiction Regarding The Alleged
                  Connection Between The Futures Settlement Price And The
                  Price of Natural Gas Are Irrelevant To This Declaratory
                  Judgment ............................................................................................... 14

          C.      FERC's Enforcement Authority Does Not Extend to Natural
                  Persons .................................................................................................. 18

REQUEST FOR EXPEDITED HEARING ........................................................................ 24

CONCLUSION .................................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**

Advanced Systems Development, Inc. v. U.S., 72 Fed. Cl. 25 (2006)............................................ 5

Aetna Casualty & Surety Co. v. Quarles, 92 F.2d 321 (4th Cir. 1937) ........................................ 25

Altamont Gas Transmission Co., v. F.E.R.C., 92 F.3d 1239 (D.C. Cir. 1996) ........................... 18

American Bankers Ass'n v. S.E.C., 804 F.2d 739 (D.C. Cir. 1986) ............................................ 24

American Dental Association v. Shalala, 3 F.3d 446 (D.C. Cir. 1993)........................................ 23

Athlone Industries, Inc. v. Consumer Product Safety Comm'n, 707 F.2d 1485 (D.C. Cir. 1983)................................................................................................................................. 7

Atlantic Richfield Co. v. U.S. Dep't of Energy, 769 F.2d 771 (D.C. Cir. 1985) .......................... 6

Bantam Books, Inc. v. Sullivan, 372 U.S. 58 (1963)..................................................................... 5

Bennett v. Spear, 520 U.S. 154 (1977) ......................................................................................... 6

Bonneville Power Admin. v. F.E.R.C., 422 F.3d 908 (9th Cir. 2005) ........................................ 17

Bradford Nat. Clearing Corp. v. S.E.C., 590 F.2d 1085 (D.C. Cir. 1978)................................... 13

Brendsel v. Office of Federal Housing Enterprise Oversight, 339 F. Supp 2d. 52 (D.D.C. 2004)............................................................................................................................. 21

Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164 (1994) ..................................................................................................................................... 17

Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984) ..................................................................................................................................... 23

Chicago Mercantile Exchange v. S.E.C., 883 F.2d 537 (7th Cir. 1989)...................................... 10

Ciba-Geigy Corp. v. E.P.A., 801 F.2d 430 (D.C. Cir. 1986)......................................................... 6

City of Abilene, Tex. v. F.C.C., 164 F.3d 49 (D.C. Cir. 1999) .................................................... 22

Clark v. John Lamula Investors, Inc., 583 F.2d 594 (2d Cir. 1978) ........................................... 19

Conoco, Inc. v. F.E.R.C., 90 F.3d 536 (D.C. Cir. 1996) ............................................................ 14

Continental Air Lines, Inc. v. Civil Aeronautics Board, 522 F.2d 107 (D.C. Cir. 1975)....................................................................................................................................... 5

Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 395 F.3d 25 (2d Cir. 2005) ................... 15

F.T.C. v. Ken Roberts Co., 276 F.3d 583 (D.C. Cir. 2001)................................................ 9, 10, 11

Fisher v. Dean Witter Reynolds, Inc., 526 F. Supp. 558 (E.D. Pa. 1981) ................................... 15

General Electric Co. v. E.P.A., 290 F.3d 377 (D.C. Cir. 2002)..................................................... 5

In re Lernout & Hauspie Sec. Litig., 236 F. Supp. 2d 161 (D. Mass. 2003) .............................. 16

In re Penn Cent. Sec. Lit., 395 F. Supp. 192 (E.D. Pa. 1975)...................................................... 19

Indianapolis Power & Light Co., 48 FERC ¶ 61,040 (F.E.R.C. 1989)..........................................4

International Union, et al. v. Brock, 783 F.2d 237 (D.C. Cir. 1989) ................................ 3

James v. Pennsylvania General Ins. Co., 349 F.2d 228 (D.C. Cir. 1965).................................... 24

Leykin v. AT&T Corp., 423 F. Supp. 2d 229 (S.D.N.Y. 2006) .................................................. 16

Ling v. Deutsche Bank, AG, No. 04 Civ. 4566 (HB), 2005 WL 1244689 (S.D.N.Y.
    May 26, 2005) ........................................................................................................................ 16

Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270 (1941) ...................................... 5

Michigan v. E.P.A., 268 F.3d 1075 (D.C. Cir. 2001) .................................................................. 18

MidAmerican Energy Holdings Co., 118 FERC ¶61,003 (F.E.R.C. 2007).................................... 4

Nat'l Student Ass'n v. Hershey, 412 F.2d 1103 (D.C. Cir. 1969)................................................... 6

National Automatic Laundry and Cleaning Council v. Shultz, 443 F.2d 689 (D.C.
    Cir. 1971)........................................................................................................................... 3, 4

Nexitz v. Cunny, 221 F. Supp. 571 (N.D. Ill. 1963)................................................................... 16

Northern States Power Co. v. F.E.R.C., 176 F.3d 1090 (8th Cir. 1999)...................................... 17

Ontario Public Service Employees v. Nortel Networks Corp., 369 F.3d 27 (2d Cir.
    2004)....................................................................................................................................... 15

Paine, Webber, Jackson & Curtis, Inc. v. Conaway, 515 F. Supp. 202 (D. Ala. 1981) ............... 15

Pross v. Katz, 784 F.2d 455 (2d Cir. 1986) ............................................................................... 15

Rand v. Anaconda-Ericsson, Inc., 794 F.2d 843 (2d Cir. 1986)................................................. 15

Reliable Automatic Sprinkler Co. v. Consumer Product Safety Comm'n, 324 F.3d
    726 (D.C. Cir. 2003)................................................................................................................ 7

S.E.C. v. Univest, Inc., 405 F. Supp. 1057 (N.D. Ill. 1976) ....................................................... 11

S.E.C. v. Zandford, 535 U.S. 813 (2002)................................................................................... 15

Southern Ohio Coal Co., v. Office of Surface Min., Reclamation and Enforcement,
    831 F. Supp. 1324 (S.D. Ohio 1993)........................................................................................ 5

Southwestern Bell Corp. v. F.C.C., 43 F.3d 1515 (D.C. Cir. 1995)............................................. 23

Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, 128 S.Ct. 761 (Jan. 15, 2008)................... 17

Superintendent of Ins. of N.Y. v. Bankers Life & Casualty Co., 404 U.S. 6 (1971)................... 16

U.S. v. Gilbert, 668 F.2d 94 (2d Cir. 1981) .............................................................................. 16

U.S. v. O'Hagan, 521 U.S. 642 (1997)...................................................................................... 16

United Public Workers of America (C.I.O.), et al. v. Mitchell, 330 U.S. 75 (1947)..................... 6

Wharf (Holdings) Ltd v. United Int'l Holdings, Inc., 532 U.S. 588 (2001) ................................. 16

Williams Gas Processing v. F.E.R.C., 373 F.3d 1335 (D.C. Cir. 2004)....................................... 14

**Statutes**

15 U.S.C. § 717a-(1) ................................................................................................ 19

15 U.S.C. § 717c–1 .................................................................................. 12, 14, 19, 20

15 U.S.C. § 717g-(a) ............................................................................................... 19

15 U.S.C. § 717m-(d) .............................................................................................. 19

15 U.S.C. § 717s ....................................................................................................... 20

15 U.S.C. § 717s(a) .................................................................................................. 20

15 U.S.C. § 717t-2(c)(2) .................................................................................... 15, 24

15 U.S.C. §717f(a) ................................................................................................... 21

15 U.S.C. §78c(a)(9) ................................................................................................ 18

16 U.S.C. § 824(f) .................................................................................................... 22

16 U.S.C. § 824v ...................................................................................................... 21

7 U.S.C. § 2(a)(1)(A) ................................................................................................. 9

7 U.S.C. § 2(g) ......................................................................................................... 11

**Other Authorities**

151 Cong. Rec. S7451-04 (2005) ............................................................................ 21

S. Rep. No. 93-1131 (1974) ..................................................................................... 13

Plaintiff Brian Hunter ("Hunter") respectfully submits this reply memorandum of points and authorities in support of Hunter's cross motion for a declaratory judgment. In the interest of not burdening the Court, we hereby incorporate by reference the prior briefing submitted to the Court, on July 23, 2007, August 3, 2007, August 7, 2007, and January 7, 2008.

**ARGUMENT**

**I.      FERC Does Not Dispute The Key Issues Necessary For The Court To Reach A Declaratory Judgment In Hunter's Favor**

Three important points are clear and undisputed by the Federal Energy Regulatory Commission ("FERC"). These points demonstrate that, as a matter of law, Hunter is entitled to a declaratory judgment by this Court that FERC lacks jurisdiction over energy futures trading, as requested in the Complaint.

First, FERC does not dispute that Hunter is a natural person who traded natural gas futures contracts, not physical natural gas in wholesale natural gas markets.[1] Indeed FERC cannot do so.

Second, FERC does not dispute that its determination of jurisdiction over Hunter's trading of futures contracts was not made by any "order" or pursuant to any "proceeding under Section 19(b) of the Natural Gas Act."

Third, FERC does not dispute that it has made numerous and various public statements, including before this Court, unequivocally confirming that it believes it has jurisdiction over natural persons trading in futures contracts.

These three undisputed facts alone are fatal to FERC's claim of jurisdiction as a matter of law, as set forth more fully below.

---

[1]      See FERC Memorandum of Points and Authorities In Support of Motion to Dismiss (hereafter "Opp. Br."), at 2 (FERC's "investigation of trading on the NYMEX by Hunter"); FERC Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for a Preliminary Injunction (hereafter "PI Opp. Br."), at 3 (FERC's conclusion that "Amaranth and Hunter manipulated the NYMEX Futures Contract price").

To distract the Court from examining the consequence of FERC's inability to contest these undisputed points, FERC raises various purported factual issues that are wholly irrelevant to Hunter's declaratory judgment motion. Hunter contends that FERC lacks jurisdiction here <u>even if all of FERC's factual claims in the Order to Show Cause ("OSC") are true</u>.[2] Under the Commodity Exchange Act ("CEA"), even if Hunter did in fact manipulate natural gas futures trading and such trading reduced natural gas prices as alleged by FERC, the Commodity Futures Trading Commission ("CFTC") nonetheless has exclusive jurisdiction for all trades and transactions "involving" futures contracts. FERC's claims of jurisdiction are therefore unauthorized by law and a declaratory judgment should be granted in Hunter's favor. Moreover, under the terms of the Natural Gas Act ("NGA"), FERC has no statutory authority to bring an enforcement action for market manipulation against natural persons.

## II.   **FERC's Determination On Jurisdiction Is Final And Reviewable**

FERC has clearly made a final determination as to its jurisdiction within the definition of finality set forth in the controlling case law. FERC has never wavered from its assertion of jurisdiction over futures contracts trading on NYMEX by natural persons. Indeed, several public pronouncements have been made on the subject, some of which are listed below:

- 2/21/07 FERC Chairman Kelliher Letter to Senator Bingaman: "[FERC] interpret[s] the anti-manipulation language of [the Energy Policy Act of 2005] as allowing the [FERC] to sanction market manipulation in financial transactions of natural gas that affect jurisdictional sales, or physical sales…As a consequence, [FERC] staff has reviewed trading into the last half hour final settlement period for NYMEX Futures since Fall of 2004."

- 7/31/07 Chairman Kelliher Interview:  "What we're doing is we're acting to **sanction manipulation of futures** that affected FERC jurisdictional transactions." (emphasis added).

---

2       The OSC is formally titled Order to Show Cause and Notice of Proposed Penalties, 120 FERC ¶ 61,085, issued July 26, 2007, and attached as Exhibit E to the Declaration of Justin V. Shur in Opposition to Defendant's Motion to Dismiss the Complaint ("Shur Decl.").

- 12/12/07 Chairman Kelliher Statement: "[FERC] stand[s] by [its] position that Amaranth's activities **fall within [its] jurisdiction** insofar as they affected physical sales of natural gas" and indicated that the reference in the Natural Gas Act to "any entity" showed "Congress's intent to capture not only natural gas companies historically subject to FERC jurisdiction under the Natural Gas Act, **but also anyone else that engages in prohibited behavior that affect jurisdictional physical sales**." (emphasis added).

See Shur Decl. at ¶¶ 5, 10, 15.

As to why FERC's decision is final and ripe for review, Hunter incorporates by reference the arguments set forth in his Memorandum of Points and Authorities in Response to Defendant's Opposition to Plaintiff's Motion for a Preliminary Injunction and Declaratory Relief, filed August 3, 2007, at 3-7. Additionally, FERC has issued an administrative pronouncement that states unequivocally that it believes it has jurisdiction. (See FERC Order Denying Rehearing, 121 FERC ¶ 61,224, issued November 30, 2007, directed as to Amaranth Advisors LLC, Matthew Donohoe, and others, attached as Exhibit J to the Shur Decl.).

Contrary to FERC's claim that its "legal conclusion" is not a proper subject for declaratory judgment, "when a legal challenge focuses on an announcement of a substantive statutory interpretation, courts are emphatically qualified to decide whether an agency has acted outside of the bounds of reason." International Union, et al. v. Brock, 783 F.2d 237, 245 (D.C. Cir. 1989). An "agency's interpretation of its governing statute, with the expectation that regulated parties will conform to and rely on the interpretation is final agency action fit for judicial review." Id. at 248. See also National Automatic Laundry and Cleaning Council v. Shultz, 443 F.2d 689, 698 (D.C. Cir. 1971) ("The term 'agency action' thus embraces and [sic] agency's interpretation of its law, and it is the finality of that action that [the Court] must consider.")

FERC attempts to confuse the matter by conflating its jurisdictional determination (which has already been completed and announced to the world numerous times) with the fact that it has not yet made a final finding of liability by Hunter under the particular facts alleged in FERC's OSC.

3

However, the issue presented to this Court on FERC's jurisdiction does not depend on a determination as to whether Hunter in fact violated the law in the particular manner alleged in the OSC. Therefore, as set forth in National Automatic Laundry, 443 F.2d 689, the Court can review FERC's determination of its own jurisdiction, reflected, inter alia, in Chairman Kelliher's final and authoritative statements that FERC has jurisdiction.[3]

FERC's numerous assertions of its own jurisdiction are clearly an indication of final agency action, and FERC's suggestion that nobody can challenge its jurisdiction until it issues an order calling for a hearing on such issue is double talk. (Essentially, FERC argues that this Court does not have jurisdiction because Hunter is supposedly attempting to challenge an "order" under Section 19(b) of the NGA, but at the same time FERC argues that no "order" asserting jurisdiction has been issued so, in effect, nobody can challenge the agency's decision on its own jurisdiction.)[4] Incredibly, FERC points to its own administrative orders as authority as to when FERC has "acted"—essentially claiming that the Court should accept FERC's incorrect position on the legal meaning of finality.[5] Contrary to FERC's claims, however, courts do not permit agencies to shield

---

[3]  FERC's attempt to distinguish National Automatic Laundry on the basis that an administrator answered "fact-intensive questions" which were "intended as an authoritative statement outlining behavior with which compliance was expected" (Opp Br. at 6, n.6) is bewildering in view of the fact that Kelliher's answers were given to the Chairman of the Senate Committee of Energy and Natural Resources regarding FERC's efforts to implement its enforcement authority pursuant to the Energy Policy Act of 2005 ("EPAct 2005"), and FERC has clearly proceeded on the assumption that compliance with its assertion of jurisdiction is expected, including, but not limited to its expectation that it will impose $30 million in fines on Hunter unless he persuades FERC otherwise.

[4]  FERC's efforts to avoid judicial scrutiny are also reflected in FERC's continued delay in ruling on arguments raised by Donohoe in his rehearing request concerning the inapplicability of the Anti-Manipulation provisions of EPAct 2005 to individuals, rather than entities. FERC has simultaneously argued before the Court of Appeals for the District of Columbia Circuit that Donohoe's appeal of FERC's denial of rehearing is procedurally improper because FERC has yet to rule on issues raised uniquely by Donohoe. See Motion of Respondent Federal Energy Regulatory Commission to Dismiss One (Donohoe, No. 07-1504) of the Two Petitions for Review, dated January 28, 2008, filed in the Court of Appeals for the District of Columbia Circuit in the case captioned Amaranth Advisors L.L.C., et al. and Matthew Donohoe v. Federal Energy Regulatory Commission, Nos. 07-1491 and 07-1504.

[5]  FERC points to MidAmerican Energy Holdings Co., 118 FERC ¶61,003, at n.45 (F.E.R.C. 2007). (denying claim that Commissioners had requisite knowledge to trigger prohibition on pre-filing meetings and ex parte communications). MidAmerican relies on Indianapolis Power & Light Co., 48 FERC ¶ 61,040, at 61,203, at n.29 (F.E.R.C. 1989), for the proposition that "the Commission speaks through its orders." Yet the pronouncement at issue in Indianapolis Power & Light Co. was a private, oral statement made by a Commission employee during a private telephone conversation—a far cry from the public policy pronouncements issued by the FERC Chairman in this instance.

themselves from judicial scrutiny by self-proclamation and have held that the "label an agency attaches to its action is not determinative." Continental Air Lines, Inc. v. Civil Aeronautics Board, 522 F.2d 107, 124 (D.C. Cir. 1975). Where an agency treats a position as final, it is "reviewable even though it is merely an announcement of a rule or policy that the agency has not yet put into effect…[and] even though it is never to have any formal, legal effect." Id. (citing Bantam Books, Inc. v. Sullivan, 372 U.S. 58 (1963) (where review was granted of a state agency's informal exhortations to book and magazine distributors although the state agency had no power to inhibit the sale of the publications; holding that review was available where "there is every indication" that the Board considered its position to be final and the question for the court would be the same whether review was granted immediately or later).[6]

Finally, FERC's assertion that the finality of its determination on jurisdiction is not properly the subject of a declaratory judgment action is flatly contradicted by the law. FERC attempts to conflate the standard for a declaratory judgment with the requirements for review of final agency action. A declaratory judgment action requires only a substantial controversy "between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941). FERC's attempt to import some requirement of harm (or even irreparable harm) into this standard is misguided. See, e.g., Advanced Systems Development, Inc. v. U.S., 72 Fed. Cl. 25, 36 (2006) ("[a] motion for declaratory judgment…does not require the movant to demonstrate irreparable harm.); Cf. Southern Ohio Coal Co., v. Office of Surface Min., Reclamation and Enforcement, 831 F. Supp. 1324, 1338 (S.D. Ohio 1993), rev'd on other grounds, 20 F.3d 1418 (6th

---

[6]     Cf. General Electric Co. v. E.P.A., 290 F.3d 377 (D.C. Cir. 2002) ("Our cases likewise make clear that an agency pronouncement will be considered binding as a practical matter if…[it] is applied by the agency in a way that indicates it is binding…A document will have practical binding effect before it is actually applied if the affected private parties are reasonably led to believe that failure to conform will bring adverse consequences") (internal citations omitted).

Cir. 1994) ("[a]ction by federal agency beyond its authority is per se an irreparable injury"). Contrary to FERC's "cognizable harm" proposal for justiciability under the declaratory judgment standard (Opp. Br. at 7), courts have recognized that "in determining whether a dispute asserted in a declaratory judgment standard has 'sufficient immediacy and reality'…a plaintiff need not invariably wait until he has been successfully prosecuted, dismissed, denied a license, or otherwise directly subjected to the force of law or policy before he may challenge it in court." Nat'l Student Ass'n v. Hershey, 412 F.2d 1103, 1110-11(D.C. Cir. 1969) (citing United Public Workers of America (C.I.O.), et al. v. Mitchell, 330 U.S. 75 (1947) (stating that the "justiciability question" is spread along a "continuum ranging between 'a general threat by officials to enforce the law which they are charged to administer and a direct threat of punishment against a party for a named act'; the former are not, whereas the latter are justiciable").

On the other hand, for the purpose of meeting the requirement of finality required for review of agency decisions, as set out infra, FERC's determination of jurisdiction is the "consummation of [FERC's] decisionmaking process." Bennett v. Spear, 520 U.S. 154, 177-78 (1977), see also Atlantic Richfield Co. v. U.S. Dep't of Energy, 769 F.2d 771, 782-84 (D.C. Cir. 1985) (decision that agency had authority to administer controversies was reviewable because it was a legal issue of statutory construction and the agency had for all practical purposes made a final decision on the scope of its jurisdiction and was unlikely to change its mind). FERC's determination has given rise to specific legal consequences for Hunter, thereby satisfying the second prong of the test for finality. FERC's decision to proceed with an enforcement action and Chairman Kelliher's public statements of jurisdiction, not only admit of no ambiguity, but have resulted in FERC's threat to impose fines in the amount of $30 million on Hunter. As in Ciba-Geigy Corp. v. E.P.A., 801 F.2d 430 (D.C. Cir. 1986), FERC has made statement of position requires Hunter's compliance with FERC's ongoing enforcement action. Rather than "voluntary corrective action" under Reliable

<u>Automatic Sprinkler Co. v. Consumer Product Safety Comm'n</u>, 324 F.3d 726 (D.C. Cir. 2003), FERC has instead required Hunter to comply with its ongoing enforcement action or risk the imposition of a $30 million penalty.  Hunter is therefore in the same unenviable position as Atlantic Richfield, which was faced with the dilemma of having to comply between complying with <u>ultra vires</u> agency action, and flouting the action then facing the consequences should the agency ultimately be found to have the power to issue the orders in question.  Despite FERC's emphasis on the issuance of a discovery "order" in <u>Atlantic Richfield</u>, there is no difference between the kind of legal consequence faced by the <u>Atlantic Richfield</u> plaintiffs and that faced by Hunter.  Furthermore, in <u>Athlone Industries, Inc. v. Consumer Product Safety Comm'n</u>, 707 F.2d 1485 (D.C. Cir. 1983) the court permitted review of final agency action to enjoin the assessment of civil penalties, even though the plaintiff had not exhausted its administrative remedies and therefore <u>there could be no final issuance of an "order"</u> imposing penalties.  <u>Automatic Sprinkler</u> recognized that in <u>Athlone</u>, even though there was no final imposition of liability, the "purely legal nature of the issue presented" required "no factual development or application of agency expertise" and was therefore sufficiently final to warrant review.   <u>Reliable Automatic Sprinkler,</u> 324 F.3d at 734.  Here, as in <u>Athlone</u>, Hunter has been threatened with significant monetary penalties, and no factual application or FERC expertise is required to determine the issue of FERC's jurisdiction.

## III.    <u>The Issues Before The Court Are Purely Legal</u>

Contrary to FERC's claim (Opp. Br. at 1, 3), Hunter is not asking this Court to rule on the merits of FERC's OSC, or on any factual assertions contained therein.   Rather, Hunter is challenging FERC's assertion that it has enforcement authority over alleged manipulation of natural gas futures by a natural person, period.[7]   The Court can resolve these legal issues without

---

[7]      See Hunter's Memorandum of Points and Authorities in Opposition to FERC's Motion to Dismiss and in Support of Hunter's Cross-Motion for Declaratory Judgment ("Hunter Mem."), at 4, 26 (stating that "Hunter's request for a declaratory judgment from the Court does not concern the OSC, or any FERC 'order,' but instead concerns

determining the correctness of FERC's claims as to the supposed impact that futures trading has on

the price of physical natural gas or determining whether Hunter did what he is alleged to have done

by the OSC.  No matter what the OSC claims regarding the effect of Hunter's trading of futures on

physical gas prices, it is plain under the law that the CFTC is the exclusive regulator of futures

trading.  In an effort to recast Hunter's jurisdictional challenge as a challenge to the OSC, FERC

conspicuously avoids quoting the language of the actual prayer for relief, which is repeated here:

> WHEREFORE, Plaintiff respectfully requests that this Court:
>
> I.  Issue a Declaratory Judgment as follows:
>
> A.    The Federal Energy Regulatory Commission's assertion of
> jurisdiction over trading of energy commodities for future
> delivery is in conflict with the provisions of the Energy Policy
> Act, and the Natural Gas Act, 15 U.S.C. §§ 717, <u>et seq</u>.
>
> B.    The Federal Energy Regulatory Commission's assertion of
> jurisdiction over trading of energy commodities for future
> delivery is in conflict with the Commodity Exchange Act, 7
> U.S.C. § 2.
>
> C.    The Federal Energy Regulatory Commission is enjoined from
> proceeding with any enforcement action against Plaintiff.

<u>See</u> Complaint, at 12 (declaratory judgment prayer for relief).

By its terms, the Complaint challenges FERC's jurisdiction to bring an enforcement action

for <u>"trading of energy commodities for future delivery," including natural gas futures trading</u>,

against any natural persons, under the guise of its anti-manipulation authority in the physical natural

gas markets.  Hunter is asking the Court to rule that where, as here, the CFTC has <u>exclusive</u>

jurisdiction over natural gas futures trading, pursuant to 7 U.S.C. § 2(a)(1)(A), FERC does not have

jurisdiction.  And Hunter is asking the Court to rule that where, as here, the NGA does not permit

---

FERC's determination of jurisdiction" and requesting that the Court "find that FERC does not have jurisdiction over
Hunter, a natural person, under anti-manipulation provision set forth in § 717c-1").

enforcement actions against natural persons for alleged manipulation, as a matter of law FERC cannot proceed against Hunter for the same.

A. <u>The CEA Unambiguously Confers Exclusive Jurisdiction On The CFTC To Regulate All Transactions "Involving" Futures Contracts</u>

There is no dispute that FERC alleges that Hunter engaged in futures "transactions" on the NYMEX.[8]   These kinds of transactions are clearly within the scope of the CFTC's exclusive jurisdiction.   FERC's reliance on <u>F.T.C. v. Ken Roberts Co.</u>, 276 F.3d 583 (D.C. Cir. 2001) is misplaced.   In <u>Ken Roberts Co.</u>, the defendant was engaged in an activity that was completely peripheral to "contracts of sale of a commodity of future delivery" (specifically, marketing educational material about commodities trading).   That is far afield of the trading of futures upon which FERC bases its jurisdiction in this case.

Indeed, <u>Ken Roberts Co.</u> confirms that the CFTC has exclusive jurisdiction over "transactions involving contracts of sale of a commodity for future delivery."   <u>Id.</u> at 589.   There can be no dispute that Hunter's alleged conduct—selling natural gas futures contracts—falls squarely within "contracts of sale of a commodity for future delivery."   The relevant language is in § 2(a)(1)(A) of the CEA:

> The Commission shall have exclusive jurisdiction . . . with respect to accounts, agreements . . . and transactions **involving** contracts of sale of a commodity for future delivery, traded or executed on a contract market designated or derivatives transaction execution facility registered pursuant to section 7 or 7a of this title or any other board of trade, exchange, or market…

7 U.S.C. § 2(a)(1)(A) (emphasis added).

---

[8]      <u>See</u> PI Opp. Br. at 14 ("The FERC issued to Hunter the Order to Show Cause because preliminary information suggests that <u>Hunter's manipulation of the NG Futures Contract settlement price</u> was 'in connection with' Commission-jurisdictional transactions.") (emphasis added); Opp. Br. at 20 ("The OSC alleges that Amaranth traded between 2:00 and 2:30 PM on each of the three settlement days with the <u>specific intent and actual effect of artificially setting the price of the NG Futures Contracts</u>.") (emphasis added).

Hunter seeks a declaratory judgment that FERC has no jurisdiction over allegedly manipulative futures trading. Therefore, it is irrelevant whether FERC has jurisdiction over other, peripheral activity not involving "contracts of sale of a commodity for future delivery." Unlike the parties in <u>Ken Roberts Co.</u>, which offered training courses in commodities trading and instruction in securities trading, FERC has asserted jurisdiction over conduct which falls squarely within § 2(a)(1)(A)—allegedly manipulative futures trading. By contrast, the court in <u>Ken Roberts Co.</u> denied petitioner's claim that it fell under the CFTC's exclusive jurisdiction precisely because its activities fell <u>outside</u> the scope of § 2(a)(1)(A):

> Ken Roberts appears to assume that, at a minimum, whatever the Commission may regulate, it regulates exclusively. This is a specious contention. **Both the text and purpose of the statute contemplate a regime in which other agencies may share power with the CFTC over activities that lie <u>outside</u> the scope of § 2(a)(1)(A)…**

<u>Ken Roberts Co.</u>, 276 F.3d at 591 (emphasis added).

Contrary to FERC's disingenuous claim that under <u>Ken Roberts Co.</u>, agencies other than the CFTC may regulate fraudulent or deceptive practices associated with those transactions (<u>see</u> Opp. Br., at 22, n.27), the holding in <u>Ken Roberts Co.</u> is the exact opposite—namely that other agencies, such as FERC, "may" share power with the CFTC only over activities that explicitly lie "outside" the scope of § 2(a)(1)(A). But nothing in futures trading can be said to be "outside the scope" of § 2(a)(1)(A). FERC also blatantly mischaracterizes <u>Chicago Mercantile Exchange v. S.E.C.</u>, 883 F.2d 537 (7th Cir. 1989) which explicitly held that the CFTC's exclusivity clause created a "zero-sum game," in that because the "index participations" at issue were properly characterized as "futures" contracts, and therefore under the CFTC's exclusive jurisdiction. As a result, the SEC had no authority to regulate them. <u>Id.</u> at 546-7. Again, here there is no dispute that Hunter's alleged conduct involves buying and selling futures contracts and there is further no dispute that Hunter did not engage in the purchase or sale of physical natural gas. It does not matter whether Hunter's

trading affected physical gas prices because FERC does not have jurisdiction over futures trading no matter what effect it has on physical gas prices.

FERC attempts to argue that futures trading does not in fact involve bona fide "transactions" under 7 U.S.C. § 2(a)(1)(A) when the trading is allegedly manipulative, and, consequently, that these transactions are not subject to the CFTC's exclusive jurisdiction.  (See Opp. Br. at 22.) FERC's interpretation is nonsensical.  It would render the CEA's authority to regulate manipulation in futures contracts completely meaningless, and should be rejected outright.[9]  An order to buy or sell, as well as the buying and selling of a futures contract, are clearly "transactions," no matter what the purpose.  Under Ken Roberts Co., "transactions" in the exclusive jurisdiction provision "seems most naturally read as encompassing…a set of arrangements directly related to the actual sale of commodities futures."  Ken Roberts Co., 276 F.3d at 590.  Thus, all natural gas futures trading is covered by the CFTC's exclusive jurisdiction "with respect to" and "involving" orders to buy and sell futures contracts, including the alleged misconduct which constitutes futures price manipulation.[10]

FERC's wishful thinking that it has "overlapping" or coterminous jurisdiction over alleged manipulation in natural gas futures contracts under the anti-manipulation provisions of the NGA is "simply invalid."  S.E.C. v. Univest, Inc., 405 F. Supp. 1057, 1058 (N.D. Ill. 1976).  Indeed, it is strenuously contested by the CFTC itself—the agency charged with enforcing the CEA:

---

[9]      In support of its argument against the application of the CEA exclusivity provision, FERC cites a number of cases, known as "exempt commodities" cases.  (See Opp. Br. at 22.)  As the name indicates, these cases concern certain types of transactions, described in 7 U.S.C. §§ 2(g)-(h), that Congress explicitly removed from CFTC jurisdiction.  See, e.g. 7 U.S.C. § 2(g) ("No provision of this chapter…shall apply…").  It is undisputed that trading in natural gas futures on the New York Mercantile Exchange, a designated CFTC contract market, does not fall under these exceptions.

[10]     See, e.g., Memorandum of Law of the Amicus Curiae "Futures Group" in Support of Plaintiff Commodity Futures Trading Commission's Exclusive Jurisdiction and Defendant Amaranth Advisors' Stay Motion, dated October 3, 2007, filed in the United States District Court for the Southern District of New York, in the case captioned U.S. Commodity Futures Trading Commission v. Amaranth Advisors L.L.C., et al., 07 Civ. 6682 (DC) ("Futures Group Mem."), at 5 ("FERC's claim that futures price manipulation is not captured by…[the language of § 2(a)(1)(A)] cannot be squared with the actual words Congress used: futures price manipulation is surely conduct "with respect to transactions involving futures contracts.").  The "Futures Group" is composed of a number of critical participants in the futures markets, including the Futures Industry Association, the Managed Funds Association, the New York Mercantile Exchange, the Chicago Mercantile Exchange, and the International Swaps and Derivatives Association.

The Energy Policy Act did nothing to affect the scope of the CFTC's exclusive jurisdiction. Nor did it change the scope of FERC's jurisdiction over natural gas transactions as set forth in 15 U.S.C. § 717(b). See Prohibition of Energy Market Manipulation, 71 Fed. Reg. 4244 ¶ 20 (January 26, 2006). Had Congress intended in the Energy Policy Act to reverse 30 years of unbroken precedent regarding the application of Section 2(a)(l)(A) of the CEA to futures trading on designated contract markets, it would have done so clearly and unambiguously. Because nothing in the Energy Policy Act explicitly repeals any provision of the CEA, the question arises whether Congress's grant of authority to FERC in 15 U.S.C. § 717c-l implies an intention to do so. But as the Supreme Court has stated: "[It] can be strongly presumed that Congress will specifically address language on the statute books that it wishes to change." United Slates v. Fausto, 484 U.S. 439, 453 (1988). Repeals by implication are not favored in law, and they will not be found unless a congressional intent to repeal "is clear and manifest." See Rodriguez v. United States, 480 U.S. 522, 524 (1987) (citations omitted); see also Morton v. Mancari, 417 U.S. 535, 550 51 (1974). The Supreme Court rarely has found a repeal by implication. See Branch v. Smith, 538 U.S. 254, 293 (2003). Further, a settled canon of statutory construction dictates that "a precisely drawn, detailed statute pre-empts more general remedies." Brown v. General Services Administration, 425 U.S. 820, 834 (1976). **The general authority provided to FERC in the Energy Policy Act to combat the effects of manipulative behavior on FERC jurisdictional markets is insufficient to carve out an implicit exception to the exclusive jurisdiction that the CEA adopted as part of a carefully-crafted statutory regime to specifically govern futures trading on designated contract markets**.[11] (emphasis added).

Indeed, Congress's use of the word "exclusive" in the CEA presupposes that where the CFTC has jurisdiction over futures contracts, other agencies have none. Otherwise, Congress could have only granted the CFTC simple "jurisdiction." This interpretation is supported by the legislative history of the CEA.

Moreover, FERC's new anti-manipulation authority is expressly limited to misconduct in connection with natural gas sales that were already "subject to the jurisdiction of the Commission." 15 U.S.C. § 717c–1. Indeed, FERC does not cite a single authority that Congress intended the "in connection with" language of EPAct 2005 to have a restrictive effect on the jurisdiction of other

---

[11]    See CFTC Memorandum of Law in Opposition to Amaranth's Motion for a Preliminary Injunction Staying the FERC, dated September 28, 2007, filed in the United States District Court for the Southern District of New York, in the case captioned U.S. Commodity Futures Trading Commission v. Amaranth Advisors L.L.C., et al., 07 Civ. 6682 (DC) ("CFTC Mem."), at 18-19 (emphasis added).

federal agencies, much less that it should override the restrictions in the CEA.  The CFTC's interpretation is supported by the legislative history of the CEA.[12]  FERC itself has recognized that "had Congress intended to expand the Commission's jurisdiction…it would have done so explicitly."  See FERC's Order 670, 114 FERC ¶ 61,047, issued on January 19, 2006 ("Order 670"), attached as Exhibit B to the Shur Decl., at ¶ 20.[13]

FERC points to some statements of members of Congress made in December 2007 who now allegedly support FERC's current enforcement efforts and its assertion of jurisdiction to regulate the energy futures market. (See Opp. Br. at 20.)  Rather than crediting remarks by representatives two years later who are part of a different Congress, the Court should look to the legislative statements made at the time the NGA was amended, or better yet, as urged herein, the plain language of the statute itself.  "[S]tatements by individual congressmen about the meaning of a statute passed two years earlier are not very likely to reflect the intent of the entire Congress at the time the statute was passed."  Bradford Nat. Clearing Corp. v. S.E.C., 590 F.2d 1085, 1114, n.46 (D.C. Cir. 1978) (finding such "unpersuasive" statements especially "irrelevant" where they expressed opinion on specific policy decisions of federal agency).

---

[12]     For example, the Report of the Senate Committee on Agriculture, Nutrition and Forestry on the 1974 CEA amendments states "…The Committee wished to make it clear that where the jurisdiction of the Commodity Futures Trading Commission is applicable, it supersedes State as well as Federal agencies." S. Rep. No. 93-1131, at 23 (1974). The Conference Report on the 1974 CEA amendments states: "The clarifying amendments make clear that (a) the Commission's jurisdiction over futures contract markets or other exchanges is exclusive and includes the regulation of commodity accounts, commodity trading agreements, and commodity options; (b) the Commission's jurisdiction, where applicable, supersedes State as well as Federal agencies…"  S. Rep. No. 93-1131, at 6, as reprinted in 1974 U.S.C.C.A.N. 5843, 5848 (1974).  The Conference Committee amendments were included in the final legislation.  The legislative history thus confirms that Congress intended to vest the CFTC with exclusive jurisdiction over futures trading on designated contracts markets, and further, that Congress intended for other federal agencies not to exercise jurisdiction over such futures trading, including that allegedly conducted by Hunter on the NYMEX.
[13]     FERC has also acknowledged that "the CFTC has exclusive jurisdiction with respect to accounts, agreements, and transactions involving contracts of sale of a commodity for future delivery, including, but not limited to, natural gas."  Memorandum of Understanding between FERC and the CFTC Regarding Information Sharing And Treatment Of Proprietary Trading And Other Information, attached as Exhibit A to the Shur Decl., at Preamble.

B. <u>FERC's Claims Of Jurisdiction Regarding The Alleged Connection Between The Futures Settlement Price And The Price of Natural Gas Are Irrelevant To This Declaratory Judgment</u>

As set out above and in Hunter's moving papers, because natural gas futures trading is regulated by 7 U.S.C. § 2(a)(1)(A), whether such trading had an "effect" on physical natural gas is irrelevant to this declaratory judgment concerning FERC's jurisdiction.  FERC claims that it has "broad authority to sanction manipulative conduct where, as here, such conduct has a nexus to and significantly 'affects' jurisdictional sales."  (Opp. Br. at 16.)  FERC bases its argument on the "in connection with" language in its anti-manipulation provision which states that it "shall be unlawful for any entity, directly or indirectly, to use or employ [any manipulative device or contrivance], in connection with the purchase or sale of natural gas or the purchase or sale of transportation services subject to the jurisdiction of the Commission."  15 U.S.C. § 717c-1.  However, the identical "in connection with" language has already been interpreted by the DC Circuit <u>not</u> to expand FERC's authority even where FERC asserted jurisdiction because the activities of a non-jurisdictional actor allegedly affected FERC's jurisdictional market through collusion.  In <u>Conoco, Inc. v. F.E.R.C.</u>, 90 F.3d 536 (D.C. Cir. 1996), <u>cert. denied</u>, 519 U.S. 1142 (1997), the D.C Circuit examined similar "in connection with" language in Section 1(b) of the NGA (15 U.S.C. § 717(b)) and held that:

> The statute forecloses what appears to be the principal justification offered by the Commission: that the phrase "in connection with"…permits it to regulate facilities that it has expressly found are not within its…[rate-making] jurisdiction.

<u>Id.</u> at 552.  <u>See also</u> <u>Williams Gas Processing v. F.E.R.C.</u>, 373 F.3d 1335, 1342 (D.C. Cir. 2004) (reversing and remanding FERC decision using "in connection with" language to regulate a pipeline affiliate that did not participate in jurisdictional markets because the affiliate relationship was "utterly irrelevant").  In enacting the new provisions of the NGA, Congress explicitly stated that <u>nothing</u> therein should be construed to impact the exclusive jurisdiction of the CFTC. <u>See</u> 15 U.S.C.

§ 717t-2(c)(2). FERC should not be permitted to do so by an overly expansive interpretation of "in connection with" that swallows the express limitations on FERC's power set forth in the NGA.

FERC also claims that securities law precedent supports its overreaching interpretation of "in connection with" to reach non-jurisdictional futures trading. (See Opp. Br. at 18.) However, contrary to FERC's claim that an alleged "effect" on its jurisdictional markets (however significant) is sufficient to confer enforcement jurisdiction on it to indirectly regulate those markets, the well-established precedent under Section 10(b) holds just the opposite. See, e.g., Rand v. Anaconda-Ericsson, Inc., 794 F.2d 843 (2d Cir. 1986) (catastrophic effect of false press release on the price of a security was not "in connection with" a jurisdictional transaction and therefore did not fall under the fraud provisions of Section 10(b)); Ontario Public Service Employees v. Nortel Networks Corp., 369 F.3d 27 (2d Cir. 2004) (alleged misrepresentation by one company that merely "affected" the price of another company's securities was insufficient to confer standing to sue under the securities fraud statutes).[14] Not all conduct that negatively affects a company's stock price is actionable as a federal securities fraud. The scheme to defraud must be part of the sale of securities itself. Zandford, 535 U.S. at 822. In other words, the fraud itself must be "integral to the purchase and sale of the securities in question." Pross v. Katz, 784 F.2d 455, 459 (2d Cir. 1986), quoted in Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 395 F.3d 25, 37 (2d Cir. 2005), rev'd on other

---

[14]    FERC's citations to Paine, Webber, Jackson & Curtis, Inc. v. Conaway, 515 F. Supp. 202 (D. Ala. 1981) and Fisher v. Dean Witter Reynolds, Inc., 526 F. Supp. 558 (E.D. Pa. 1981) are misplaced. In those cases, the courts reasoned that, since Rule 10b-5 prohibits fraud in connection with the purchase or sale of any security, a contract that provides for the future delivery of a security falls within the ambit of Rule 10b-5. See Paine, Webber, 515 F. Supp. at 210; Dean Witter, 526 F. Supp. at 560. Importantly, the courts did not reason that anything that affects the price of a security is sufficiently "in connection with" the purchase or sale of a security. Here, of course, FERC is not claiming (nor can it claim) that its anti-manipulation rule covers all fraud or manipulation in connection with natural gas futures contracts (the parallel claim to what was sustained by the courts in Paine Webber and Dean Witter). We have demonstrated elsewhere (see infra, at 9-13), that is plainly the exclusive province of the CFTC. Rather, FERC has necessarily resorted to the proposition that it has jurisdiction over natural gas futures trading where such trading affects the price of physical natural gas. (See Opp. Br. at 16-21.) But, again, FERC cites no authority for that over-broad proposition. Moreover, FERC tries to interpret Zandford, 535 U.S. 813, to hold that where there is an alleged effect on a jurisdictional market, that is sufficient for "coincidence" under §10b of the Exchange Act. (Opp. Br. at 20.) Contrary to FERC's claim, fraud that is merely incidental and unattached to any particular FERC-jurisdictional transaction would not satisfy the "in connection with" requirement. Zandford, 535 U.S. at 825. As set out in Rand and Ontario, an "effect" is plainly insufficient to bootstrap a trade into the ambit of the securities laws.

grounds, 547 U.S. 71 (2006). Conduct that is merely incidental or an effect of the sale of securities will not meet the "in connection with" requirement. Ling v. Deutsche Bank, AG, No. 04 Civ. 4566 (HB), 2005 WL 1244689, at *6 (S.D.N.Y. May 26, 2005).

In contrast to FERC's claims that its anti-manipulation provision should be read expansively under the securities precedent to permit FERC to reach deceptive practices by any entity directly or indirectly, the Section 10(b) precedent establishes that alleged manipulators under Section 10(b) are actual participants in the markets they are accused of manipulating.[15]  The cases FERC cites for the proposition that the term "indirectly" permits it to regulate the futures allegedly traded here are simply off point.  Nexitz v. Cunny, 221 F. Supp. 571 (N.D. Ill. 1963) merely held that Congress's use of the term "indirectly" evidenced that it was sufficient that an instrumentality of interstate commerce (such as a telephone) was used in some way to further the fraudulent scheme without having to allege that the fraudulent statements were actually uttered on the telephone.  The Nexitz court was merely examining how the elements of wire fraud can be satisfied.  That has nothing to do with whether the courts should ignore a clear statutory mandate that the CFTC has exclusive jurisdiction over futures trading simply because FERC alleges that such trading indirectly affected physical gas prices.

FERC fares no better with its citation to In re Lernout & Hauspie Sec. Litig., 236 F. Supp. 2d 161 (D. Mass. 2003).  There, the District Court held that a plaintiff stated a cause of action under Rule 10b-5 against a defendant by alleging that the defendant substantially participated in a

---

[15]    See, e.g., U.S. v. Gilbert, 668 F.2d 94, 95 (2d Cir. 1981) (the scheme engineered by the defendant to manipulate the market price of shares of a small electronic company involved an "elaborate series of wash sales and matched orders" of those shares); Leykin v. AT&T Corp., 423 F. Supp. 2d 229, 241 (S.D.N.Y. 2006), aff'd, 216 Fed. Appx. 14 (2d Cir. 2007) ("Not all conduct that negatively affects a company's stock price is actionable as a federal securities fraud.  The scheme to defraud must coincide with the sale of securities.") (citation omitted); Wharf (Holdings) Ltd v. United Int'l Holdings, Inc., 532 U.S. 588, 597 (2001) (finding that the fraud coincided with a securities transaction where the defendant sold a security option while intending not to honor the option); U.S. v. O'Hagan, 521 U.S. 642, 655-56 (1997) (holding that a fraud was "in connection" with a securities transaction when a defendant misappropriated confidential information for the purpose of trading securities); Superintendent of Ins. of N.Y. v. Bankers Life & Casualty Co., 404 U.S. 6, 10 (1971) (holding a cognizable connection under a 10(b) claim where a company was injured as an investor through a deception where it was "deprived" of "any compensation for the sale of its valuable block of securities.").

fraudulent scheme by employing a manipulative device (the creation of a sham entity) intending to mislead investors, even though it was ultimately the misstatement by another (the company who issued financial statements reflecting the fraudulent transaction) that formed the nexus between the scheme and the securities market. That case is far afield. Unlike the case at bar, it did not involve the attempt to use an extreme interpretation of the "indirectly" language to overcome clear exclusivity provisions in the enabling statute of another agency. In any event, the holding was superseded by the recent U.S. Supreme Court case of <u>Stoneridge Inv. Partners, LLC v. Scientific-Atlanta</u>, 128 S.Ct. 761 (Jan. 15, 2008) where the Supreme Court extended the reasoning of <u>Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.</u>, 511 U.S. 164 (1994) to conclude that a plaintiff cannot be deemed to have relied on a person's deceptive conduct where the plaintiff had no knowledge of that deceptive conduct (even though that conduct resulted in plaintiff being misled by the company's misstatements). The court found any reliance on defendant's actions to be only part of "an indirect chain that we find too remote for liability." <u>Stoneridge</u>, 128 S.Ct. at 769. Thus, <u>Stoneridge</u> makes clear that the term "indirectly" has strict limits.

As a matter of law, contracts traded on natural gas futures exchanges are not "in connection with" physical natural gas. Accordingly, FERC has no enforcement jurisdiction over trading in natural gas futures contracts. Congress has delegated exclusive jurisdiction to regulate natural gas futures markets to the CFTC. FERC may therefore directly regulate alleged manipulation in the physical natural gas markets under the NGA, but not natural gas futures contracts.[16] This Court should not permit FERC to use its jurisdictional authority over physical natural gas to regulate indirectly an activity that lacks the authority to regulate directly. See <u>Altamont Gas Transmission</u>

---

[16]    See also <u>Bonneville Power Admin. v. F.E.R.C.</u>, 422 F.3d 908, 914-23 (9th Cir. 2005) (concluding that FERC acted beyond its statutory authority when it ordered non-public utility sellers to issue refunds because Congress specifically limited its jurisdiction to public utilities); <u>Northern States Power Co. v. F.E.R.C.</u>, 176 F.3d 1090, 1096 (8th Cir. 1999) (concluding that FERC "transgressed its Congressional authority" by using its jurisdiction to regulate the wholesale electricity market to regulate indirectly the retail market which Congress expressly delegated to the states); <u>Conoco, Inc.</u>, 90 F.3d at 552-53 (rejecting FERC's interpretation of statute because "in connection with" language in the NGA cannot be used to expand FERC's power to regulate non-jurisdictional activity").

Co., v. F.E.R.C., 92 F.3d 1239 (D.C. Cir. 1996) (FERC overstepped its jurisdictional bounds by attempting to do indirectly what it could not do directly, that is, intercede in a matter that Congress reserved to a state). The Futures Group has argued that permitting FERC to do so could be "potentially devastating" and that FERC's enforcement efforts in this regard will likely breed uncertainty or conflict which may "trigger a loss in market liquidity and related hedging opportunities, with dire consequences for U.S. futures markets." (Futures Group Mem. at 14.)

    C. <u>FERC's Enforcement Authority Does Not Extend to Natural Persons</u>

FERC's determination of its own jurisdiction to proceed with an enforcement action against Hunter, a natural person, is sufficiently final for review by this Court for the reasons set out above.[17] FERC's argument that Congress "expanded" FERC's power by using the term "entity" when the statute already contained a definition of the term "person" has no merit and should be disregarded.

    1. <u>Congress Deliberately Substituted The Term "Entity" For "Person" And Its Substitution Should Be Given Effect</u>

There is nothing in the statute to support FERC's claim (Opp. Br. at 29, n.47) that the Natural Gas Act uses the term "entity" throughout its amendments to "include natural persons." As set out in Hunter's moving papers, Congress could have used the term "person" as defined in the Exchange Act (the Act that FERC alleges was examined closely as a blueprint for the Natural Gas Act's anti-manipulation provisions) to include a "natural person, company, government, or political subdivision, agency or instrumentality of a government." 15 U.S.C. §78c(a)(9). Instead, however, Congress chose the narrower term "entity" instead. Nothing prevented Congress from including the term "natural person" or "person" (as opposed to, or in addition to, "entity") in the anti-

---

[17] It is well-established that an agency cannot confer on itself greater powers through the promulgation of a rule (such as Order 670) than granted to it by Congress. FERC has "no constitutional or common law existence or authority, but only those authorities conferred upon it by Congress. It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." <u>Michigan v. E.P.A.</u>, 268 F.3d 1075, 1081 (D.C. Cir. 2001) (citation omitted) (vacating EPA's decision to administer a federal permit program in lands whose Indian country status was considered to be "in question" because such authority was not explicitly delegated to the EPA by statute.). Where FERC "lacks authority under the [NGA]…its action is plainly contrary to law, and cannot stand." <u>Id</u>.

manipulation provision for FERC. See, e.g., 15 U.S.C. § 717g-(a) (imposing requirements on any "person making, authorizing, or requiring" certain record-keeping entries); 15 U.S.C. § 717m-(d) (providing FERC with subpoena and testimony-taking powers over any applicable "person").

FERC cites legal precedent for the uncontested and irrelevant proposition that natural persons are liable under Section 10(b) of the Securities Exchange Act for manipulative conduct. (See Opp. Br. at 29 and n.48, citing Clark v. John Lamula Investors, Inc., 583 F.2d 594, 600 (2d Cir. 1978) and In re Penn Cent. Sec. Lit., 395 F. Supp. 192 (E.D. Pa. 1975).) But of course, those cases were interpreting a statute that explicitly applies to "any person," not "any entity." As Hunter demonstrated in his Memorandum of Points and Authorities in Opposition to FERC's Motion to Dismiss and in Support of his Cross-Motion for Declaratory Judgment, Congress's deliberate choice in using the term "any entity" (rather than simply cutting and pasting the term "any person" from Section 10(b)) reflects an intent to exclude natural persons. (See Hunter Mem. at 25-26.) Thus, these cases only further support Hunter's position, not FERC's.

This fact is not changed by 15 U.S.C. § 717c-1, which provides only that "those terms" that are used in Section 10(b) are to be construed in the same way. "Entity" and "person" are, of course, decidedly different terms, and the Court should give effect to that difference. The absence of "natural persons" in the NGA's anti-manipulation provision is particularly significant because when the NGA wishes to reference natural persons, it makes such reference clear. See, e.g., 15 U.S.C. § 717a-(1) (defining the term "person" as including both "an individual or a corporation"). The NGA has several provisions that are applicable to both natural persons and juridical persons. See, e.g., 15 U.S.C. §717g-(a) (imposing burden of proof on any "person" making, authorizing or requiring certain accounting entries by FERC); 15 U.S.C. §717m-(d) (permitting judicial compulsion of testimony and document production in cases of contumacy by any "person"). Nothing therefore

precluded Congress from using the term "person," but Congress spoke directly to the precise question at issue, and used the term "entity" instead.

## 2.  FERC's Reliance On Section 318 Of The EPAct 2005 Is Misplaced

FERC purports to rely on Section 318 of the EPAct 2005 entitled "Prohibition of Trading and Serving by Certain Individuals" which provides that a Court may prohibit "any individual" engaged in practices constituting a violation of the NGA's anti-manipulation provision from acting as an officer or director of a natural gas company or engaging in the business of purchasing or selling natural gas.  15 U.S.C. § 717s; see also Opp. Br. at 27.  FERC's assertion that this supports its argument that the term "entity" includes natural person is mistaken.  Contrary to FERC's claim, this section underscores Hunter's argument that individuals are not subject to the anti-manipulation provisions set forth in Section 717c-1 of the NGA: Section 717s's use of the term "individual" makes clear that in drafting the anti-manipulation provisions that Congress clearly knew how to use the term "individual" when it wanted to do so.  Because Congress clearly set out in Section 717s that FERC could sue for an injunction in District Court for certain conduct and used the term "individual," its use of entity in the anti-manipulation section is further proof that Congress meant "entity" to be something other than natural persons.

Further, Section 717s(a), "Action in District Court for Injunction," explicitly permits FERC to file in District Court (not an administrative enforcement proceeding) to enjoin individuals.  The general proscription against manipulation in Section 717c-1, on the other hand, which leads to FERC administrative enforcement, is framed explicitly only as to "any entity" (i.e., non-individuals) and makes no mention of "individual" or even "person" (which in the NGA itself is defined to include companies and individuals).  There is nothing self-contradictory about the NGA permitting administrative enforcement actions against organizations or companies on the one hand, and injunctive proceedings in District Court against individuals to restrain them from acting within the

natural gas industry, on the other. In fact, this reading is supported by the statute's legislative history: in discussing FERC's enforcement authority, Senator Cantwell (D-WA) described the EPAct 2005 as doing two separate things: (a) giving FERC authority to ban or enjoin <u>energy traders and individuals</u> from employment in the energy industry and (b) giving it civil authority to enforce civil penalties against <u>companies</u> that violate the statute:

> Senator Cantwell: "…[T]he legislation also gives Federal regulators new authority to ban unscrupulous energy traders and executives from employment in the utility industry. In addition, it substantially increases fines for energy companies that break the rules."

151 Cong. Rec. S7451-04 (2005).

This legislative history is consistent with the differing terms used in the injunction provision on the one hand (to cover individuals) and the anti-manipulation on the other (to cover entities). In short, if Congress had intended Section 717c-1 also to apply to natural persons, Congress would could have included the term "person or municipality," as it has elsewhere in the NGA, which would have encompassed individuals, companies, and municipalities. <u>See</u> 15 U.S.C. §717f(a). Alternatively, it could have referred to "individuals" as it did in Section 717s(d). Congress, however, did neither. "Where Congress knows how to say something, but chooses not to, its silence is controlling." <u>Brendsel v. Office of Federal Housing Enterprise Oversight</u>, 339 F. Supp 2d. 52, 65 (D.D.C. 2004) (Leon, J.).

FERC also argues that Section 222 of the Federal Power Act ("FPA") (16 U.S.C. § 824v), which refers to "any entity described in §201(f) of the FPA," means that "entity" includes "persons" because §201(f) contains references to natural persons. (Opp. Br. at 28-29.) Not only is FERC's premise that the FPA should somehow import a definition of "entity" that includes "individual" into the NGA false as set out below, but FERC's reliance on a separate statute as an interpretive tool is unavailing, because as FERC has conceded elsewhere, the NGA does not have an analog to FPA § 201(f). FERC argues that by using "any," Congress evidenced an intent to reach the broadest

possible meaning of the term. (Opp. Br. at 26-27, asserting that "'any entity' should be construed to include all things that could be considered an entity, including a natural person.") However, the D.C. Circuit has rejected that logic. In City of Abilene, Tex. v. F.C.C., 164 F.3d 49 (D.C. Cir. 1999), the D.C. Circuit rejected the proposition that, by using the term "any," Congress meant to include municipalities. The Court stated:

> If we were dealing with the spoken word, the point might have some significance, or it might not, depending on the speaker's tone of voice. A speaker, by heavily emphasizing the "any" in "any entity," might be able to convey to his audience an intention to include every conceivable thing within the category of "entity." But we are dealing with the written word and we have no way of knowing what intonation Congress wanted readers to use.

Id. at 52. This Court should reject FERC's contention that the term "any" broadens the term beyond its plain meaning as used in the statute. An examination of the full text of Section 201(f) demonstrates that FERC's assertion is completely unsupported. The full text of Section 201(f) reads:

> No provision in this subchapter shall apply to, or be deemed to include, the United States, a state or any political subdivision of a state, an electric cooperative that receives financing under the Rural Electrification Act of 1936 (7 U.S.C. 901, et. seq.) or that sells less than 4,000,000 megawatt hours of electricity per year, or any agency, authority or instrumentality of any one or more of the foregoing, or any corporation which is wholly owned, directly or indirectly, by any one or more of the foregoing, or any officer, agent or employee of any of the foregoing or any corporation which is wholly owned, directly or indirectly, by any one or more of the foregoing, or any officer, agent or employee of any of the foregoing acting as such in the course of his official duty, unless such provision makes specific reference thereto.

16 U.S.C. § 824(f).

Thus Section 222 stands for nothing more than the unremarkable proposition that, to the extent some of the references listed in Section 201(f) are "entities" (such as the political subdivision or an electric cooperative), they are also included as an entity in Section 222. Section 222 does not state that all the examples in Section 201(f) are to be considered "entities."

FERC also claims that the FPA's use of the term "the person or other entity" following the phrase "no entity" in Section 221 must mean that "entity" encompasses natural persons.  (Opp. at 28.)  However, if "entity" encompasses natural persons as FERC insists, it would be unnecessary for the statute to say "the person or other entity," as opposed to simply "entity."  The very fact that the phrase uses both "person" and "entity" shows that these two words mean different things, even under the FPA.  Other than FERC's tortured reasoning, Section 221 does not state anywhere that "person" is a subset of "entity."  Nowhere in the NGA or FPA is there any overlapping connection between "entities" and "individuals" or "natural persons."

### 3.   FERC Is Not Entitled To Chevron Deference

FERC argues incorrectly that its interpretation of the NGA is entitled to "substantial deference" from this Court.  (Opp. Br. at 30.)  FERC asserts that it is entitled to deference under Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984).  However, Chevron deference is only afforded to the agency in a case where the meaning of a statutory term is ambiguous.  Id. at 842-43.  As explained above, courts have held that the scope of even an undefined term is not ambiguous where it could draw inferences from the statute's use of the term.  Indeed, the D.C. Circuit has found the meaning of the term "entity"—the very same term as at issue here—to be unambiguous even though not defined in the statute it was required to interpret.  For that reason, it did not apply Chevron deference and held that the term did not include natural persons in the statute at issue.  See American Dental Association v. Shalala, 3 F.3d 446 (D.C. Cir. 1993).  Thus, it is not uncommon for the D.C. Circuit to reject an agency's interpretation of a statutory term even where the term is not defined by the statute the agency has sought to interpret.  See, e.g., Southwestern Bell Corp. v. F.C.C., 43 F.3d 1515, 1522 (D.C. Cir. 1995) (rejecting agency's interpretation of the term "schedules" even though it was not defined in the statute).  Moreover FERC is not entitled to deference when it interprets statutes concerning allocation of

jurisdiction among agencies.  See American Bankers Ass'n v. S.E.C., 804 F.2d 739, 755 (D.C. Cir. 1986).

Therefore, contrary to FERC's claim, this Court is entitled to find that the NGA does not confer jurisdiction over natural persons engaged in natural gas futures trading without deferring to FERC's effort to impermissibly enlarge its statutory authority.  See Chevron, 467 U.S. 837 (only after exhausting the traditional tools of statutory construction, if the Court determines that a statute is ambiguous, it may proceed to determine whether an agency's interpretation is reasonable and therefore entitled to deference).  First, the CEA is not ambiguous on the question of the CFTC's exclusive jurisdiction to regulate futures contracts.[18]  Second, the NGA is not ambiguous on the issue of FERC's nonexclusive statutory authority to regulate the matters falling under its traditional jurisdiction (namely physical natural gas), nor is it ambiguous on the question of whether it implicitly repealed the exclusive jurisdiction of the CFTC.[19]  Finally, the NGA is not ambiguous on the issue of whether the term "entity" includes natural persons, as set out above.  In any event, FERC's interpretation is not reasonable in light of the CFTC's exclusive jurisdiction over futures contracts and the NGA statutory scheme regarding the term "entity."  Accordingly, FERC is not entitled to deference and the Court should issue a declaratory judgment in Hunter's favor.

### REQUEST FOR EXPEDITED HEARING

Because of the pendency of the continuing FERC enforcement action against Hunter, pursuant to Fed. R. Civ. P. 57, Hunter respectfully requests the Court to order an expedited hearing of his declaratory judgment motion.[20]

---

[18]    If any agency is entitled to deference here, it is the CFTC's interpretation of its exclusive jurisdiction under the CEA which is supported by the text of the statute itself, the legislative history and long standing precedent.

[19]    As FERC has admitted, "Had Congress intended to expand the Commission's jurisdiction…it would have done so explicitly."  Order 670, attached as Exhibit B to the Shur Decl., ¶ 20.  Moreover, Congress stated in the EPAct that "[n]othing in this Section may be construed to limit or affect the exclusive jurisdiction of the [CFTC] under the [CEA]."  15 U.S.C. § 717t-2(c)(2).

[20]    See James v. Pennsylvania General Ins. Co., 349 F.2d 228, 233 (D.C. Cir. 1965) (under Rule 57 [the trial judge] was authorized to proceed with speedy hearing of an action for declaratory judgment); Aetna Casualty & Surety

**CONCLUSION**

For all the reasons set forth above, Hunter respectfully requests that the Court deny FERC's

motion to dismiss, and grant Hunter's request for a declaratory judgment as set forth in his

Complaint.

Dated: February 1, 2008

Respectfully submitted,

KOBRE & KIM LLP

By:   /s/ Michael S. Kim
     Michael S. Kim
     Matthew I. Menchel
     Natalie Holme Elsberg
     Leif T. Simonson
     Francisco J. Navarro (D.C. Bar #501746)

     800 Third Avenue
     New York, New York 10022
     Telephone:     212.488.1200
     Facsimile:     212.488.1220

     1919 M Street, N.W.
     Washington, D.C. 20036
     Telephone:     202.664.1900
     Facsimile:     202.664.1920

     *Counsel for Brian Hunter*

---

Co. v. Quarles, 92 F.2d 321, 325 (4th Cir. 1937) ("The statute providing for declaratory judgments meets a real need and should be liberally construed to accomplish the purpose intended, i.e., to afford a speedy and inexpensive method of adjudicating legal disputes without invoking the coercive remedies of the old procedure, and to settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships.") (emphasis added).